# CIRCUITS

**6TH CIRCUIT** Kentucky, Michigan, Ohio, Tennessee

## Employers Face RICO Claims For Workers Comp Denials

FORGET GAMBLING, DRUG TRAFFICKING and prostitution.

The latest organized "crime," according to the 6th Circuit, is conspiring to defraud injured employees of their workers compensation benefits.

In the first decision of its kind, the appeals court recently stunned employment attorneys across America by holding that employers alleged to have schemed with their insurance carriers and/or physicians to wrongfully deny workers compensation benefits can now be sued for treble damages and attorneys fees under the civil fraud provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO).

Although RICO originally targeted criminal organizations such as the Mafia and Hells Angels, counsel warn that *Brown v. Cassens Transport Co.* exposes legitimate businesses to RICO litigation and intrusive discovery into their handling of workers compensation claims.

"I was frankly quite surprised," says Robert Abell, a solo employment law practitioner in Lexington, Ky. Abell suggests the ruling should "raise a flag of caution" for any self-insured employers, insurance adjusters and doctors who might appear to reflexively deny workers compensation claims.

The 6th Circuit revived the RICO civil fraud claims of six truckers. They allege that their self-insured employer, Cassens Transport Co., along with the Cassens claims adjuster and the doctor who found them ineligible for benefits, committed mail and wire fraud in a scheme to wrongfully deny them benefits under the Michigan Workers' Disability Compensation Act (WDCA).

The plaintiffs contend that the com-



### INSIDE CIRCUITS

**71 6TH CIRCUIT**
**Employers Face RICO Claims For Comp Denials**
Collaboration with insurers could lead to fraud charges

**73 1ST CIRCUIT**
**Court Upholds Drug Data Law, Dismissing Free Speech Concerns**
Prescribing history may not be sold for data-mining

**75 9TH CIRCUIT**
**California Labor Law Applicable to Visiting Employees**
Out-of-state workers are subject to strict state rules

**77 CIRCUIT ROUNDUP**
**3rd Circuit**
Reasonable Effort Halts Waiver

**4th Circuit**
Others' Experiences Impact Employee

**8th Circuit**
North Dakota Boosts Shareholder Rights

**Federal Circuit**
Bad Conduct During Suit Leads to Big Fine

# CIRCUITS

pany deliberately selected doctors who could be relied upon to provide medical opinions supporting decisions to cut off or deny benefits. The defendants vigorously deny the allegations.

The 6th Circuit paved the way for the suit to proceed by overturning a 2005 ruling by the U.S. District Court for the Eastern District of Michigan dismissing the action for failing to state a claim for available relief. The unanimous appeals panel ruled Oct. 23 that the plaintiffs had sufficiently alleged at least 13 predicate acts involving fraudulent communications by mail and wire, and that the plaintiffs lost workers compensation benefits and incurred medical care and attorneys fees due to the defendants' alleged "pattern of racketeering activity."

## Shocking Development

Following recent U.S. Supreme Court case law, the 6th Circuit reversed its earlier stance that the Cassens truckers couldn't sue under RICO because they didn't plead that they had relied, to their detriment, on the defendants' allegedly fraudulent communications. The Supreme Court ruled last June that detrimental reliance isn't necessary under RICO.

The 6th Circuit also rejected the defense argument that federal RICO claims for workers compensation fraud are pre-empted by the WDCA. RICO does not invalidate the state law since the WDCA doesn't even address fraudulent benefit denials, the panel reasoned.

The defendants have asked the 6th Circuit to review the case *en banc*.

The judgment is a "shocking development" that has made some employers second-guess their bona fide interactions with their workers compensation carriers, says Claudia Orr, a senior attorney at Plunkett Cooney in Detroit.

Unfortunately, employers must await judicial guidance on some outstanding issues. "How much assistance and how much cooperation between the clinic, the carrier and the employers will get you in trouble?" Orr says. "Is it if you are cooperative in two cases [or] three cases? Does it depend on the kind of questioning, support and responses that you are providing to the workers comp carrier?"

The ruling "certainly has the potential for increasing litigation," suggests Orange Park, Fla., solo workers compensation attorney David McCranie.

He says one tricky question will be ascertaining the difference between fraud and a doctor's honest belief in his or her medical assessment. "Insurance companies always pick doctors who they think are likely to say that a claimant's injuries are not so bad as what some other physician might say," McCranie says. But, he adds, "I have not personally seen a situation where an insurance company picked a doctor knowing that the doctor's opinion is going to be fraudulent."

Yet Marshall Lasser, the attorney who represents the plaintiffs in *Brown*, contends there are doctors who earn six-figure incomes by frequently turning thumbs down on valid workers comp claims.

"I believe in Michigan alone there are thousands of workers over the years who have been made to suffer horribly because of the actions of insurance companies in wrongful, fraudulent termination or denial of claims, and fraudulent opinions by doctors," Lasser says.

## 'Wide-Open' Discovery

Lasser turned to RICO for a remedy because the WDCA gives no relief for fraud. He says he plans to launch similar suits against other companies, including possible class actions.

"RICO has very big sticks," Lasser notes. Because plaintiffs must prove a pattern of racketeering, RICO permits "wide-open" discovery beyond the specific claims pleaded, he maintains. And if the case goes to trial, he warns, "I am going to discover every single comp claim that ever existed in the past four years ... so it's going to open a real can of worms."

Despite such forewarnings, Abell predicts employers won't face a flood of litigation, but he does anticipate that the decision could be "significant on the outer margins of deterring repeated, extremely outrageous, abusive practices."

In any event, the case should remind human resources not to get too cozy with insurers and medical personnel.

"Routine assistance and discussion with the workers comp carrier and physician clinic about workers comp claims could land them in a lot of trouble," Orr says. "They need to be cautious about inserting themselves in the process and not routinely lending their opinions as to whether a claim is valid."

—CRISTIN SCHMITZ

## Conflicting Viewpoints

EMPLOYERS PAID $88 BILLION FOR WORKERS COMPENSATION INSURANCE in 2006—down from $89 billion in 2005, according to the National Academy of Social Insurance.

But employer costs actually rose by 3 percent outside California in 2006, the latest year for which figures are available. By contrast, costs plunged 17 percent in California after cost-cutting measures from 2003 and 2004 kicked in.

Nationwide, workers compensation payments to medical care providers and injured workers fell by 1.5 percent to $55 billion in 2006: $27 billion went to medical care providers and $28 billion replaced injured workers' wages. Removing California, which accounts for 19 percent of national benefit payments, employers paid $45 billion for workers compensation insurance.