UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFTON E. JACKSON and
CHRISTOPHER M. SCHARNITZKE,

Case No. 09-11529

      Plaintiffs, on behalf of themselves
      and other persons similarly situated,

Hon. David M. Lawson

v.

SEGWICK CLAIMS MANAGEMENT SERVICES, INC.,
and COCA COLA ENTERPRISES, INC., foreign
corporations, and DR. PAUL DROUILLARD,
jointly and severally,

      Defendants.

/

| | |
|---|---|
| **MARSHALL LASSER, P.C.**<br>By:   **Marshall Lasser (P25573)**<br>P.O. Box 2579<br>Southfield, Michigan 49037<br>(248) 647-7722<br>**Attorney for Plaintiffs** | **BUTZEL LONG**<br>By:   **Daniel B. Tukel (P34978)**<br>       **Lynn A. Sheehy (P38162)**<br>       **Katherine D. Goudie (P62806)**<br>150 W. Jefferson, Suite 100<br>Detroit, Michigan 48226<br>(313) 225-7000<br>**Attorneys for Defendant**<br>**Dr. Paul Drouillard** |

/

## DEFENDANT DR. PAUL DROUILLARD'S
## MOTION TO DISMISS PURSUANT TO
## FED. R. CIV. P. 12(b)(1) and/or 12(b)(6)

Defendant Dr. Paul Drouillard, by his attorneys Butzel Long, moves this Court to dismiss

the claims against him in their entirety, pursuant to Fed. R. Civ. P. 12(b)(a) and/or 12(b)(6), for

lack of jurisdiction and because the Complaint fails to state claims upon which relief can be

granted, or in the alternative for a stay, and in support thereof states as follows:

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

1)      Plaintiffs bring this claim under the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1961 *et seq*.  Dr. Drouillard, a board certified orthopedic surgeon, performed an independent medical examination of one of the two named plaintiffs.

2)      Plaintiffs claim that Dr. Drouillard conspired with defendants Coca Cola and its worker's disability compensation benefits carrier, Segwick Claims Management, to deprive plaintiffs of Worker's Disability Compensation Act ("WDCA") benefits by providing false and fraudulent independent medical examinations, through mail or wire fraud.

3)      Dr. Drouillard is entitled to dismissal of all claims because the Witness Immunity Doctrine renders him immune from liability for his medical reports, examinations and anticipated testimony.

4)      Dr. Drouillard is also entitled to dismissal because plaintiffs have not pled, and cannot prove, the two predicate acts necessary to state a claim under RICO.  The sole alleged predicate act was Dr. Drouillard's mailing or wiring of a report concerning his examination of one plaintiff.

5)      Dr. Drouillard is also entitled to dismissal because plaintiffs have not pled, and cannot prove, the existence of an "enterprise" under RICO, which exists between Dr. Drouillard and the defendants, *separate* from the pattern of racketeering activity alleged against them.

6)      Dr. Drouillard is also entitled to dismissal because plaintiffs have not pled, and cannot prove, that his alleged conduct is connected to the operation or management of the alleged enterprise or that he had control over the enterprise, in that they admit that he was simply hired to perform an independent medical examination and render an expert opinion.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

7) Dr. Drouillard is also entitled to dismissal because there are State administrative proceedings still ongoing, and appellate court proceedings available which have not yet been exhausted, through which plaintiffs' entitlement to worker's compensation benefits will be addressed. Therefore, the primary jurisdiction and *Burford*-abstention doctrines bar, or alternatively should operate to stay, this action.

8) Dr. Drouillard is also entitled to dismissal because the underlying WDCA proceedings, regardless of the outcome of those proceedings, will bar this action. If the WDCA proceedings, and any appellate review, determines that plaintiffs are entitled to benefits (or they settle those claims), they will receive the benefits to which they are entitled and will therefore be unable to prove a RICO injury. If there is a determination that plaintiffs are not entitled to benefits, they will be bound to that determination by collateral estoppel and/or the doctrine referred to as the *Rooker-Feldman* doctrine, and will be unable to show an injury flowing from the commission of the alleged predicate acts to fraudulently deny benefits.

9) Furthermore, Dr. Drouillard raises the defense of preemption under the McCarran-Ferguson Act for purposes of preserving this argument while it is being decided on appeal.

10) There was a conference with the attorney for plaintiffs in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought. No appearances have been entered by counsel for either Coca Cola or Segwick Claims. Concurrence in the relief requested was sought from plaintiffs' counsel on June 16, 2009; but despite reasonable efforts, the movant was unable to obtain concurrence, making it necessary to bring this motion on for hearing.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

Wherefore, defendant Dr. Drouillard requests that the claims against him be dismissed in their entirety pursuant to Fed. R. Civ. P. 12(b)(1) and/or (6), for lack of jurisdiction or because they fail to state claims upon which relief can be granted. If the matter is not dismissed in its entirety, Dr. Drouillard requests that any claim by plaintiff Christopher M. Scharnitzke against him be dismissed because Dr. Drouillard neither examined him nor opined as to his medical condition. Alternatively, Dr. Drouillard requests that this matter be stayed until plaintiffs exhaust their WDCA process including any appellate rights.

**BUTZEL LONG**

/s/Katherine D. Goudie
Daniel B. Tukel (P34978)
Lynn A. Sheehy (P38162)
Katherine D. Goudie (P62806)
150 West Jefferson, Suite 100
Detroit, Michigan 48226
(313) 225-7000
tukel@butzel.com
sheehy@butzel.com
goudie@butzel.com

DATED: June 16, 2009

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CLIFTON E. JACKSON** and
**CHRISTOPHER M. SCHARNITZKE,**

      Plaintiffs, on behalf of themselves
      and other persons similarly situated,

v.

**SEGWICK CLAIMS MANAGEMENT SERVICES, INC.,**
and **COCA COLA ENTERPRISES, INC.,** foreign
corporations, and **DR. PAUL DROUILLARD,**
jointly and severally,

      Defendants.

Case No. 09-11529

Hon. David M. Lawson

---

**MARSHALL LASSER, P.C.**
By:   **Marshall Lasser (P25573)**
P.O. Box 2579
Southfield, Michigan 49037
(248) 647-7722
**Attorney for Plaintiffs**

**BUTZEL LONG**
By:   **Daniel B. Tukel (P34978)**
       **Lynn A. Sheehy (P38162)**
       **Katherine D. Goudie (P62806)**
150 W. Jefferson, Suite 100
Detroit, Michigan 48226
(313) 225-7000
**Attorneys for Defendant**
**Dr. Paul Drouillard**

---

DEFENDANT DR. PAUL DROUILLARD'S
BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1) and/or 12(b)(6)

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iv

QUESTIONS PRESENTED ..................................................................................... vii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ............................... viii

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS AND BACKGROUND ..................................................... 2

STANDARD OF REVIEW ....................................................................................... 6

ARGUMENT ............................................................................................................ 7

I.      THE WITNESS IMMUNITY DOCTRINE BARS PLAINTIFFS'
        CLAIMS AGAINST DR. DROUILLARD ............................................................ 7

II.     PLAINTIFFS HAVE FAILED TO PLEAD, AND CANNOT
        ESTABLISH AS A MATTER OF LAW, A CAUSE OF ACTION
        UNDER RICO PURSUANT TO FED. R. CIV. P. 12(b)(6) ................................ 16

        A.      Plaintiffs Failed to Sufficiently Plead the Existence of an
                Enterprise ............................................................................................. 17

        B.      Plaintiffs Failed to Plead that Dr. Drouillard's Alleged Conduct Is
                Connected to the Operation or Management of the Alleged
                Enterprise or that He Had Control over the Enterprise.............................. 19

        C.      Plaintiffs Fail to Plead the Necessary Two Predicate Acts against
                Dr. Drouillard......................................................................................... 22

III.    PLAINTIFFS' CLAIMS SHOULD BE BARRED WHEN THERE ARE
        STATE ADMINISTRATIVE AND APPELLATE COURT
        PROCEEDINGS THAT ADDRESS PLAINTIFFS' ENTITLEMENT TO
        WORKER'S COMPENSATION BENEFITS...................................................... 23

        A.      The Primary-Jurisdiction and *Burford*-Abstention Doctrines Apply
                to Dismiss, or Alternatively to Stay, These Proceedings.......................... 23

                1.      The Primary Jurisdiction Is in Michigan's Worker's Disability
                        Compensation Bureau...................................................................... 23

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

2.  The *Burford*-Abstention Doctrine Applies to Allow the WDCB to First Determine Plaintiffs' Entitlement to Benefits ......................... 25

B.  A Determination Through the WDCA Process, Regardless of the Outcome, Bars Plaintiffs' RICO Claims .................................................... 28

1.  If Plaintiffs Ultimately Are Awarded or Settle for Benefits, Plaintiffs Will Have No Loss to Establish a RICO Claim Pursuant to Fed. R. Civ. P. 12(b)(6) .................................................... 29

2.  If Benefits Are Ultimately Denied through the WDCA Process, Collateral Estoppel and/or the *Rooker-Feldman* Doctrine Will Bar Plaintiffs' RICO Claims Pursuant to Fed. R. Civ. P. 12(b)(1) ................................................................................................. 31

IV.  THE MCCARRAN-FERGUSON ACT PREEMPTS PLAINTIFFS' RICO CLAIMS .................................................................................................................... 33

CONCLUSION .............................................................................................................................. 34

# TABLE OF AUTHORITIES

**Cases:**

*Alterman v. Provizier*, 195 Mich. App. 422; 491 N.W.2d 868 (1992) .......................................... 31

*Ashcroft v. Iqbal*, No. 07-1015, 2009 U.S. LEXIS 3472 (May 18, 2009) ...................................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 7

*Berg v. First State Ins. Co.*, 915 F.2d 460 (9th Cir. 1990).............................................................. 30

*Bielaska v. Orley*, 1996 Mich. App. LEXIS 1175 (July 19, 1996)................................................ 11

*Briscoe v. LaHue*, 460 U.S. 325 (1983)................................................................................ 7, 9, 11

*Brown v. Cassens Transp. Co.,* 546 F.3d 347 (6th Cir. 2008)................................................. 24, 34

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).................................................................... *passim*

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)....................... 26

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ............................ *passim*

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ......................................... 30

*Fleischhauer v. Feltner*, 879 F.2d 1290 (6th Cir. 1989)............................................................... 30

*Frank v. D'Ambrosi*, 4 F.3d 1378 (6th Cir. 1993) ................................................................. 16, 17

*Gose v. Monroe Auto Equip. Co.*, 409 Mich. 147; 294 N.W.2d 165 (1980) ................................. 32

*Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644 (6th Cir. 2007).......................................... 31

*Imbler v. Pachtman*, 424 U.S. 409 ............................................................................................... 11

*Kahn v. Burman*, 673 F. Supp. 210 (E.D. Mich. 1987) .......................................................... 9, 10

*Lewis v. Drouillard, UPS & Liberty Mutual*, E.D. Mich. Case No. 2:09-cv-11059 .............. 13, 21

*Maiden v. Rozwood*, 461 Mich. 109; 597 N.W.2d 817 (1999)...................................................... 12

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...................................................................................... 8

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

*Monat v. State Farm Ins. Co.,* 469 Mich. 679; 677 N.W.2d 843 (2004) ...................................... 32

*Moon v. Harrison Piping Supply,* 375 F. Supp. 2d 577 (E.D. Mich. 2005) ............... 24, 25, 26, 27

*Nationwide Mutual Insurance Co. v. Cisneros,* 52 F.3d 1351 (6th Cir. 1995).............................. 33

*Polk v. Yellow Freight System,* 801 F.2d 190 (6th Cir. 1986) ...................................................... 32

*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706 (1996) ................................................................ 26

*Reves v. Ernst & Young,* 507 U.S. 170 (1993).............................................................................. 19

*Rogers v. Stratton Indus., Inc.,* 798 F.2d 913 (6th Cir. 1986) ....................................................... 7

*Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923)................................................................*passim*

*Rouse v. DaimlerChrysler Corp.,* 300 F.3d 711 (6th Cir. 2002) .................................................. 26

*Saro v. Brown,* 2001 U.S. App. Lexis 4473 (6th Cir. Mar. 15, 2001) .......................................... 30

*Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985) .................................................................... 30

*Simkins v. General Motors Corp.,* 453 Mich. 703; 556 N.W.2d 839 (1996)................................ 27

*United States v. Chance,* 306 F.3d 356 (6th Cir. 2002) ................................................... 7, 8, 17, 26

*United States v. Mendoza,* 464 U.S. 154, 159 n. 4 (1984)............................................................. 32

*United States v. Western Pac. R. R. Co.,* 352 U.S. 59 (1956)....................................................... 23

*VanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696, 699 (6th Cir. 2000)....... 16, 17, 22

**Statutes:**

15 USC § 1012(b) ......................................................................................................................... 33

18 U.S.C. § 1961 *et seq.*........................................................................................................*passim*

18 U.S.C. § 1962(c) ........................................................................................................... 16, 19, 22

M.C.L. 418.847(2) ........................................................................................................................ 28

M.C.L. 418.859a............................................................................................................................ 28

M.C.L. 418.861 ...................................................................................................... 28

M.C.L. 418.861a(14) ............................................................................................. 28

**Rules:**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ...................................................................................... *passim*

**Other Authorities:**

Wright & Miller, Federal Practice and Procedure, § 1356, p. 294 (2d Ed. 1990) .......................... 6

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

## QUESTIONS PRESENTED

I.   Should this Court dismiss the plaintiffs' claims against Dr. Drouillard under the Witness Immunity Doctrine when Dr. Drouillard is immune from liability for his medical reports, examinations, and anticipated testimony before the Michigan Worker's Disability Compensation Bureau?

Defendant Dr. Drouillard answers:     Yes

Plaintiffs will answer:               No

II.  Should this Court dismiss the plaintiffs' claims under the Racketeer Influenced and Corrupt Organization Act (RICO) against Dr. Drouillard when the plaintiffs have only alleged one predicate act against Dr. Drouillard, have failed to plead an enterprise separate from the pattern of alleged racketeering activity, and have failed to demonstrate that Dr. Drouillard's medical examination and written report were connected to the operation or management of the alleged enterprise?

Defendant Dr. Drouillard answers:     Yes

Plaintiffs will answer:               No

III. Should this Court dismiss the plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) when there are ongoing state administrative proceedings and available appellate courts proceedings, which the plaintiffs have not yet exhausted, to address their entitlement to worker's disability compensation benefits; and if the plaintiffs succeed in the state forum, they cannot establish damages to support their RICO claims, and conversely, if there is a determination that the plaintiffs are not entitled to benefits, collateral estoppel and/or the *Rooker-Feldman* Doctrine will bar the plaintiffs' RICO claims?

Defendant Dr. Drouillard answers:     Yes

Plaintiffs will answer:               No

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

**Issue I:**

    *Bielaska v. Orley*, 1996 Mich. App. LEXIS 1175 (July 19, 1996)

    *Briscoe v. LaHue*, 460 U.S. 325 (1983)

    *Kahn v. Burman*, 673 F. Supp. 210 (E.D. Mich. 1987)

    *Maiden v. Rozwood*, 461 Mich. 109; 597 N.W.2d 817 (1999)

    *Mitchell v. Forsyth*, 472 U.S. 511 (1985)

**Issue II:**

    *Frank v. D'Ambrosi*, 4 F.3d 1378 (6th Cir. 1993)

    *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)

    *United States v. Chance*, 306 F.3d 356, 372 (6th Cir. 2002)

    *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696 (6th Cir. 2000)

**Issue III:**

    *Alterman v. Provizier*, 195 Mich. App. 422, 424; 491 N.W.2d 868 (1992)

    *Brown v. Cassens Transp. Co.,* 409 F. Supp. 2d 793 (E.D. Mich. 2005), *reversed on other grounds*, 546 F.3d 347 (6th Cir. 2008)

    *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)

    *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)

    *Fleischhauer v. Feltner,* 879 F.2d 1290 (6th Cir. 1989)

    *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644 (6th Cir. 2007)

    *Monat v. State Farm Ins. Co.,* 469 Mich. 679; 677 N.W.2d 843 (2004)

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

*Moon v. Harrison Piping Supply,* 375 F. Supp. 2d 577 (E.D. Mich. 2005), *reversed on other grounds,* 465 F.3d 719 (6th Cir. 2006)

*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 719 (1996)

*Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923)

*Rouse v. DaimlerChrysler Corp.,* 300 F.3d 711 (6th Cir. 2002)

*Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985)

*United States v. Western Pac. R. R. Co.,* 352 U.S. 59 (1956)

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

## **INTRODUCTION**

Defendant Dr. Paul Drouillard ("Dr. Drouillard") is a Board Certified Orthopedic Surgeon. He has an active surgical practice though which he provides direct patient care. Dr. Drouilllard also performs independent medical examinations ("IMEs") to assess individuals who may have medical related claims. The two named plaintiffs are Coca Cola employees who received worker's compensation disability benefits that were discontinued after a period of time. Dr. Drouillard performed an IME on only one of the two plaintiffs in this case, Clifton Jackson, and will offer testimony as to his medical conclusions in the pending state administrative proceedings before the Michigan Worker's Disability Compensation Bureau.[1]

Plaintiffs' counsel has made clear through public statements that he "detests" employers exercising their rights to engage physicians to perform independent medical examinations of worker's disability compensation claimants. He is using this matter, and others like it, as a vehicle to attempt to damage to Dr. Drouillard's medical practice, his livelihood and his reputation in the marketplace, and to drive physicians from providing independent medical examinations.

Dr. Drouillard provided an independent medical examination of Mr. Jackson on January 14, 2009, and opined that he could return to work. Dr. Drouillard's opinion came after other physicians had released him to return to work and after Mr. Jackson admitted to playing basketball on a fairly regular basis. Mr. Jackson's Worker's Disability Compensation Act

---

[1]  Dr. Drouillard never examined Christopher Scharnitzke or offered any opinion as to his medical condition, and is entitled to dismissal as to any claims by plaintiff Scharnitzke for that reason.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

("WDCA") claim is still at a preliminary stage. The WDCA Magistrate has not yet made a determination as to whether or not Jackson is entitled to benefits.

Nonetheless, dissatisfied with Dr. Drouillard's medical conclusions, and apparently anticipating an unsuccessful WDCA claim, plaintiffs' counsel now attempts to use the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1961 *et seq.* – a federal racketeering statute designed to combat organized crime – as a weapon to both discredit medical conclusions with which he takes issue and to "reform" the WDCA. Plaintiffs and plaintiffs' attorney are using this matter, and others like it, as a vehicle to make personal attacks on Dr. Drouillard, and to damage his livelihood and his reputation in the medical community and marketplace. This matter is a thinly veiled attempt to prevent employers from seeking IMEs, and to discourage qualified physicians from conducting IMEs.

Dr. Drouillard asks this Court to grant this Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) Motion to Dismiss[2] because this Court lacks subject matter jurisdiction over this action and because the Complaint fails to state claims upon which relief can be granted.

## STATEMENT OF FACTS AND BACKGROUND

The two named plaintiffs are Coca Cola employees who received worker's compensation disability benefits that were discontinued after a period of time. They filed this purported RICO lawsuit against Dr. Paul Drouillard, their employer Coca Cola and Segwick Claims Management,

---

[2] Because this Motion is brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the following statement of facts is drawn from the plaintiffs' complaint. Citations to other pleadings and an interview given by plaintiffs' counsel is offered for background purposes, as this Motion is brought pursuant to Rule 12. This statement of facts is sufficient for the conclusive resolution of all legal issues addressed by Dr. Drouillard's Motion, and the outcome of this Motion could not be altered by any further amendment of the complaint.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

their employer's worker's disability compensation carrier. The complaint seeks certification as a class action.[3] Dr. Drouillard is included in this lawsuit because of the anticipated testimony he will provide in connection with the worker's disability compensation trial and discovery proceedings, and because of the medical reports that were generated in connection with his independent medical examination of one of the plaintiffs.

Plaintiffs are unhappy with the decisions that they anticipate will be made by the Worker's Disability Compensation Magistrate, the Appellate Commission, the Michigan Court of Appeals and/or the Michigan Supreme Court. Plaintiffs apparently anticipate being unsuccessful in the underlying WDCA proceedings. Despite the WDCA being the exclusive avenue of relief for covered injuries, plaintiffs now seek to have a different decision made by this Court, in the guise of a RICO violation.[4]

Mr. Jackson has not exhausted the worker's disability compensation process. His attorney is only in the discovery stage of his proceeding. He has not yet proceeded to trial before a worker's compensation magistrate. Therefore, it is not known yet who all the witnesses will be in that matter, how the trial will progress or what decision the magistrate will ultimately make. If the magistrate finds that Mr. Jackson is not entitled to benefits, he has the right to appeal that decision to the Appellate Commission. If the Appellate Commission also concludes that he is

---

[3] Dr. Drouillard will object to the purported class if the plaintiffs file to certify this matter as a class action.

[4] To prevail, one of the elements plaintiffs would need to prove is that the underlying reports were not merely wrong as a medical matter, but were fraudulent. They would also need to prove that the wrong decision was or will be made not only by the employer's insurance carrier, but also by the Worker's Disability Compensation Magistrate, and in the appellate process by the Appellate Commission, the Michigan Court of Appeals and/or the Michigan Supreme Court. If

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

not entitled to benefits, that decision can then be appealed to the Michigan Court of Appeals or to the Michigan Supreme Court. In short, there is a well ordered process to determine if plaintiffs are disabled such as to be entitled to WDCA benefits, to challenge Dr. Drouillard's or any other physician's medical conclusions, and to appeal any adverse finding. That is the venue to seek review of Dr. Drouillard's medical conclusions, not to ask this Court to turn the state worker's disability compensation process on its head and turn every potentially adverse finding into a second bite at the apple and call it a RICO violation.

Plaintiffs' counsel makes no bones about his motivation in bring this action. Plaintiffs' response to this Court's Order requiring plaintiffs' attorney to file a Rico Case Statement shows plaintiffs' attempt to sully Dr. Drouillard's reputation with impunity. Rather than simply providing alleged facts responsive to the Court's inquiries, plaintiffs' counsel pontificated on his own personal agenda, and in doing so reveals that his motivation is largely – whether or not these RICO claims are successful – to damage Dr. Drouillard's reputation and business interests, or to drive him and other physicians away from providing expert opinions.

Question 20 in the Order was to "provide any additional information that you feel would be helpful to the Court in processing your RICO claims." In response, plaintiffs' attorney stated, in part:

> Plaintiffs' attorney is a Michigan workers compensation specialist representing injured workers. *He detests the widespread use by workers compensation claims adjusters of dishonest IME doctors to cut off benefits*.

Exhibit A, Amended RICO Case Statement, p. 14 (emphasis added).

---

benefits are ultimately denied, this Court would need to re-try the issue of whether each of these plaintiffs is entitled to benefits due to a work-related disability.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

That statement has nothing to do with plaintiffs' claims. The personal feelings of plaintiffs'

attorney regarding experts retained to evaluate a worker's compensation claim provides

absolutely no information which could be "helpful to the Court" in processing a RICO claim.

The statement does, however, reveal plaintiffs' counsel's true motivation, which is to harm Dr.

Drouillard. Nor was this counsel's only statement intended to damage Dr. Drouillard. Counsel

repeatedly states that Dr. Drouillard "lies" and commits fraud. *See, e.g.,* Complaint, ¶ 18.[5]

Among the bases on which Dr. Drouillard seeks dismissal is the Witness Immunity

Doctrine. Plaintiffs' counsel apparently recognizes the well accepted Witness Immunity

Doctrine. In fact, in an interview he provided which was published on the Internet, he stated:

> *[I]n Michigan, no matter what you say in your IME report, you can't be*
> *sued.* So I was just stunned that this doctor [not Dr. Drouillard] could
> make this kind of money, . . .   That is when I really first saw the problem,
> but I didn't see RICO as the possible tool until much later.[6]

Exhibit B, Interview Tr. with Mr. Lasser which was posted on YouTube, at pp. 9:24-25, 10:1-6,

*video available at*, http://www.youtube.com/watch?v=kT8XM2P-deg (emphasis added).

---

[5] In the complaint, plaintiffs' counsel also intentionally disclosed information concerning Dr.
Drouillard's income which he knew had been produced in other litigation in other courts, and
which was subject to Protective Orders which prohibited disclosure except in the matter in which
produced. In fact, not only did plaintiffs' counsel improperly disclose such information in
violation of Protective Orders, the information he disclosed was inaccurate, and knowingly
inaccurate, in an effort to mislead this Court.

[6] Mr. Lasser was interviewed on YouTube and talked about this litigation. This quote is from
that interview. A transcript of the complete interview is attached as Exhibit B. The transcript has
been attached to this Motion to provide background for the Court and to demonstrate the
plaintiffs' knowledge about this defense. This Motion, however, has been brought by Dr.
Drouillard pursuant to 12(b)(6), and alternatively 12(b)(1), based on the plaintiffs' pleadings
only - without any reliance on the video transcript.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

Dissatisfied with Dr. Drouillard's medical conclusions, and notwithstanding his recognition of witness immunity, plaintiffs' counsel now attempts to use RICO – a federal racketeering statute designed to combat organized crime – as a "tool" to both discredit medical conclusions with which he takes issue and to "reform" the WDCA.

Dr. Drouillard now moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6). This Court lacks subject matter jurisdiction over this action because of the existence of the ongoing state administrative proceedings on the plaintiffs' worker's compensation claims, proceedings which are still ongoing. Moreover, the Witness Immunity Doctrine, other dispositive arguments proffered below, and the alleged role of Dr. Drouillard in this purported RICO claim, which the complaint concedes was extremely limited, all entitle Dr. Drouillard to dismissal.

## STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to test the formal sufficiency of the statement of the claim for relief. Such a motion challenges whether the plaintiff has stated a claim. 5A Wright & Miller, Federal Practice and Procedure, § 1356, p. 294 (2d Ed. 1990). Since this motion tests only the legal sufficiency of claims stated in the complaint, it must be evaluated solely on the basis of the content of the complaint. *Id.* at 298.

The Supreme Court has recently clarified the pleading standard necessary to avoid dismissal. *Ashcroft v. Iqbal*, __ U.S. __, *available at* No. 07-1015, 2009 U.S. LEXIS 3472 (May 18, 2009) (attached as Exhibit C). The Court stated that merely setting forth the elements of a claim along with conclusory allegations is insufficient. Rather, sufficient *facts* must be alleged, to state a claim which is not only possible, but plausible:

- 6 -

> To survive a motion to dismiss, *a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at \*29 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

Dr. Drouillard alternatively relies on Rule 12(b)(1) as grounds to dismiss the plaintiffs' claims. Where a motion challenges the Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

## ARGUMENT

## I.   THE WITNESS IMMUNITY DOCTRINE BARS PLAINTIFFS' CLAIMS AGAINST DR. DROUILLARD

Dr. Drouillard is immune from civil liability for his testimony, medical reports, and examinations under the Witness Immunity Doctrine. The United States Supreme Court, in *Briscoe v. LaHue*, 460 U.S. 325, 345-346 (1983), stated that:

> [C]ommon-law immunity for witnesses was well settled. The principles . . . to protect prosecutors also apply to witnesses, who perform a somewhat different function in the trial process but whose participation in bringing the litigation to a just – or possibly unjust – conclusion is equally indispensable.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

- 7 -

In *Brisco,* the plaintiffs sought to impose liability under 42 U.S.C. § 1983 against a police officer who had allegedly provided false testimony which plaintiffs claimed resulted in criminal convictions against them. The Court upheld the dismissal of the claim, finding the claim barred by witness immunity.

The Court stated that witness immunity was "absolute." *Id.* at 344. That absolute immunity precludes a claim against Dr. Drouillard for his medical examination reports and testimony for Mr. Jackson, the only plaintiff he examined in this action. The intent of the Witness Immunity Doctrine is to encourage open and honest testimony without fear of a subsequent lawsuit related to that testimony. As the *Brisco* Court stated, "witnesses might be reluctant to come forward to testify" if they were liable for the testimony; and "a witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence." *Id.* at 333. The Supreme Court made it perfectly clear that the Witness Immunity Doctrine applied to both public officials and private citizens: "The common-law immunity that protected witnesses as well as other participants in the judicial process drew no distinction between public officials and private citizens." *Id.* at 336 n.15.

In *Mitchell v. Forsyth*, 472 U.S. 511 (1985), in considering immunity to a governmental official, the United States Supreme Court discussed the underpinnings of witness immunity. The Court again emphasized the policy behind the doctrine, highlighting that unless witness testimony is shielded from liability, courts will be forced to retry underlying lawsuits against all opposing witnesses, expert and lay, in a "second suit" involving the same issues. The result

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

would be endless litigation over the same issues. It is for the finder of fact to weigh the credibility of each witness by cross examination and testimony, and each plaintiff here will have that opportunity during the litigation of his or her WDCA claim. The Supreme Court said it well: "the judicial process is an arena of open conflict, and in virtually every case there is, if not always a winner, at least one loser. It is inevitable that many of those who lose will pin the blame on . . . witnesses and will bring suit against them in an effort to relitigate the underlying conflict." *Id.* at 521-22.

In *Kahn v. Burman*, 673 F. Supp. 210 (E.D. Mich. 1987), *aff'd* 878 F.2d 1436 (6th Cir. 1989), this Court addressed a situation similar to that involved here. In *Kahn*, a physician was asked to assess another physician's treatment, for purposes of a medical malpractice action. The assessing physician issued reports to the attorney who had hired him critical of the treater's actions, and also provided deposition testimony. The treating physician filed suit against the assessing physician on a variety of theories, including fraudulent misrepresentation. This Court dismissed all claims, based on witness immunity.

The Court considered whether witness immunity provided a defense not only for experts who provided testimony, but also when they provided written reports even those prepared prior to litigation. In dismissing all claims, the *Kahn* Court stated:

> Logical concerns, both legal and policy-based, strongly suggest that *witness immunity encompasses experts' reports prepared either before or during litigation. . . . To hold otherwise would defeat the purpose of witness immunity, which is to ensure that the judicial process functions "unimpeded by fear on the part of its participants that they will be sued for damages for their part in the proceedings.*
>
> *As a matter of policy, also, witness immunity should extend to reports prepared by both potential and retained expert witnesses.* Justice Stevens reasoned in Briscoe that damage suits against witnesses must

> "yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as fee and unobstructed as possible. This policy of providing for reasonably unobstructed access to the relevant facts and issues mandates the extension of immunity to Dr. Burman for all statements that he made in his reports to Attorney Gray. The overriding concern for disclosure of pertinent and instructive expert opinions before and during medical malpractice actions is no less significant than the clearly-recognized need for all relevant factual evidence during the course of litigation.

*Id.* at 212-213 (emphasis added; citations omitted). The Sixth Circuit affirmed this Court's dismissal, based on witness immunity. *Kahn v. Burman,* 878 F.2d at 1436 (citing *Kahn*, 673 F. Supp. at 212-14).

The *Kahn* case further supports the dismissal of the complaint in this case against Dr. Drouillard. Regardless of the label given to this cause of action, plaintiffs, like the plaintiffs in *Kahn*, are seeking to impose liability against Dr. Drouillard for an expert report and future testimony in an underlying WDCA action. Dr. Drouillard is immune from liability related to his medical examination reports and future testimony.

Public policy requiring witness immunity is both obvious and overwhelming. The ability to impose civil liability on witnesses for reports and testimony given in preparation for litigation or in litigation would discourage all witnesses – whether lay or expert, and whether for the defendants or the plaintiff – from engaging in expert evaluation.[7] The threat of this new liability would discourage experts from testifying in cases when their expertise would be crucial to the trier of fact. Indeed, regardless of which party prevailed in litigation, *someone* would always be able to bring new litigation against the expert or witnesses for the prevailing party, and the result

would be endless litigation. Instead, the trier of fact should be able to weigh the credibility of each witness in the judicial proceeding and determine what weight, if any, particular testimony should be given. As Justice White stated in *Briscoe*:

> The reasons for this rule are also substantial. It is precisely the function of a judicial proceeding to determine where the truth lies. The ability of courts, under carefully developed procedures, to separate truth from falsity, and the importance of accurately resolving factual disputes in criminal (and civil) cases are such that those involved in judicial proceedings should be "given every encouragement to make a full disclosure of all pertinent information within their knowledge."

*Briscoe*, 460 U.S. at 335 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 439 (White, J., concurring)).

Furthermore, the examination of Mr. Jackson performed by Dr. Drouillard was performed in Michigan. The independent examination was performed under the umbrella of the Michigan WDCA. Michigan common law also provides absolute immunity for witness testimony and evaluations. For example, in *Bielaska v. Orley*, 1996 Mich. App. LEXIS 1175 (July 19, 1996), the Michigan Court of Appeals reviewed the dismissal of claims against experts who had examined children in conjunction with a child custody issue. The experts' evaluations and testimony concluding that there had been child abuse by the father, was taken into account in the custody trial. The trial court agreed with the experts, concluded that the father had abused the children and granted custody to the mother. Ultimately, that decision was reversed, and on remand custody was granted to the father.

---

7   Indeed, it is clear from Mr. Lasser's interview posted on YouTube that discouraging Dr. Drouillard and other examining physicians from performing IMEs and testifying is a primary motivation of this action.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

- 11 -

Based on the testimony in the first trial, the father brought suit against the experts in a second lawsuit. The trial court dismissed all claims in the second lawsuit, and the Court of Appeals affirmed. The *Beilaska* court relied on and quoted the Michigan Supreme Court decision in *Maiden v. Rozwood*, 461 Mich. 109, 133-34; 597 N.W.2d 817 (1999), which stated:

> [W]itnesses who testify during the course of judicial proceedings enjoy quasi-judicial immunity. This immunity is available to those serving in a quasi-judicial adjudicative capacity as well as "those persons other than judges without whom the judicial process could not function." Witnesses who are an integral part of the judicial process "are wholly immune from liability for the consequences of their testimony *or related evaluations*." . . . *Falsity or malice on the part of the witness does not abrogate the privilege.* The privilege should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation. [Internal citations omitted; emphasis added.]

The Michigan Supreme Court in *Maiden* rejected a claim that the witness immunity doctrine applied only to trial testimony. Rather, it found experts also immune from liability for all related evaluations. In addition, the Court made it clear that any allegations that the evaluations or testimony was false or submitted with malice was irrelevant, and that even in the face of such allegations experts were immune from liability for all evaluations and testimony. Here too, plaintiffs' allegations that Dr. Drouillard's statements were intentionally false are irrelevant because he has immunity relating to both his examinations and subsequent testimony.

In this case, plaintiffs are requesting that this Court step in *before* a worker's disability compensation magistrate has even made a ruling or had an opportunity to evaluate all of the evidence, including Dr. Drouillard's report and trial testimony.[8] Both plaintiffs' claims will be

---

[8] In another almost identical case pending before the Eastern District of Michigan, the plaintiffs are asking to **re-litigate** some claims that have already been decided by a magistrate in the Worker's Disability Compensation Bureau or at various stages of appellate review in the

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

carefully considered by the magistrates and judges in the WDCA arena. Those finders of fact will have a full opportunity to review and weigh *all* the competing evidence; the plaintiffs' medical records, testimony of the plaintiffs' treating doctors, testimony of plaintiffs' expert doctors, testimony of eye witnesses, testimony of company employees, testimony of private investigators, and the report and testimony of a doctor hired by the employer to perform an independent medical examination. The testimony of each and every witness either was, or will be considered and the credibility of each witness was or will be weighed before making a decision. This Court should not allow a plaintiff who anticipates being unsuccessful in the underlying action to now litigate against one of the witnesses.

The public policy underscored by the Witness Immunity doctrine will be eliminated if this lawsuit is allowed to proceed. In the interview posted on YouTube, plaintiffs' counsel indicates that he does not trust the finder of fact to weigh the credibility of the expert witness. Counsel for plaintiffs clearly states his intentions and motivations during this interview. He makes it perfectly clear that he has a philosophical issue with qualified experts being compensated in amounts he considers excessive, and that he intends to "fix" Michigan legislation by suing the defendants in this action:

> Samuel Lasser: *The only way to bring this -- bring this system to light, the broken system to light, you felt was pursue a RICO claim in Federal Court?*
>
> Marshall Lasser: *That's the only thing -- yeah, that's the only thing I have found that seems to have a hope of worth of fixing the system.*

Exhibit A, at p. 35:7-13 (emphasis added).

---

worker's compensation arena. *See Lewis v. Drouillard, UPS and Liberty Mutual* (E.D. Mich. Case No. 2:09-cv-11059-RHC-MJH).

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

> Marshall Lasser: . . . *[Y]ou have got to get rid of the system where a man can make 300, 400, 500, \$600,000 dollars a year doing IME's for insurance companies, or for the plaintiff, for that matter, because of the fantastic bias it involves, and the fraud that it encourages. I hope that's what the result is.*

*Id.* at p. 33:15-20 (emphasis added).

Mr. Lasser states repeatedly that he believes the system is broken because medical doctors, in this case a board certified orthopedic surgeon, are paid what Mr. Lasser believes to be too much money for examinations, report writing, depositions and trial testimony. He criticizes the entire system, including the judges and magistrates in Michigan who sit as the finders of fact:

> Samuel Lasser: *Do you get the sense that workers comp, you know judges, or magistrates in Michigan, and maybe the courts at the State level also are sort of apathetic to the situation?*
>
> Marshall Lasser: Very good question. *I've been really bitterly disappointed by the lack of interest the workers' compensation magistrates have shown* in the --·in my getting and putting -- and trying to put into evidence financial records of these IME doctors. It's like they don't care about it, they don't think it has any impact, which blows my mind. I mean, if a doctor is retired and he making 300 or \$500,000 dollars a year, or in the case of this Dr. Wesinger, \$800,000 a year, doing IME's just for the insurance companies, to me it completely destroys the credibility of his testimony. And yet, I believe that most of the magistrates here, they won't even let me discover -- they won't -- or my colleagues, they won't even let us discover that information. And *if we discover it, they don't seem to -- I've never -- never, ever seen a -- an opinion by a Magistrate or the appellate people -- here in Michigan they are called the Workers Comp Appellate Commission, never seen an opinion saying this doctor lacks creditability because of the enormous amount of money he is making doing this. And that just defies common sense, and it's really disappointing.*
>
> Samuel Lasser: . . . [D]o you get the sense that it's -- they turn a blind eye to it, or they don't care or --
>
> Marshall Lasser: That's what I am saying.
>
> Samuel Lasser*: They turn a blind eye to it?*

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

Marshall Lasser: *Yeah, they don't care. They don't --they don't care.*

*Id*. at pp. 33:21-25, 34:1-25, 35:1-6 (emphasis added).

Mr. Lasser even discusses the possibility that he will attempt to use criminal prosecution to "fix" the worker's disability compensation system if the doctors in these lawsuits do not settle this litigation:

> Samuel Lasser: And do you think that this is the type of case that will ultimately end up in front of a jury, or have you had negotiations with the defense side in this to resolve it?
>
> Marshall Lasser: [T]hey would be, I think, *idiots to fail to seriously negotiate settlement*, . . . Plus . . . there is the risk, and this is what the defendants all around the country should be concerned about. When discovery -- discovery may disclose fraud, which may result in indictments, . . . *I'm going to hustle it over to the Justice Department and perhaps under President Obama, and in this economic climate, corporate fraud and fraud by the doctors may, indeed, pique the interest of the Justice Department.*

*Id*. at pp. 38:15-25, 39:1-15 (emphasis added).

Mr. Lasser is unhappy with the current worker's disability compensation system, a system which Michigan law makes the exclusive remedy for employees claiming certain work-related injuries. He does not accept that the finder of fact – or the multi-level appellate process – is capable of properly weighing the credibility of a witness based on the testimony of that witness and the cross examination of opposing counsel. He is using this lawsuit, and others like it, to discourage doctors from testifying for fear they will be civilly and criminally prosecuted. If this lawsuit is allowed to proceed against Dr. Drouillard, the intent, purpose and public policy underlying the Witness Immunity doctrine will be gutted. Dr. Drouillard and his livelihood

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

- 15 -

should not be the victim of this frivolous claim.   Therefore, this Court should dismiss the plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   PLAINTIFFS HAVE FAILED TO PLEAD, AND CANNOT ESTABLISH AS A MATTER OF LAW, A CAUSE OF ACTION UNDER RICO PURSUANT TO FED. R. CIV. P. 12(b)(6)

Not only is Dr. Drouillard immunity from liability as stated above, the plaintiffs' complaint fails to plead claims under RICO for which relief may be granted.[9]   Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

The elements of a viable cause of action under 18 U.S.C. § 1962(c) are:  1) that there were two or more predicate offenses; 2) that an "enterprise" existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors.   *VanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696, 699 (6th Cir. 2000) (citing *Frank v. D'Ambrosi,* 4 F.3d 1378, 1385 (6th Cir. 1993)).   The plaintiffs' complaint relies on a theory of mail and wire fraud to establish the requisite predicate acts to support their RICO claims.

The plaintiffs, however, have failed to sufficiently plead pursuant to Rule 12(b)(6), and will never be able to prove as a matter of law, the second necessary element – the existence of an

---

[9]   The plaintiffs' complaint only references subsection (c) of 18 U.S.C. § 1962 as being violated under RICO.   *See, e.g.,* Complaint, ¶ 25.   The complaint does not mention a violation of any other subsection, and consequently, Dr. Drouillard's Motion only addresses subsection (c).

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

enterprise, or the third element – a pattern of racketeering activity on the part of Dr. Drouillard; or that Dr. Drouillard committed two or more predicate offenses.

## A.   Plaintiffs Failed to Sufficiently Plead the Existence of an "Enterprise"

The plaintiffs have not pled, and are unable to demonstrate factually, that an enterprise exists between Dr. Drouillard and the defendants *separate* from the pattern of racketeering activity alleged against them.  For an association-in-fact enterprise, the plaintiffs must plead and prove the following elements:   1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; 2) that the members of the enterprise functioned as a continuing unit with established duties; and 3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it allegedly engaged.  *United States v. Chance*, 306 F.3d 356, 372 (6th Cir. 2002) (citing *Frank,* 4 F.3d at 1386).

These elements have been interpreted to require a certain amount of organizational structure that eliminates simple conspiracies from RICO's reach.  The Sixth Circuit explained that "simply conspiring to commit a fraud is not enough to trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes. . . . *[T]he hallmark of a RICO enterprise is its ability to exist apart from the pattern of wrongdoing*." *VanDenBroeck,* 210 F.3d at 699 (emphasis added).

Here, there is no allegation nor any facts pled that Dr. Drouillard and the defendants were organized as a group to conduct affairs on a continuing basis, separate from the pattern of alleged wrongdoing.  The plaintiffs' alleged association-in-fact enterprise involving Dr. Drouillard is described as follows:

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

- 17 -

[T]he following persons or entities are an "enterprise" which acted to defraud plaintiffs of their workers compensation benefits:
\* \* \*

(2) the workers compensation claims personnel at Sedgwick who handled Michigan claims;

(3) the workers compensation claim personnel at Sedgwick who handled the Michigan claims, plus Dr. Drouillard;

(4) the workers compensation claim personnel at Coke and Sedgwick handling the Michigan claims, plus Dr. Paul Drouillard;

(5) the workers compensation defense attorneys may be and may have been part of the enterprise.[10]
\* \* \*

(10) Each enterprise was an organization which existed not only for the purpose of defrauding plaintiffs of their workers compensation benefits; the enterprise engaged in other activities, such as the administration of workers compensation claims and the examination of individuals claiming workers compensation and other benefits. . . .

Complaint, ¶¶ 9-10. With respect to the enterprise in which plaintiffs allege Dr. Drouillard participated, they describe the association with the defendants as follows: The defendants have "committed mail fraud, wire fraud and or conspiracy to defraud, in a repeated and continuing pattern over years, . . . by writing fraudulent medical reports and giving fraudulent deposition testimony, by hiring a doctor such as Paul Drouillard whom defendants knew would frequently give false testimony and or write false medical reports . . ." Complaint, ¶ 12.

Accordingly, the plaintiffs have not pled and cannot demonstrate as a matter of law, that the enterprise in which Dr. Drouillard is alleged to have participated was separate and distinct

---

[10] This is the fifth RICO Complaint filed by Mr. Lasser against companies and their insurance companies for termination of benefits. In this case, for the first time, Mr. Lasser is also asserting that the worker's compensation *defense attorneys* may also be part of the racketeering "enterprise."

from the pattern of racketeering activity in which the enterprise is claimed to have engaged. The plaintiffs simply allege that Dr. Drouillard was part of an enterprise to provide false medical reports and testimony. There are no allegations in the complaint demonstrating that Dr. Drouillard and the defendants have an association-in-fact enterprise that exists separate and apart from the alleged wrongdoing.

Dr. Drouillard merely examined one plaintiff, wrote his report, and sent it on. Dr. Drouillard did not participate (and there is no allegation he participated) in any decision to terminate benefits. Furthermore, there is no amendment to the complaint that the plaintiffs can make, in good faith, to correct the failure to allege facts sufficient to establish an enterprise that is separate and distinct from the alleged wrongdoing. Therefore, because the plaintiffs have not pled that there exists an association between Dr. Drouillard and the defendants apart from mailing medical reports, the plaintiffs' RICO claim should be dismissed pursuant to Rule 12(b)(6).

**B.** **Plaintiffs Failed to Plead that Dr. Drouillard's Alleged Conduct Is Connected to the Operation or Management of the Alleged Enterprise or that He Had Control over the Enterprise**

The plaintiffs' RICO allegations against Dr. Drouillard are fatally defective for another independent reason – there are no allegations to suggest that Dr. Drouillard participated in the operation and management of the alleged enterprise. Indeed, the plaintiffs' allegations demonstrate just the opposite.

In *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993), the Supreme Court adopted the "operation or management test" and held that, to have "conducted or participated, directly or indirectly, in the conduct of [an] enterprise's affairs" for purposes of Section 1962(c), a person must have had an operational or management role in the enterprise. The Court further noted that

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

the term "participate" in Section 1962(c) had a narrower meaning than merely to "aid and abet." *Id.* at 178. The Supreme Court in *Reves* also made it clear that a defendant must have "conducted or participated in the conduct of the '*enterprise's affairs*,' not just their *own* affairs." *Id.* at 185 (emphasis in original). Applying this reasoning, the Supreme Court in *Reves* concluded that a co-op's accounting firm did not participate in the enterprise by providing a report and drafting financial statements.

Here, the plaintiffs' complaint states that Dr. Drouillard was hired by the defendants to provide false medical reports and false testimony. *See, e.g.,* Complaint, ¶¶ 12-13. By plaintiffs' own admission he was hired to render professional services for the defendants, and in no way can the plaintiffs argue that he had an operational or management role in the alleged enterprise. No allegations are made that Dr. Drouillard had *any* control over Coca Cola or Sedgwick. The plaintiffs are precluded from amending their complaint to allege otherwise, because they have admitted that only Coca Cola and Sedgwick made the decisions pertaining to whether worker's compensation benefits would be paid, and that those defendants did so after having the chance to review reports from the plaintiffs' treating physicians:

- "Decisions regarding paying or denying Michigan workers compensation claims, and selecting doctors to do medical examination of claimants, were made by Sedgwick and or Coke, or by Sedgwick after consulting with Coke and with workers compensation defense attorneys, or were ratified by Coke after being made by Sedgwick in consultation with its workers compensation defense attorneys." Complaint, ¶ 8.

- "In each of these cases in which they terminated or denied benefits based on the report of a cut off doctor, Coke and Sedgwick and other defendants acted in bad faith and fraudulently in failing to give any consideration or due consideration to the reports and records of a claimant's treating doctors, once they had received the report of a cut off doctor, such as Dr. Drouillard." *Id.* at ¶ 16.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

Plaintiffs admit that Coca Cola and Sedgwick made the ultimate decision pertaining to the award or denial of worker's compensation benefits. The plaintiffs' complaint makes it clear that Dr. Drouillard only examined one of the plaintiffs and that the decision by Coca Cola and/or Sedgwick was made based on the consideration of reports from various doctors. The allegations demonstrate that Dr. Drouillard only provided the defendants with his professional medical opinion, and consequently, he did not participate in the operation or control of the enterprise.

Moreover, the existence of another RICO action against Dr. Droiullard with an entirely different defendant-employer and an entirely different defendant-insurance company further demonstrates the fact that Dr. Drouillard is working independently and not for the gain of an "enterprise." The plaintiffs' counsel filed another RICO case, *Lewis v. Drouillard, Liberty Mutual and UPS,* E.D. Mich. Case No. 2:09-cv-11059-RHC-MJH pending before Judge Cleland. In the Amended RICO Case Statement in this action, Mr. Lasser indicates that he intends to file yet another case against Dr. Drouillard, this one against yet another employer, DHL Holdings, Inc., alleging RICO violations.

The existence of these various pending and threatened lawsuits raises the logical question: How many separate enterprises can it be alleged that Dr. Drouillard was actually operating and managing? The plaintiffs are essentially arguing that each time Dr. Drouillard writes a medical report and finds no disability, a new "enterprise" is created with that employee's employer and its insurance carrier. If true, this means, according to the plaintiffs' RICO theory, that Dr. Drouillard is operating and managing numerous separate enterprises.

Such a theory clearly creates a slippery slope. If the Court allows this type of RICO action to proceed, employers, their insurance carriers, the doctors performing the IMEs (and

- 21 -

perhaps defense counsel) will be faced with lawsuits by every single employee who is unhappy that the decision about his or her worker's compensation benefits. Conversely, every time a doctor opines that there is a disability, a RICO violation exists between the doctor, the plaintiff, and the plaintiff's attorney. This was not the intended purpose of RICO. [11]

As such, the plaintiffs' allegations regarding the number of examinations that Dr. Drouillard has performed, along with the existence or threat of other RICO actions with UPS, DHL and their insurance companies, clearly demonstrate that Dr. Drouillard is working independently, and is not operating and managing numerous separate enterprises. This Court should therefore dismiss the plaintiffs' RICO claims against Dr. Drouillard pursuant to Rule 12(b)(6) because the Complaint fails to state a claim upon which relief can be granted.

### C.    Plaintiffs Fail to Plead the Necessary Two Predicate Acts against Dr. Drouillard

Plaintiffs must plead two or more predicate acts of an enterprise to state a viable cause of action under 18 U.S.C. § 1962(c). *VanDenBroeck,* 210 F.3d at 699. The "enterprise," here is alleged to have included Segwick, Coca Cola and Dr. Drouillard. The *only* predicate act alleged against Dr. Drouillard in that purported "enterprise" is the mailing by Dr. Drouillard of *one* report regarding Mr. Jackson. Dr. Drouillard did not examine Mr. Scharnitzke, or mail or wire any report regarding him. Therefore, regardless of the claims relating to Coca Cola and

---

[11] Plaintiffs allege for the first time in this Complaint that in addition to the examining physician the defense attorneys may also be part of the racketeering "enterprise." If plaintiffs' claims are allowed to proceed the only logical conclusion would be to allow RICO claims to be brought against every defense attorney every time a defense attorney hires an expert to provide testimony in a case which contradicts plaintiffs' experts' testimony and results in plaintiffs not recovering money. The absurdity of allowing these claims to proceed against Dr. Drouillard begs for further abuse of RICO.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

Segwick, there is only one alleged predicate act alleged against Dr. Drouillard. Accordingly, the Amended Complaint fails to plead two or more predicate acts and the Amended Complaint should be dismissed as to Dr. Drouillard.

### III. PLAINTIFFS' CLAIMS SHOULD BE BARRED WHEN THERE ARE STATE ADMINISTRATIVE AND APPELLATE COURT PROCEEDINGS THAT ADDRESS PLAINTIFFS' ENTITLEMENT TO WORKER'S COMPENSATION BENEFITS

#### A. The Primary-Jurisdiction and *Burford*-Abstention Doctrines Apply to Dismiss, or Alternatively to Stay These Proceedings

##### 1. The Primary Jurisdiction Is in Michigan's Worker's Disability Compensation Bureau

The primary-jurisdiction doctrine applies to the plaintiffs' RICO claims, and entitles Dr. Drouillard to dismissal. Mr. Jackson, the one plaintiff in this action examined by Dr. Drouillard, has a claim for worker's compensation benefits that is currently pending before the Worker's Disability Compensation Bureau ("WDCB"). Because that plaintiff's RICO claim depends, in part, on whether he is actually entitled to worker's compensation benefits – a determination that has not yet been made but which will be made by the WDCB – primary jurisdiction of this case lies with the WDCB.

The aim of the primary-jurisdiction doctrine is to "promot[e] proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pac. R. R. Co.*, 352 U.S. 59 (1956). The Supreme Court held that the doctrine applies when:

> [A] claim is originally cognizable in the courts, and comes into play whenever enforcement of a claim requires a resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case a judicial process is

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

> suspended pending referral of such issues to the administrative body for
> its views.

*Id.* at 63 − 64. The Supreme Court also emphasized the rationales underlying the doctrine: "the

desirable uniformity which would obtain if initially a specialized agency passed on certain types

of administrative questions"; and "the expert and specialized knowledge of the agencies

involved[.]" *Id.* at 64 (citations omitted).

Two RICO cases, almost identical to the instant case (although naming a different

examining physician), were previously filed before Judge Borman; *Brown v. Cassens Transp.*

*Co.,* 409 F. Supp. 2d 793 (E.D. Mich. 2005), and *Moon v. Harrison Piping Supply,* 375 F. Supp.

2d 577 (E.D. Mich. 2005).[12] In *Brown* and *Moon,* Judge Borman analyzed the applicability of

the primary-jurisdiction doctrine to those cases. While ultimately not reaching a conclusion on

whether the primary-jurisdiction doctrine applied, because it found that the *Burford*-abstention

doctrine applicable, Judge Borman's decisions nonetheless provide a useful analysis.

The primary-jurisdiction doctrine applies here. First, this Court has jurisdiction over the

plaintiffs' RICO claims. Second, the plaintiffs' RICO claims hinge, in part, upon whether the

plaintiffs are even entitled to worker's compensation benefits. Third, the WDCB, under the

Worker's Disability Compensation Act, has ***exclusive*** jurisdiction over all disputes involving

worker's disability compensation benefits. The WDCA at M.C.L. 418.841(1) states: "Any

dispute or controversy concerning compensation or other benefits shall be submitted to the

---

[12] Judge Borman dismissed both *Brown* and *Moon.* Those dismissals were reversed by the Sixth Circuit on other grounds. *See Brown,* 546 F.3d 347 (6th Cir. 2008); *Moon,* 465 F.3d 719 (6th Cir. 2006). *See also Brown,* 128 S. Ct. 2936 (U.S. 2008). Judge Borman's analysis of the primary jurisdiction and *Burford*-abstention doctrines, however, was not addressed by the Sixth Circuit on appeal.

bureau and all questions arising under this act shall be determined by the bureau or a worker's compensation magistrate, as applicable."

The factors emphasized by the Supreme Court also are present here. As Judge Borman in *Brown* and *Moon* reasoned:

> Given the complicated medical issues underlying Plaintiffs' entitlement to workers' compensation benefits, the WDCB, rather than the Court, possesses the necessary expertise and the specialized knowledge properly to resolve those underlying issues and, thus, the ultimate issues of Plaintiffs' entitlement to benefits. Deferring to the WDCB's determination of a plaintiff's entitlement to workers' compensation benefits in cases such as this would promote uniformity in such determinations. Thus, a consideration of the relevant factors counsels in favor of applying the primary-jurisdiction doctrine to stay the adjudication of Plaintiffs' RICO claims, if they survive the instant motion.

*Brown*, 409 F. Supp. 2d at 799; *Moon*, 375 F. Supp. 2d at 586-87. Therefore, this Court should dismiss this case because the primary jurisdiction lies in the WDCB. The WDCB has exclusive jurisdiction over claims for worker's compensation benefits, and a ruling from the Bureau, the Worker's Compensation Appellate Commission, or the state appellate courts on the issue of whether the plaintiffs are entitled to benefits is necessary before the plaintiffs can proceed on their RICO claims. Allowing the Board to address this threshold issue serves the agency-expertise rationale and judicial economy. Alternatively, if the matter is not dismissed, it should be stayed pending a final resolution of the underlying WDCA claims.

### 2. The *Burford*-Abstention Doctrine Applies to Allow the WDCB to First Determine Plaintiffs' Entitlement to Benefits

Dr. Drouillard is also entitled to dismissal under the "*Burford*-Abstention Doctrine," because a decision by this Court on the plaintiffs' RICO claims would interfere with the WDCB's proceedings when the WDCB has exclusive jurisdiction over the issue of the plaintiffs'

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

- 25 -

entitlement to worker's compensation benefits. The *Burford*-abstention doctrine was originally

recognized in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The doctrine applies "only if a

federal court's decision on a state law issue is likely to 'interfere with the proceedings or order of

state administrative agencies.'" *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 716 (6th Cir.

2002).

The Sixth Circuit stated that the purpose of this doctrine is to "avoid conflict with a

state's administration of its own affairs." *Id.* The Sixth Circuit further set forth factors for the

application of the doctrine:

> The *Burford* abstention [doctrine] should not be applied unless: (1) a case
> presents "difficult questions of state law bearing on policy problems of
> substantial public import whose importance transcends the result in the
> case then at bar," or (2) the "exercise of federal review of the question in a
> case and in similar cases would be disruptive of state efforts to establish a
> coherent policy with respect to a matter of substantial public concern."

*Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976.

The Supreme Court also noted that for claims involving equitable relief (one of the requested

forms of relief here), the federal court could dismiss or remand the complaint based on the

abstention doctrine, but for claims involving damages, the federal court could only enter a stay

order pending the state administrative adjudication of the claims. *Quackenbush v. Allstate Ins.*

*Co.*, 517 U.S. 706, 719, 731 (1996).

Moreover, Judge Borman in *Brown* and *Moon* concluded that the *Burford*-abstention

doctrine applied to stay the plaintiffs' RICO claims until there was a determination by the

WDCB on the plaintiffs' entitlement to benefits. The court held:

> Contrary to Plaintiffs' contention, the determination of their entitlement to
> workers' compensation benefits in this federal forum would likely frustrate
> or undermine Michigan's workers' compensation scheme, as set forth in

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

the WDCA. That administrative scheme is comprehensive, setting forth the nature and amount of the particular benefits to which it affords entitlement, the scope of any such entitlement, and the administrative and judicial processes for resolving any disputes regarding that entitlement. The determinations of Plaintiffs' entitlement to workers' compensation benefits often hinge upon complex medical issues. Given the expertise and specialized knowledge necessary to resolve such underlying issues properly, the determination of Plaintiffs' entitlement to workers' compensation benefits in this federal forum may result in adjudications that would be contrary to those of the WDCB. Indeed, the frequent resolution, in a federal forum, of a plaintiff's entitlement to workers' compensation benefits in cases such as this would likely undermine the uniformity and coherence in such determinations that Michigan seeks to achieve via its establishment of the WDCB.

*Brown*, 409 F. Supp. 2d at 802; *Moon*, 375 F. Supp. 2d at 589. The court further found that an employee's entitlement to benefits involved matters of substantial public concern or policy problems of a substantial public import, given that the purpose of the WDCA was to provide employees with an exclusive remedy for injuries "which [wa]s both expeditious and independent of proof of fault" and employers with "a liability which [wa]s limited and determinate." *Brown*, 409 F. Supp. 2d at 802; *Moon*, 375 F. Supp. 2d at 589 (quoting *Simkins v. General Motors Corp.*, 453 Mich. 703, 710; 556 N.W.2d 839 (1996)).

Dr. Drouillard has grounds for dismissal of the claims against him in their entirety. If, however, the claims are not dismissed, then like the courts in *Brown* and *Moon*, this Court should find that the *Burford*-abstention doctrine applies to stay the plaintiffs' claims. Michigan has a significant interest in overseeing its worker's disability compensation scheme as set forth in the WDCA. It is the Worker's Compensation Bureau and the WDCA appellate process which is in the best position to determine the plaintiffs' entitlement to worker's compensation benefits, and that determination is necessary for the plaintiffs to proceed on their RICO claims. The Michigan legislature entrusted these determinations with the WDCB to ensure that the balance is met

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

between the employee's speedy and no-fault recovery for work-related injuries and an employers' limited liability under the WDCA. Therefore, this Court has a minimal interest in determining whether the plaintiffs are entitled to benefits, and as such, this Court should stay the plaintiffs' claims in the event the claims are not fully dismissed on other grounds.

**B.    A Determination Through the WDCA Process, Regardless of the Outcome, Bars Plaintiffs' RICO Claims**

If this matter is not dismissed, the Court should stay the plaintiffs' RICO claims under the primary-jurisdiction or *Burford*-abstention doctrines to allow for a determination by the WDCB. However, the ultimate determination on plaintiffs' entitlement to benefits – whether in the plaintiffs' or Coca Cola's favor – acts as a bar to the plaintiffs' RICO claims, either by divesting this Court of subject matter jurisdiction or by preventing the plaintiffs from establishing damages to support their claims. In other words, this Court should dismiss the plaintiffs' RICO claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), because any ruling in the state proceedings will bar the litigation of the RICO claims. As discussed above, the plaintiffs should first exhaust their administrative remedies with the WDCB and appellate commission. Until they do so, this case is not ripe for review. However, once the WDCA process is concluded this litigation becomes futile for the plaintiffs.

Under the WCDA, in a contested benefits case the magistrate will issue an opinion and order, including his or her rulings on issues of law and fact. *See* M.C.L. 418.847(2). If any party disagrees with the magistrate's ruling, that party has the opportunity to appeal the decision to the Worker's Compensation Appellate Commission. *See* M.C.L. 418.859a. If, after receiving the ruling from the Appellate Commission, any party desires to appeal, that party must file leave to

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

- 28 -

appeal with the Michigan Court of Appeals and then the Michigan Supreme Court. *See* M.C.L. 418.861, 418.861a(14).

Regardless of the outcome at any stage in these proceedings, the plaintiffs' RICO claims will be barred either by their failure to prove an injury or damages, or by the doctrine of collateral estoppel and/or the doctrine referred to as the *Rooker-Feldman* doctrine pursuant to *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923).[13] The following chart summarizes the possible outcomes along with the corresponding doctrines/theories and Federal Rules of Civil Procedure that bar the plaintiffs' RICO claims, as discussed in greater detail below.

| Stage of State Proceedings | Outcome | Doctrine/Theory Barring RICO Claims |
|---|---|---|
| Trial with magistrate from Worker's Compensation Board of Magistrates (or ruling on remand after appeal) | award of benefits | no damages/injury - 12(b)(6) |
| | denial of benefits | collateral estoppel -12(b)(1) |
| Appeal with Worker's Compensation Appellate Commission | award of benefits | no damages/injury – 12(b)(6) |
| | denial of benefits | collateral estoppel – 12(b)(1) |
| Appeal with the Michigan Court of Appeals or Supreme Court after leave granted | award of benefits | no damages/injury – 12(b)(6) |
| | denial of benefits | collateral estoppel/*Rooker-Feldman* doctrine – 12(b)(1) |

**1.  If Plaintiffs Ultimately Are Awarded or Settle for Benefits, Plaintiffs Will Have No Loss to Establish a RICO Claim Pursuant to Fed. R. Civ. P. 12(b)(6)**

If either plaintiff is awarded benefits, whether by the magistrate or on appeal, or if either Plaintiff agrees to benefits in a settlement and redemption, he will have suffered no concrete

---

13    The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

financial loss to his business or property, a necessary element required for a RICO claim. An additional requirement of a RICO claim is that a plaintiff's "injury must 'flow from the commission of the predicate acts' . . . If no injury flowed from a particular predicate act, no recovery lies for the commission of that act." *Saro v. Brown*, 11 Fed. Appx. 387, 388; 2001 U.S. App. Lexis 4473 at **5-6 (6th Cir. Mar. 15, 2001) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985)). *See also Sedima*, 473 U.S. at 497 (stating "nor is the defendant liable to those who have not been injured.").

A plaintiff therefore can seek a civil remedy under RICO only if he or she has been injured in his business or property, as a result of a predicate act. *Id.* at 496. *See also Fleischhauer v. Feltner*, 879 F.2d 1290, 1300 (6th Cir. 1989) (holding that neither personal injury nor mental suffering are injury to business or property as defined by RICO); *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (holding that a showing of injury under RICO requires proof of financial loss, and not mere injury to a valuable intangible property interest).

Here, in the event the plaintiffs ultimately receive worker's compensation benefits, either by way of settlement or a decision from the WDCB magistrate or on appeal, the plaintiffs cannot demonstrate that they have suffered any loss. Without such a loss, they cannot establish a RICO claim as a matter of law, and Dr. Drouillard is entitled to dismissal under Fed. R. Civ. P. 12(b)(6).

commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

**2. If Benefits Are Ultimately Denied Through the WDCA Process, Collateral Estoppel and/or the *Rooker-Feldman* Doctrine Will Bar Plaintiffs' RICO Claims Pursuant to Fed. R. Civ. P. 12(b)(1)**

As discussed above, if plaintiffs receive benefits, they will be unable to prove an injury necessary to sustain a RICO claim. If, on-the-other-hand, plaintiffs are denied benefits, either by the magistrate after a trial or through the WDCA appellate process, it will have been determined that they were not entitled to benefits in the first place. In that case, they will be unable as a matter of law to establish the predicate acts of mail and wire fraud necessary to support a RICO claim, since that claim is solely based on the alleged fraudulent denial of benefits. A determination that plaintiffs are not entitled to benefits will collaterally estop them from relitigating the issue of their entitlement to benefits in this case.

The Sixth Circuit has listed four requirements for issue preclusion under the application of collateral estoppel:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007) (citation omitted).

In its application of collateral estoppel, Michigan also has relaxed its mutuality requirement – the requirement that the party "taking advantage of the earlier adjudication would have been bound by it had it gone against him." *Alterman v. Provizier*, 195 Mich. App. 422, 424; 491 N.W.2d 868 (1992). In *Alterman*, the court affirmed the defensive use of collateral estoppel even though the parties were not identical and mutuality did not exist. The plaintiff

settled a federal case on his counsel's advice. The plaintiff then retained new counsel and moved to set aside the settlement on the grounds that he was not competent. The federal court refused to set aside the settlement. The plaintiff then sued his former counsel for legal malpractice in allowing the settlement while the plaintiff was incompetent.

The trial court dismissed the plaintiff's claims under the doctrine of collateral estoppel and the Michigan Court of Appeals affirmed. The Court of Appeals found that the plaintiff was collaterally estopped from relitigating the issue of his alleged incompetence, an issue which he had a full and fair opportunity to litigate in federal court and lost. *Id.* at 426-27. *See also Monat v. State Farm Ins. Co.*, 469 Mich. 679, 695; 677 N.W.2d 843 (2004) (holding that mutuality is not required where collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue).

There are no Sixth Circuit cases suggesting that the mutuality requirement should be treated any differently under federal law for the defensive use of issue preclusion. *Cf. United States v. Mendoza*, 464 U.S. 154, 159 n. 4 (1984) (describing defensive collateral estoppel as "when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party.").

Furthermore, federal and Michigan state courts recognize the preclusive effect of final determinations by state administrative agencies, regardless of whether these determinations have been reviewed by a state court. *See, e.g., Polk v. Yellow Freight System*, 801 F.2d 190 (6th Cir. 1986)(barring the plaintiff from relitigating the reason for her termination in federal court when the Michigan Employment Security Commission denied unemployment benefits on the grounds that the plaintiff was terminated for misconduct); *Gose v. Monroe Auto Equip. Co.*, 409 Mich.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

147; 294 N.W.2d 165 (1980) (applying doctrine of res judicata with worker's compensation proceedings to bar litigation of the plaintiff's second claim for worker's compensation).

In the event that the magistrate denies plaintiffs' claims for worker's compensation benefits after a trial, the plaintiffs are collaterally estopped from relitigating the issue of their rights to benefits in this Court. The same holds true with a denial of benefits by the Worker's Compensation Appellate Commission or the state appellate courts. Indeed, if there is a ruling from one of the state appellate courts denying the plaintiffs' claim for benefits, the plaintiffs cannot request that this Court review the state court ruling under the *Rooker-Feldman* doctrine. *See Feldman,* 460 U.S. 462; *Rooker,* 263 U.S. 413.

The plaintiffs therefore will be unable to challenge the ruling on this issue by the state administrative agencies or state courts. If there is a ruling that they were not entitled to benefits in the first place, there can be no fraud on the part of the defendants. As a result, the plaintiffs will be unable to prove the fraud element necessary to support their mail and wire fraud and RICO claims. Therefore, this Court should dismiss Plaintiffs' RICO claims because the plaintiffs' claims for benefits should first be ruled upon by the WDCB, Appellate Commission, and/or the state appellate courts, and in the event that the plaintiffs' benefits are denied at any stage in the proceedings, collateral estoppel and/or the *Rooker-Feldman* doctrine will apply to divest the Court of subject matter jurisdiction pursuant to Fed. R Civ. P. 12(b)(1).

## IV.   THE MCCARRAN-FERGUSON ACT PREEMPTS PLAINTIFFS' RICO CLAIMS

The McCarran-Ferguson Act, 15 USC § 1012(b), precludes application of a federal statute that would invalidate a state law enacted for the purpose of regulating the business of insurance. *Nationwide Mutual Insurance Co. v. Cisneros,* 52 F.3d 1351 (6th Cir. 1995). RICO

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

does not relate to the business of insurance. The WDCA, on the other hand, is directly aimed at regulating the business of insurance. Allowing plaintiffs' RICO claims to survive would essentially invalidate the WDCA, by turning every denial of benefits into a RICO violation. Therefore, the McCarran-Ferguson Act precludes plaintiffs' claims and they should be barred.[14]

## CONCLUSION

For the foregoing reasons, Dr. Drouillard requests that this Court grant his Motion and dismiss plaintiffs' claims in their entirety, pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6). If the claims are not dismissed in their entirety, Dr. Drouillard requests that this Court grant his Motion to Dismiss Christopher M. Scharnitzke's Complaint against Dr. Drouillard because Dr. Drouillard never examined him or opined on his medical condition, and Mr. Scharnitzke makes no allegations against Dr. Drouillard. While Dr. Drouillard contends that the claims against him should be dismissed in their entirety, alternatively, Dr. Drouillard requests that this Court stay the action pending resolution of each of the plaintiffs' claims for worker's compensation benefits with the Workers Disability Compensation Bureau, Appellate Commission, and/or state courts.

---

[14] This issue was addressed by the Sixth Circuit in *Brown v. Cassens Transp. Co.*, 546 F.3d 347 (6th Cir. 2008), and in that case the Sixth Circuit did not agree with the position taken in this Motion. This issue is currently before the United States Supreme Court on Petition for a Writ of Certiorari. This defendant acknowledges negative treatment by the Sixth Circuit but raises dismissal based on the McCarran-Ferguson Act to preserve the argument. Dr. Drouillard also raises, in order to preserve the issue(s), any other issue(s) pending on appeal before the Sixth Circuit or in the Petition for Writ of Certiorari in *Brown*.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

**BUTZEL LONG**

/s/Katherine D. Goudie
Daniel B. Tukel (P34978)
Lynn A. Sheehy (P38162)
Katherine D. Goudie (P62806)
150 West Jefferson, Suite 100
Detroit, Michigan 48226
(313) 225-7000
tukel@butzel.com
sheehy@butzel.com
goudie@butzel.com

DATED:  June 16, 2009

**Certificate of Service**

I hereby certify that on June 16, 2009, I electronically filed the foregoing document, Defendant Dr. Paul Drouillard's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and Brief In Support, with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

> Marshall Lasser, Esq.
> P.O. Box 2579
> Southfield, Michigan  49037
> MLasserlaw@aol.com

**BUTZEL LONG**

/s/Katherine D. Goudie
Daniel B. Tukel (P34978)
Lynn A. Sheehy (P38162)
Katherine D. Goudie (P62806)
150 West Jefferson, Suite 100
Detroit, Michigan 48226
(313) 225-7000
tukel@butzel.com
sheehy@butzel.com
goudie@butzel.com

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS