UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFTON E. JACKSON and
CHRISTOPHER M. SCHARNITZKE,                    Case No: 09-cv-11529

      Plaintiffs,                                   The Honorable David M. Lawson

v.

SEGWICK CLAIMS MANAGEMENT SERVICES, INC.,
COCA-COLA ENTERPRISES, INC. and
DR. PAUL DROULILLARD,

      Defendants.

_____/

| | |
|---|---|
| Marshall D. Lasser (P25573) | Daniel B. Tukel (P34978) |
| Marshall D.Lasser, P.C. | Lynn A. Sheehy (P38162) |
| P.O. Box 2579 | Katherine D. Goudie (P62806) |
| Southfield, Michigan 49037 | Butzel Long |
| Telephone: (248) 647-7722 | 150 W. Jefferson, Suite 100 |
| mlasserlaw@aol.com | Detroit, Michigan 48226 |
| *Attorneys for Plaintiffs* | tukel@butzel.com |
| | sheehy@butzel.com |
| Thomas W. Cranmer (P25252) | goudie@butzel.com |
| Matthew F. Leitman (P48999) | Telephone: (313) 225-7000 |
| Miller Canfield Paddock & Stone, P.L.C. | *Attorneys for Defendant Dr. Paul Drouillard* |
| 840 West Long Lake Road, Suite 200 | |
| Troy, Michigan 48098 | |
| Telephone: (248) 879-2000 | |
| cranmer@millercanfield.com | |
| leitman@millercanfield.com | |
| *Attorneys for Defendant Coca-Cola* | |
| *Enterprises, Inc.* | |

_____/

**DEFENDANT COCA-COLA ENTERPRISES, INC.'S MOTION TO DISMISS, OR, IN
THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS, AND NOTICE OF JOINDER
IN DEFENDANT PAUL DROUILLARD'S MOTION TO DISMISS**

Pursuant to Fed.R.Civ.P. 12(b)(1) & 12(b)(6), Defendant Coca-Cola Enterprises, Inc. ("Coke") moves for dismissal of Plaintiffs' Complaint and all of the claims therein, or, in the alternative, for a stay of proceedings, and in support Coke says as follows:

1.     Plaintiffs are current or former employees of Coke who applied for and were denied continuing workers compensation disability benefits.  In this action, Plaintiffs assert against Coke a claim under the federal RICO statute, 18 U.S.C. 1964, based upon the allegedly-fraudulent denial of their claims for benefits.

2.     As described in detail in the supporting brief, Plaintiffs' claims fail as a matter of law and should be dismissed for the following reasons:

a.     No plaintiff may assert a RICO claim based upon the allegedly-fraudulent violation of a statutory duty where the statute that creates the duty also (i) establishes a specialized administrative scheme to enforce and regulate the duty and (ii) prescribes the exclusive remedy for any breach of the duty.  Here, Michigan's Workers Disability Compensation Act (i) establishes a specialized administrative scheme to enforce and regulate the duty to pay benefits to injured employees under the Act and (ii) prescribes the exclusive remedy for an injured employee and for an employee whose claim for benefits has been disputed  – even if disputed in bad faith.  Plaintiffs cannot use their RICO claim as an "end run" around the WDCA;

b.     The breach of statutory duties created under certain comprehensive administrative statutes – even when fraudulent – does not give rise to a RICO claim.  The duties created under the WDCA to pay benefits to injured employees and to do so on a timely basis are just such duties; even the fraudulent breach of these duties cannot support a RICO claim;

c.     Plaintiffs assert a RICO claim against Coke for violating 18 U.S.C. 1962(a).  In order to state a viable claim for violation of this statute, a plaintiff must allege injuries stemming directly from a defendant's use or investment of income obtained from a pattern of racketeering activity.  Plaintiffs do not make such an allegation against Coke – nor could they do so because they have no such injuries.

d.     Plaintiffs assert a RICO claim against Coke for violating 18 U.S.C. 1962(b).  In order to state a viable claim for violation of this statute, a plaintiff must allege (a) that the defendant acquired or maintained an interest in, or control

of, an enterprise through a pattern of racketeering activity, (b) how the defendant acquired or maintained control, and (c) that the interest defendant acquired in the enterprise was a proprietary one.  Plaintiffs do not make such allegations – nor could they.

 e. Plaintiffs assert a claim against Coke for violating 18 U.S.C. 1962(c).  In order to state a viable claim for violation of this statute, a plaintiff must allege that (1) the defendant (2) through the commission of two or more predicate acts, (3) constituting a pattern (4) of racketeering activity, (5) participated in (6) an enterprise (7) the activities of which affect interstate commerce.  Plaintiffs failed to sufficiently allege the existence of any enterprise, failed to sufficiently allege that Coke participated in the affairs of the enterprise, and failed to allege that Coke committed any predicate acts.

3. In addition to the grounds for dismissal listed in paragraph 2 above and explained in Coke's supporting brief, Coke joins in Defendant Paul Drouillard's motion to dismiss and adopts the following arguments by Dr. Drouillard in favor of dismissal and/or in favor of a stay of proceedings:

 a. Plaintiffs have failed to plead sufficiently the existence of a RICO enterprise (Dr. Drouillard's Brief at 17-19.)

 b. This Court should dismiss this action, should abstain from adjudicating Plaintiffs' claims, and/or should stay the action pursuant to the primary jurisdiction doctrine (Dr. Drouillard's Brief at 23-25.)

 c. This Court should dismiss this action, should abstain from adjudicating Plaintiffs' claims, and/or should stay the action pursuant to the Burford abstention doctrine (Dr. Drouillard's Brief at 25-28.)

 d. This Court should dismiss this action, should abstain from adjudicating Plaintiffs' claims, and/or should stay the action because the outcome of the administrative proceedings under the WDCA will bar Plaintiffs' RICO claims (Dr. Drouillard's Brief at 28-33.)

 e. This Court should dismiss this action, should abstain from adjudicating Plaintiffs' claims, and/or should stay the action pursuant to the Rooker-Feldman abstention doctrine (Dr. Drouillard's Brief at 29-32.)

 f. This Court should dismiss this action, should abstain from adjudicating Plaintiffs' claims, and/or should stay the action on the basis of reverse preemption by the McCarran-Ferguson Act (Dr. Drouillard's Brief at 33-34.)  Coke recognizes that the United States Court of Appeals for the Sixth Circuit

rejected this argument in *Brown v. Cassens Transp. Co.,* 546 F3d 347 (6th Cir. 2008). The defendant in that case has petitioned the United States Supreme Court for a writ of certiorari. Coke raises this issue to preserve it in the event that the decision of the Sixth Circuit is reversed, or the law otherwise changes.

4.      Counsel for Coke called counsel for Plaintiffs to seek concurrence in this motion and concurrence was denied.

WHEREFORE, Coke respectfully requests that this Court enter an order dismissing Plaintiffs' Complaint and all of the claims therein with prejudice, that the Court enter judgment against Plaintiffs and in favor of Coke, and that the Court award Coke it attorneys fees, costs, and any other relief deemed appropriate. In the alternative, Coke respectfully requests that this Court enter an order staying this action pending a final decision on Plaintiffs' pending administrative proceedings challenging the denials of their claims for benefits.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By:    s/Matthew F. Leitman
        Thomas W. Cranmer (P25252)
        Matthew F. Leitman (P48999)
        Miller Canfield Paddock & Stone, P.L.C.
        840 West Long Lake Road, Suite 200
        Troy, Michigan 48098
        Telephone: (248) 879-2000
        cranmer@millercanfield.com
        leitman@millercanfield.com
        *Attorneys for Defendant Coca-Cola Enterprises, Inc.*

Dated: July 15, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFTON E. JACKSON and
CHRISTOPHER M. SCHARNITZKE,                    Case No: 09-cv-11529

      Plaintiffs,                              The Honorable David M. Lawson

v.

SEGWICK CLAIMS MANAGEMENT SERVICES, INC.,
COCA-COLA ENTERPRISES, INC. and
DR. PAUL DROULILLARD,

      Defendants.

_____/

| | |
|---|---|
| Marshall D. Lasser (P25573) | Daniel B. Tukel (P34978) |
| Marshall D. Lasser, P.C. | Lynn A. Sheehy (P38162) |
| P.O. Box 2579 | Katherine D. Goudie (P62806) |
| Southfield, Michigan 49037 | Butzel Long |
| Telephone: (248) 647-7722 | 150 W. Jefferson, Suite 100 |
| mlasserlaw@aol.com | Detroit, Michigan 48226 |
| *Attorneys for Plaintiffs* | tukel@butzel.com |
| | sheehy@butzel.com |
| Thomas W. Cranmer (P25252) | goudie@butzel.com |
| Matthew F. Leitman (P48999) | Telephone: (313) 225-7000 |
| Miller Canfield Paddock & Stone, P.L.C. | *Attorneys for Defendant Dr. Paul Drouillard* |
| 840 West Long Lake Road, Suite 200 | |
| Troy, Michigan 48098 | |
| Telephone: (248) 879-2000 | |
| cranmer@millercanfield.com | |
| leitman@millercanfield.com | |
| *Attorneys for Defendant Coca-Cola* | |
| *Enterprises, Inc.* | |

_____/

**BRIEF IN SUPPORT OF DEFENDANT COCA-COLA ENTERPRISES, INC.'S
MOTION TO DISMISS, OR, IN THE ALTERNATIVE,
FOR A STAY OF PROCEEDINGS**

<u>STATEMENT OF QUESTIONS PRESENTED</u>

I.     Plaintiffs assert three different RICO claims against Defendant Coca-Cola Enterprises, Inc. ("Coke").   The claims are based upon Coke's alleged violation of duties it purportedly owed to Plaintiffs under Michigan's Workers Disability Compensation Act ("WDCA"): namely, the duties to fairly and honestly evaluate Plaintiffs' claims for disability benefits.   The WDCA establishes a comprehensive and exclusive administrative scheme to determine whether an employer/insurer has complied with its duties under the statute and has properly denied a claim for benefits.   In light of the WDCA's comprehensive and exclusive administrative and remedial provisions, should this Court dismiss Plaintiffs' RICO claims?

         Coke says:     YES

II.    As noted above, Plaintiffs seek to hold Coke liable under RICO based upon Coke's violation of duties created by the WDCA.   But the duties created by the WDCA are not the type of duties that when breached – even fraudulently – give rise to RICO liability. Should this Court dismiss Plaintiffs' RICO claims based on breaches of duties owed under the WDCA?

         Coke says:     YES

III.   Plaintiffs assert a RICO claim against Coke for violating 18 U.S.C. 1962(a).  In order to state a viable claim for violation of this statute, a plaintiff must allege injuries stemming directly from a defendant's use or investment of income obtained from a pattern of racketeering activity.  Plaintiffs do not make such an allegation against Coke – nor could they do so because they have no such injuries.  Should this Court dismiss Plaintiffs' claim for violation of 18 U.S.C. 1962(a)?

         Coke says:     YES

IV.    Plaintiffs assert a RICO claim against Coke for violating 18 U.S.C. 1962(b).  In order to state a viable claim for violation of this statute, a plaintiff must allege (a) that the defendant acquired or maintained an interest in, or control of, an enterprise through a pattern of racketeering activity, (b) how the defendant acquired or maintained control, and (c) that the interest defendant acquired in the enterprise was a proprietary one. Plaintiffs do not make such allegations – nor could they.  Should this Court dismiss Plaintiffs' claim for violation of 18 U.S.C. 1962(b)?

         Coke says:     YES

## STATEMENT OF QUESTIONS PRESENTED, CONTINUED

V.      Plaintiffs assert a claim against Coke for violating 18 U.S.C. 1962(c).  In order to state a
        viable claim for violation of this statute, a plaintiff must allege that (1) the defendant (2)
        through the commission of two or more predicate acts, (3) constituting a pattern (4) of
        racketeering activity, (5) participated in (6) an enterprise (7) the activities of which affect
        interstate commerce.   Plaintiffs failed to sufficiently allege the existence of any
        enterprise, failed to sufficiently allege that Coke participated in the affairs of the
        enterprise, and failed to allege that Coke committed any predicate acts.  Should this Court
        dismiss Plaintiffs' claim for violation of 18 U.S.C. 1962(c)?

             Coke says:     YES

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Issue I:**   **Plaintiffs Cannot Use Their RICO Claim as an "End Run" Around the Comprehensive and Exclusive Procedures and Remedies Established by the Workers Disability Compensation Act**

*Couture v. General Motors Corp.*, 125 Mich. App. 174, 335 N.W.2d 668 (1983)

*Danielsen v. Burnside-Ott Aviation*, 746 F.Supp. 170 (D.D.C. 1990), aff'd 941 F.2d 1220 (D.C. Cir. 1991)

*Harper v. Autoalliance Int'l Inc*., 392 F.3d 195 (6th Cir. 2000)

*Livingston v. Shore Slurry Seal, Inc*., 98 F.Supp.2d 594 (D.N.J. 2000)

*Warner v. Collavino Bros.*, 133 Mich. App. 230, 347 N.W.2d 787 (1984)

28 U.S.C. 1445(c)

**Issue II:**   **Plaintiffs' RICO Claims Fail Because They Are Based Upon Coke's Breach of Duties Owed to Plaintiffs Under the WDCA, But the Breach of Such Duties – Even Where Fraudulent – Does Not Give Rise to Liability Under RICO**

*Ayres v. General Motors Corp*., 234 F.3d 514 (11th Cir. 2000)

*McCulloch v. PNC Bank*, 298 F.3d 1217 (11th Cir. 2002)

**Issue III:**   **Plaintiffs Have Failed to State a Claim for Violation of 18 U.S.C. 1962(a)**

*Craighead v. E. F. Hutton Co., Inc*., 899 F.2d 485 (6th Cir. 1990)

*Eby v. Producers Co-Op, Inc*., 959 F.Supp. 428 (W.D. Mich. 1997)

**Issue IV:**   **Plaintiffs Have Failed to State a Claim for Violation of 18 U.S.C. 1962(b)**

*Advocacy Org. for Patients v. Auto Club Ins. Co*., 176 F.3d 315 (6th Cir. 1999)

*Whaley v. Auto Club Ins. Assoc*., 891 F.Supp. 1237 (E.D. Mich. 1995)

## CONTROLLING OR MOST APPROPRIATE AUTHORITY, CONTINUED

**Issue V:**     **Plaintiffs Have Failed to State a Claim for Violation of 18 U.S.C. 1962(c)**

*Armbruster v. K-H Corp.*, 206 F.Supp.2d 870 (E.D. Mich. 2002)

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)

*Sedima, S.P.R.L. v. IMREX Co., Inc.*, 473 U.S. 479 (1985)

## INTRODUCTION

Plaintiffs Christopher Scharnitzke and Clifton Jackson, current or former employees of Defendant Coca-Cola Enterprises, Inc. ("Coke"), applied for, and were denied, continuing workers compensation disability benefits.  They insist that they were in fact disabled and were entitled to the benefits they sought.  They have challenged the denials of their claims for benefits under the comprehensive and exclusive administrative scheme established by the Michigan Workers Disability Compensation Act, MCL 418.101, *et. seq*. ("WDCA").  But they are not content to let that required state administrative process run its course.  They have filed this action in an attempt to convert their workers compensation disputes into a federal RICO case – the basis of which is the Defendants' allegedly-fraudulent violation of the WDCA.

Plaintiffs' effort to convert their disputes over benefits into RICO claims, while creative, must be rejected.  Plaintiffs' RICO claims seek to expand RICO far beyond its intended reach.  As the federal courts have repeatedly held, a plaintiff may not use a RICO claim as an "end run" around a comprehensive, specialized, and exclusive administrative scheme like the scheme established by the WDCA.  Yet that is precisely what these Plaintiffs seek to do.

Plaintiffs' RICO claims here are especially objectionable because they seek to substantially modify Michigan's workers compensation regime – a regime that was the product of a careful state legislative compromise.  For instance, Plaintiffs seek to recover treble damages and attorneys fees even though the Michigan Legislature strictly limited liability for disputing a workers compensation claim – even if the dispute was lodged in bad faith.  Plaintiffs may not use their federal RICO claim to re-write Michigan's workers compensation law; allowing them to do so would be a wholly unwarranted federal intrusion into Michigan state law and procedure.

Furthermore, as explained in detail below, a breach of duties created by the WDCA –
even if fraudulent – simply does not give rise to a RICO claim, and that is yet another reason
Plaintiffs' RICO claims must fail.

This Court should reject Plaintiffs' effort to radically expand the RICO statute to include
"garden variety" workers compensation disputes like the one here.  Any other result would lead
to a flood of RICO actions by disappointed workers compensation insurance claimants.

Even if RICO applied under these circumstances, Plaintiffs' claims would still fail as a
matter of law because Plaintiffs have not alleged – and cannot allege – the essential elements of
any of their claims.  Plaintiffs assert a RICO claim for violation 18 U.S.C. 1962(a) but fail to
plead the required element that they suffered a distinct injury as a result of Coke's investment of
the proceeds of racketeering activity.  Plaintiffs assert a second RICO claim for violation of 18
U.S.C. 1962(b) but fail to plead the required elements that Coke acquired or maintained control
of an enterprise through a pattern of racketeering activity and that they (Plaintiffs) suffered a
distinct injury as a result of this conduct by Coke.  Plaintiffs assert a final RICO claim for
violation of 18 U.S.C. 1962(c) but fail to sufficiently allege that Coke was part of an enterprise,
that Coke participated in the affairs of an alleged enterprise, and that Coke committed two or
more predicate acts of mail or wire fraud.

Plaintiffs' first response to all of these arguments will surely be that the United States
Court of Appeals for the Sixth Circuit recently "recognized [their RICO] cause of action" in
*Brown v. Cassens Transport Co*., 546 F.3d 347 (6th Cir. 2008). (Pls. RICO Case Statement at
Question 20, page 14.)  But the Sixth Circuit did no such thing in *Brown*.  It simply rejected the
specific challenges raised by the defendants in that action – challenges that differ from those
raised here.  *Brown* does not open the door to this Court for these Plaintiffs.

## THE NATURE OF PLAINTIFFS' CLAIMS

Plaintiffs are current or former employees of Coke. (Compl. at 4.)[1]  Coke provided Plaintiffs with workers compensation disability insurance. (*Id*. at ¶6.)  Coke hired Sedgwick Claims Management Services, Inc. ("Sedgwick") to adjust and administer disability claims by Plaintiffs and other Coke employees. (*Id*.)  Plaintiffs submitted claims for continuing disability benefits based upon purportedly disabling work-related injuries.  Plaintiff Scharntizke initially received benefits, which were later "cut off," and Plaintiff Jackson's request for benefits was denied. (*Id*. at 31(A) and 31(B).)

Plaintiffs allege that they were denied continuing benefits as the result of an alleged far-reaching fraudulent conspiracy between Defendants Coke, Sedgwick, and Dr. Paul Drouillard, a physician engaged by Sedgwick to conduct medical examinations of claimants.  Plaintiffs insist that Coke and/or Sedgwick (1) directed claimants like them to obtain an "independent" medical examination from Dr. Drouillard knowing that the doctor was not independent and that he would find essentially all claimants able to work and then (2) used Dr. Drouillard's reports as a basis for denying or terminating benefits to which the claimants were entitled. (*See generally id.* at ¶¶12-15.)  According to Plaintiffs, the Defendants' fraudulent conduct violated duties that Defendants owed to Plaintiffs under the Workers Disability Compensation Act, MCL 418.101 et. seq., and under the Michigan Uniform Trade Practices Act, MCL 500.2001, *et. seq*. (*Id*. at ¶¶16-17.)

Plaintiffs allege that Defendants may be held liable for their breaches of these Michigan statutes under the federal RICO statute, 18 U.S.C. 1964(1) (creating civil action for substantial RICO violations).  Specifically, Plaintiffs allege that Defendants' conduct violated 18 U.S.C.

---

[1] Because this is a motion under Fed.R.Civ.P. 12(b)(6), Coke takes Plaintiffs' allegations as true, as it must.  By reciting the allegations above, Coke does not mean to indicate that it accepts any of them as true.

1962(a) (prohibiting investment of income derived from racketeering activity), 18 U.S.C. 1962(b) (prohibiting acquiring or maintaining an interest in an enterprise through a pattern of racketeering activity), and 18 U.S.C. 1962(c) (prohibiting participating in the affairs of an enterprise through a pattern of racketeering activity). (*Id*. at ¶¶24, 26.)

But Plaintiffs acknowledge that they do not yet have any actual evidence that Coke conspired with anyone about anything: their key allegations are all "based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery." (*See, e.g., id*. at ¶8 (allegation concerning how decisions on claims were made); ¶9 (enterprise allegations); ¶15 (fraud allegations); ¶16 (same).)   Likewise, Plaintiffs do not know what role, if any, Coke played in the process through which their claims were adjusted and denied, and thus they allege a number of different theories as to Coke's possible role(s): "Decisions regarding paying or denying Michigan workers compensation claims, and selecting doctors to do medical examinations of claimants, were made by Sedgwick and/or Coke, or by Sedgwick after consulting with Coke and with workers compensation defense attorneys, or were ratified by Coke after being made by Sedgwick in consultation with workers compensation attorneys." (*Id*. at ¶8.)

Coke now moves to dismiss Plaintiff's claims under Fed.R.Civ.P. 12(b)(1) & (b)(6).

## GOVERNING LEGAL STANDARD

Coke seeks dismissal of Plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(1) & (b)(6). The governing standards under these rules are well-known to this court and, in order to save space, will not be repeated here. See *High v. Capital Senior Living Properties – 2, Heatherwood, Inc*., 594 F.Supp.2d 789, 796 (E.D. Mich. 2008) (Lawson, J.) (stating standards under both Rules 12(b)(1) & 12(b)(6)).

<u>ARGUMENT</u>

I.    **PLAINTIFFS' RICO CLAIMS ALL FAIL AS A MATTER OF LAW BECAUSE THE RICO STATUTE DOES NOT PROVIDE A REMEDY FOR THE ALLEGEDLY FRAUDULENT DENIAL OF WORKERS COMPENSATION BENEFITS**

In their RICO claims, Plaintiffs allege that Coke violated duties owed to them "under the Michigan Workers Disability Compensation Act" and "under the Michigan Uniform Trade Practices Act." (Compl. at ¶¶16-17.)   But Coke did not owe Plaintiffs any duties under the Uniform Trade Practices Act, *see Blackwell v. Citizens Ins. Co*., 457 Mich. 662, 893-94, 579 N.W.2d 889 (1998) ("the duties outlined in the UTPA run to [an] employer rather than [to an] employee")[2], and thus the only duties on which Plaintiffs' claims can possibly be based are duties created by the WDCA.  Plaintiffs claim that Coke fraudulently breached its duties under that Act "to be honest in the administration of a workers compensation claim" and "not to unreasonably fail to pay promptly claims for compensation for which [they] shall become liable." (*Id*.)  But the federal courts have consistently rejected RICO claims arising out of alleged fraudulent violations of duties created by statutes like the WDCA.

These courts have offered two rationales for their decisions: first, that a plaintiff may not assert a RICO claim based upon the violation of a statutory duty where the statute that creates the

---

[2]The UTPA, itself, makes absolutely clear that the WDCA, not the UTPA, governs claims based upon the alleged non-payment of workers compensation benefits.  Sections 2006(1) and (4) of the UTPA, MCL 500.2006(1) & (4), address the untimely payment of benefits and provide that a carrier must pay 12% interest per annum where it fails to timely pay benefits that are not reasonably in dispute.  But Section 2006(6) of the UTPA, MCL 500.2006(6), states that as between the UTPA and the WDCA, the WDCA controls.  As described in detail, *infra* at pp. 8-9, the WDCA places strict limits on liability for the non-payment of benefits.  Thus, with respect to issues concerning non-payment of benefits and the consequences for non-payment, the WDCA controls, and the UTPA does not apply.  Finally, Plaintiffs rely on Section 2026 of the UTPA, MCL 500.2026, but that section applies to "the business of insurance," and the Sixth Circuit recently held that the relationship between an employer, its workers compensation insurance adjuster, and an injured employee is not "the business of insurance" – a result invited by counsel for Plaintiffs in this action. *Brown v. Cassens*, 546 F.3d 347 (6th Cir. 2008).  Plaintiffs cannot have it both ways.

duty also (a) establishes a specialized administrative scheme to enforce and regulate the duty and (b) prescribes an exclusive administrative remedy for breach of the duty, *see, e.g., Miller v. Norfolk Southern Railway*, 183 F.Supp.2d 996, 1000 (N.D. Ohio 2002) (dismissing RICO claim based upon allegedly fraudulent violation of employees' rights under Railway Labor Act); and, second, that the breach of administrative duties created by statutes like the WDCA – even when fraudulent – does not amount to mail or wire fraud sufficient to give rise to RICO liability. *See, e.g., Ayres v. General Motors Corp*., 234 F.3d 514, 521-22 (11th Cir. 2000) (dismissing RICO claim based upon allegedly fraudulent violation of the National Traffic and Motor Vehicle Safety Act).  Both of these rationales for denying RICO claims are present here, and thus this Court should dismiss Plaintiffs' RICO complaint.

> **A.** **Plaintiffs May Not Use RICO to Avoid Michigan's Comprehensive and Exclusive Administrative Procedures Under the WDCA That Are Specifically Designed to Adjudicate Whether Workers Compensation Benefits Have Been Properly Denied**

RICO cannot be used as an "end run" around a specialized and exclusive administrative regime that is established in order to determine whether statutory duties have been violated and to address violations of those duties.   That is precisely why so many federal courts have dismissed RICO claims that, like Plaintiffs' claims here, attempt to bypass comprehensive and exclusive administrative schemes and remedies.   The decision in *Danielsen v. Burnside-Ott Aviation*, 746 F.Supp. 170, 176 (D.D.C. 1990), aff'd 941 F.2d 1220 (D.C. Cir. 1991), exemplifies these decisions.   The plaintiffs in *Danielsen* alleged that the defendants "engaged in a scheme to defraud employees of the minimum wages and fringe benefits to which they were entitled" under the McNamara-O'Hara Services Contract Act, 41 U.S.C. 351, *et. seq.* ("SCA"). *Danielsen*, 746 F.Supp. at 171.   Even though the plaintiffs had no private right of action directly under the SCA, and even though federal law assigned to the Department of Labor the exclusive

authority to address violations of the SCA, the plaintiffs brought a RICO claim based upon the alleged SCA violations.  The court rejected the plaintiffs' effort to convert the alleged SCA violations into a RICO claim:

> Here, the fraudulent scheme alleged by the plaintiffs is an underpayment of wages and fringe benefits due them pursuant to the SCA. Plaintiffs' RICO claims are all premised on alleged violations of the SCA. However, the SCA expressly assigns the responsibility for determining and enforcing wage levels and other employee benefits to DOL. Allowing plaintiffs to proceed with their RICO claims would not only upset the careful blend of administrative and judicial powers that Congress has created under the SCA, but also overturn well-established precedent that employees have no private right of action under the Act.

*Id.* at 176.[3]  On appeal, the D.C. Circuit affirmed. *Danielsen*, 941 F.2d 1220.  It stressed that allowing the plaintiffs' RICO claim to proceed would lead to a patently absurd result: namely, that notwithstanding the bar against private actions seeking compensation for violations of the SCA, a plaintiff could pursue a RICO claim and seek three times its damages plus attorneys fees for a violation of the Act. *Id.* at 1228-29.

The federal court in *Livingston v. Shore Slurry Seal, Inc.*, 98 F.Supp.2d 594 (D.N.J. 2000), likewise dismissed a RICO claim based upon violations of a comprehensive statute that created exclusive administrative procedures to remedy violations.  The plaintiffs in *Livingston* alleged that the defendants had violated the Davis-Bacon Act, 40 U.S.C. §276a *et. seq.*, by fraudulently failing to pay employees the prevailing wage on public contracts.  Even though the Davis-Bacon Act established a detailed administrative scheme to enforce violations of its provisions, Plaintiffs brought a RICO claim.  The court rejected Plaintiffs' attempt to convert their dispute into a RICO case.  The court explained that "because the gravamen of plaintiffs'

---

[3] The district court in *Danielsen* used the term "preemption" to describe how the administrative scheme took precedence over the RICO claim. *Danielsen*, 746 F.Supp. at 176.  On appeal, the D.C. Circuit said the issue is best described as one of exclusive remedy rather than preemption but added that the label is not critical. *Danielsen*, 941 F.2d at 1226-27.

Amended Complaint is that they were paid less than the prevailing wage in violation of the Davis-Bacon Act," they could pursue their claim only through "the detailed administrative scheme created by the [Davis-Bacon] Act," and not through a RICO cause of action. *Id*. at 600. The court cited *Danielsen* and stressed that the reasoning of *Danielsen* "has been adopted by [many] courts and applied to [many] statutes other than" the Davis-Bacon Act. *Id*. at 601 (collecting cases barring RICO claims in a wide variety of contexts).

The reasoning of *Danielsen* and *Livingston* applies here and requires dismissal of Plaintiffs' RICO claims.  Like the statutes at issue in those cases, the WDCA establishes a "comprehensive" and exclusive administrative scheme that governs every aspect of workers compensation benefits, including the adjudication of whether a claimant is entitled to such benefits. *See Moon v. Harrison Piping Supply*, 375 F. Supp. 2d 577, 589 (E.D. Mich 2005), *aff'd in part rev'd in part,* 465 F.3d 719 (6th Cir. 2006).  The WDCA first provides for review of a disputed claim by a mediator or at a hearing before workers compensation magistrate, MCL 418.847, and then allows for review of the magistrate's decision by the Workers Compensation Appellate Commission, MCL 418.859(a), and for subsequent judicial review of that decision. MCL 418.861(a).  An injured employee seeking workers compensation must utilize this comprehensive administrative process established by the WDCA and has no private right of action to recover benefits; the administrative procedures under the WDCA are his "exclusive remedy." MCL 418.131; *see also Gray v. Morley*, 460 Mich. 738, 741, 596 N.W.2d (1999).

Not only does the WDCA provide the exclusive remedy for an employee seeking benefits, it provides the exclusive remedy for an employee claiming that his employer/insurer failed to pay benefits in bad faith.  The Act provides that a disability insurer must pay a penalty $50.00 per day if, in the absence of a dispute over the claimant's entitlement to benefits, it fails

to pay benefits within 30 days of when they become due and owing. MCL §418.801(2). And, the Act strictly limits the total penalty to $1500.00. *Id.* The Michigan Court of Appeals has twice held that an employee may not recover more than the specified limit – even where an employer disputes a claim for benefits in bad faith. *See Warner v. Collavino Bros.*, 133 Mich. App. 230, 236-37, 347 N.W.2d 787 (1984) (affirming administrative ruling that "an employer [who] disputed a claim in bad faith will not justify the assessing of a penalty [beyond the limited penalty set forth in the WDCA] against the employer."); *Couture v. General Motors Corp.*, 125 Mich. App. 174, 335 N.W.2d 668 (1983) (reversing administrative award of penalty damages [above the statutory limit] because the Legislature specifically intended to limit liability for all failures to pay benefits – even those in "bad faith").[4]

Allowing Plaintiffs' RICO claims to proceed here would create the type of absurd result that the courts in *Danielsen* and *Livingston* sought to avoid: allowing plaintiffs to sue for treble damages and attorneys fees for the violation of a statute (the WDCA) that does not create a private right of action, requires the use of administrative remedies, and which strictly limits liability. RICO was never intended to create a path into court for litigants who would otherwise be limited to exclusive administrative remedies and procedures and would be subject to strict damages limitations. Simply put, Plaintiffs here "should not be able to avoid [the workers compensation administrative tribunal's exclusive] jurisdiction or the designated remedial scheme [under the WDCA] by asserting a RICO claim…." *Miller,* 183 F.Supp.2d at 1000 (dismissing

---

[4] In *Brown*, the Sixth Circuit said that allowing a RICO claim against a disability insurer that disputes a claim for benefits in bad faith would not impair Michigan's workers compensation disability insurance regime because there is "no authority" that Michigan "has a policy of limited liability for employers even when they fraudulently deny workers compensation benefits." *Brown*, 546 F.3d at 363. This statement was dicta because it came after the court had already rejected the argument to which this statement is relevant. *Id*. at 358-60. More importantly, the statement is wrong – as evidenced by the *Couture* and *Warner* cases cited above.

RICO claim based upon allegedly fraudulent violation of employee's rights under the Railway Labor Act).[5]

Indeed, the case for dismissal here is even stronger than in *Danielsen* and *Livingston* because the statutory and administrative regimes Plaintiffs seek to displace are *state* (rather than federal) regimes. The same Congress that was unwilling to allow RICO to intrude into federal administrative schemes surely could not have intended to take the even more intrusive step of having RICO override and interfere with administrative statutes and duties that are wholly creatures of state law. Indeed, allowing a RICO claim – with its treble damages – to proceed here would directly undermine the State of Michigan's decision to strictly limit an employer's liability for disputing benefits claims. Congress could not have intended that RICO would work such a radical change in state workers compensation law.

More to the point, Congress has clearly expressed its intention to *limit* federal jurisdiction over claims related to alleged violations of state workers compensation statutes. Congress expressed this intent in 28 U.S.C. 1445(c), which prohibits removal of any civil action "arising

---

[5] The leading Sixth Circuit case addressing whether a RICO claim is "preempted" by, and must give way to, administrative procedures and remedies created by another statute is *Trollinger v. Tyson Foods, Inc*., 370 F.3d 602 (6th Cir. 2004). In that case, the court held that plaintiffs could pursue a RICO claim based upon predicate acts that were the unlawful harboring of illegal alien laborers in violation of the Immigration and Nationality Act ("INA"); the court rejected the argument that the claim was preempted under the so-called *Garmon* labor law pre-emption doctrine. But *Trollinger* is easily distinguishable from this case. Most importantly, the RICO statute specifically identified the violations of the INA at issue in *Trollinger* as predicate acts that could support a RICO claim, *id.* at 611-612, so there was no danger that the plaintiff was using RICO, contrary to Congress' intent, to avoid exclusive administrative procedures and remedies established by other statutes. Moreover, *Trollinger* dealt narrowly with the *Garmon* pre-emption doctrine under the National Labor Relations Act; the type of "pre-emption" that Coke urges here (to the extent it can be called "pre-emption") is not "*Garmon* pre-emption," and is not limited to the National Labor Relations Act. Furthermore, *Trollinger* did not involve any potential federal interference with state-created statutory and administrative procedures and remedies. Finally, *Trollinger* did not involve an effort to radically expand the reach of RICO through an overly expansive construction of the mail and wire fraud statutes.

under the workmen's compensation laws" of the states. *See Armisted v. C & M Transport, Inc.*, 49 F.3d 43, 46 (1st Cir. 1995) (This statute "reflects a congressional concern for the states' interest in administering their own workers' compensation schemes…."). Although styled as RICO claims, Plaintiffs' claims arise under the WDCA because (1) Plaintiffs' entitlement to relief depends upon their allegation that they qualified for benefits under the WDCA, (2) the primary relief Plaintiffs seek is an award of benefits allegedly owing under the WDCA, and (3) as noted above, the WDCA provides a specific remedy for the alleged wrongful denial of benefits that Plaintiffs challenge here. *See Harper v. Autoalliance Int'l Inc.*, 392 F.3d 195, 205-06 (6th Cir. 2000) (identifying characteristics of claim that arises under state workers compensation laws). Plaintiffs' claims are thus precisely the type of claims that Congress intended to keep out of the federal courts.[6]

**B.    The Allegedly-Fraudulent Violation of Duties Owed to Plaintiffs Under the WDCA Does Not Amount to Mail or Wire Fraud Sufficient to Trigger RICO Liability**

Plaintiffs' RICO claims rest upon two assumptions: (1) Defendants fraudulently breached duties owed to them (Plaintiffs) under the WDCA – *i.e.*, the duties to fairly and honestly evaluate their claims – and (2) Defendants' fraudulent breach of those duties amounts to mail and/or wire fraud sufficient to trigger RICO liability. The first assumption is wrong as a matter of fact, but, more importantly for purposes of this motion, the second assumption is wrong as a matter of law. Even an allegedly-fraudulent breach of a legal duty does not amount to mail or wire fraud where, as in this case, (a) the breached duty is wholly a creature of statute, (b) the statute creating the

---

[6] Even though, strictly speaking, this action is not subject to 28 U.S.C. 1445(c) because it was not removed to this Court, that statute should guide this Court's interpretation and application of the RICO statute. Indeed, it would make no sense to hold that Congress acted to limit federal jurisdiction over claims arising under state workers compensation laws through Section 1445(c) and then opened the doors of the federal courts to such claims via the RICO statute.

duty establishes a specialized, comprehensive and exclusive administrative scheme to enforce the duty, and (c) the statute does not provide for a private right of action or criminal penalties.

The Eleventh Circuit's decision in *Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000), makes this very point. The plaintiffs in *Ayres* brought a claim against General Motors under the Georgia civil RICO statute. Plaintiffs alleged that General Motors committed a pattern of federal mail and wire fraud by fraudulently failing to disclose information that it (General Motors) was required to disclose under the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §30118, et. seq. The Eleventh Circuit assumed that General Motors had violated the statute as alleged by plaintiffs. But the court held that such a violation did not amount to mail fraud because the Safety Act "was not meant to create the kind of duty, a breach of which would create criminal liability or civil liability under RICO statutes." *Id*. at 521-22. The court explained its decision in a passage worth quoting at length:

> Thus, the crucial issue before us is whether a breach of such duty to disclose would constitute mail or wire fraud. For the reasons that follow, we conclude that the Safety Act was not meant to create the kind of duty, a breach of which would create criminal liability or civil liability under RICO statutes.
>
> The Safety Act establishes its own extensive array of administrative remedies for a violation of its notification obligations…. [and] the Safety Act does not make violation of the notification requirements criminal. In light of this extensive administrative scheme, we think it clear that Congress did not intend to equate a violation of the Safety Act's notification requirements in and of itself with the felony of mail or wire fraud. Moreover, given the limits on the civil penalties, the absence of a private right of action, and the option of private parties to petition for administrative action, it is also clear that Congress did not intend for a violation of the Safety Act's notification requirements to be the basis for a private civil RICO action, which would permit unlimited, treble damages.
>
> * * *
>
> Given the extensive array of administrative remedies for violation of the Safety Act, including specific provisions for participation by "any interested person," and given the specific provision for the civil enforcement action by the Attorney General with no mention of a corresponding private cause of action, and given the

limits on the civil penalties and lack of criminal penalties, and finally given the absence of a private cause of action, we conclude that Congress did not intend for a violation of the Safety Act's notification requirement to constitute the crime of mail or wire fraud. It follows that Congress did not intend for a violation of the Safety Act to be the basis for a private civil RICO action, which would permit unlimited, trebled damages.

***

To permit plaintiffs to convert non-compliance with the notification requirement found in the Safety Act, a regulatory statute with its own administrative remedies, into mail and wire fraud and thereby to maintain a civil RICO action would upset the purposes and contradict the intent of the statute.

*Id*. at 522 - 525. *See also Danielsen*, 941 F.2d at 1229 (expressing "doubt" that an allegedly-fraudulent violation of the SCA could amount to mail fraud sufficient to trigger RICO liability); *McCulloch v. PNC Bank*, 298 F.3d 1217, 1226-26 (11th Cir. 2002) (affirming dismissal of RICO claim and holding that allegedly fraudulent violations of the Higher Education Act did not give rise to mail fraud or wire fraud liability sufficient to state a RICO claim).

Like the statute at issue in *Ayres*, the WDCA "was not meant to create the kind of duty, a breach of which would create criminal liability or civil liability under RICO statutes." *Ayres*, 234 F.3d at 522. Like that statute, the WDCA "establishes its own extensive array of administrative remedies for a violation" of the duty to pay claims. *Id*. For instance, as noted above, the WDCA requires insurers to pay penalties when they wrongly fail to pay claims. MCL 418.801(2). The WDCA further provides that the unreasonable failure to pay claims may lead to revocation of the insurer's license or to a self-insured employer's loss of self-insured status. MCL 418.631(1) & (2). Moreover, an injured employee does not have a private right of action under the WDCA; on the contrary, the WDCA abolished an employee's right to sue and required injured employees to pursue administrative remedies under the Act. *See* MCL 418.131. Furthermore, the WDCA does not provide for criminal penalties for violations of the duties it imposes; on the contrary, as noted

above, the WDCA contains a strict *limitation* of liability that applies even where an insurer/employer disputes a claim in bad faith. In short, the WDCA and the duties and remedies it creates are exactly like the statutes and duties at issue in *Ayres*, the violation of which does not give rise to RICO liability. Thus, even if Defendants fraudulently violated the WDCA, they may not be held liable under the RICO statute.

## II.   PLAINTIFFS HAVE FAILED TO STATE A VIABLE CLAIM AGAINST COKE UNDER 18 U.S.C. 1962(A) BECAUSE THEY HAVE NOT ALLEGED AN INJURY STEMMING FROM COKE'S USE OR INVESTMENT OF ILLEGALLY OBTAINED INCOME

Plaintiffs seek to hold Coke liable for violation 18 U.S.C. 1962(a). This statute provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity … to use or invest, directly or indirectly, any part of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate of foreign commerce.

In order to state a viable claim for violation of this statute, a plaintiff must allege "injuries stemming directly from the defendant's alleged use or investment of their illegally obtained income." *Craighead v. E. F. Hutton Co., Inc.*, 899 F.2d 485, 494 (6th Cir. 1990). The alleged injuries necessary to support a claim under Section 1962(a) must be "separate" from the "injuries traceable to the alleged predicate acts." *Id.* Thus, in *Craighead*, the Sixth Circuit affirmed dismissal of a claim under Section 1962(a) where the plaintiff alleged only injuries suffered as a result of the defendant's purported securities fraud but failed to allege any additional injury traceable to the defendant's investment of the fraud proceeds. *See also Eby v. Producers Co-Op, Inc.*, 959 F.Supp. 428, 432-33 (W.D. Mich. 1997) (dismissing claim under Section 1962(a) because plaintiff alleged only injuries traceable to the predicate acts of fraud and did not sufficiently plead an injury traceable to the defendant's use or investment of fraud proceeds).

Here, Plaintiffs insist that their injuries were caused entirely by the alleged predicate acts of mail fraud and wire fraud; they do not identify any injury that flowed from any alleged use or investment of the fraud proceeds.  For instance, their RICO Case Statement describes their damages as follows: "By cutting off or denying workers compensation benefits, defendants took money out of plaintiff's pockets – their weekly benefits.  Defendants deprived plaintiffs of medical treatment for their work-related injuries." (Pls.' RICO Case Statement at question 16, page 13.)  Simply put, all of Plaintiffs' claimed injuries flow directly and solely from the alleged predicate acts of fraud (*i.e.*, from the purported bad faith denial of the Plaintiffs' claims for benefits), not from Defendants' alleged use or investment of the proceeds of the alleged fraud.  Thus, Plaintiffs' claim under Section 1962(a) fails as a matter of law.[7]

### III. PLAINTIFFS HAVE FAILED TO STATE A VIABLE CLAIM AGAINST COKE UNDER 18 U.S.C. 1962(B) BECAUSE THEY HAVE FAILED TO ALLEGE (A) THAT COKE OBTAINED OR MAINTAINED CONTROL OF ANY INTEREST IN AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY AND (B) THAT THEY WERE INJURED AS A RESULT OF COKE'S ACQUISITION OR CONTROL OF ANY INTEREST IN ANY ENTERPRISE

Plaintiffs seek to hold Coke liable for violation 18 U.S.C. 1962(b).  This statute provides:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate commerce.

---

[7] Plaintiffs do allege that "monies received from the pattern of racketeering activity alleged herein … were used or invested in the operation of the RICO enterprise … which proximately injured plaintiffs as alleged herein." (Compl. at ¶24.)  But a "conclusory allegation [like this] that Defendants 'used or invested' income received from [racketeering activity] is insufficient because it fails to allege how that use or investment" caused Plaintiffs' any injury. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 657 (S.D.N.Y. 1996) (dismissing claim under Section 1962(a)), aff'd 113 F.3d 1229 (2nd Cir. 1997); *In Re Teledyine Def. Contracting Deriv. Litig.*, 849 F.Supp. 1369, 1373 (C.D. Cal. 1993) ("The Court finds that as to the requirement of pleading injury by reason of violation of §1962(a) … Plaintiffs' allegations are general, conclusory, and vague and therefore do not state a claim….")

In order to state a viable claim for violation of this statute, a plaintiff must allege that the defendant "acquire[d] or maintain[ed] an interest in, or control of, an enterprise *through* (or by way of) the pattern of racketeering activity." *Advocacy Org. for Patients v. Auto Club Ins. Co*., 176 F.3d 315, 328 (6th Cir. 1999) (emphasis in original).  It is not enough to allege that the defendants "associated together *in order to* engage in the pattern of racketeering activity…." *Id*. (Emphasis in original.)  Moreover, a plaintiff must specifically allege "how" the defendants "acquired or maintained an interest in or control of the enterprise … through the alleged racketeering activity…." *Id*. at 329.

Plaintiffs' Complaint does not contain a single specific allegation about how Coke allegedly acquired or maintained control of the alleged enterprise through the purported racketeering activity.  Indeed, the sole allegation in the Complaint that even arguably relates to Section 1962(b) is the statement in paragraph 24 that Coke used proceeds of alleged mail and wire fraud "to maintain control of any RICO enterprise…."  In their RICO Case Statement Plaintiffs add only that "Coke and Sedwick control the enterprise." (Pls.' RICO Case Statement at question 12, page 12.)  The Sixth Circuit has squarely held that such conclusory allegations – which are "nothing more than a conclusion" and which contain "no facts" – cannot support a viable claim for violation of Section 1962(b). *Id*. at 329.

Moreover, Plaintiffs have failed to adequately allege that Coke acquired or maintained an "interest" in, or "control" over, any enterprise.  For purposes of Section 1962(b), an "interest" is "not just any 'interest' but a proprietary one, such as the acquisition of stock, and the 'control' contemplated is the power gained over an enterprise's operations by acquiring such interest." *Whaley v. Auto Club Ins. Assoc*., 891 F.Supp. 1237, 1240-41 (E.D. Mich. 1995).  Plaintiffs nowhere allege, because they cannot, that Coke acquired any proprietary interest in the alleged

enterprise and/or exercised control over the enterprise through such interest, and those failures require dismissal of their claim under Section 1962(b). *Id.* (dismissing claim under Section 1962(b) because plaintiff failed to allege that defendant acquired a proprietary interest in the alleged enterprise).

Plaintiffs' claim under Section 1962(b) suffers from yet another "fatal" flaw: Plaintiffs' failure to allege that they were injured by Coke's alleged acquisition or maintenance of control over the enterprise. *Id.* Indeed, the Sixth Circuit requires dismissal of claims under Section 1962(a) that do not allege an injury "*beyond that resulting from the fraud which constituted the predicate act.*" *Advocacy Org. for Patients,* 176 F.3d at 329. (emphasis in original) (quoting *Compagnie De Reassurance D'Ile De France v. New England Reinsurance Corp.*, 57 F.3d 56, 92 (1st Cir. 1995)). As described in detail above, Plaintiffs do not plead any *facts* that, if proven, would establish that they suffered any injury over and above the injury they claim to have suffered from the purported fraudulent denial of benefits. Thus, their claim under Section 1962(b) should be dismissed.

## IV.   PLAINTIFFS HAVE FAILED TO STATE A VIABLE CLAIM AGAINST COKE UNDER 18 U.S.C. 1962(C) BECAUSE (A) THEY HAVE FAILED TO ALLEGE THAT COKE WAS PART OF, AND/OR CONTROLLED OR MANAGED THE AFFAIRS OF, THE ALLEGED ENTERPRISE AND (B) THEY HAVE FAILED TO ALLEGE THAT COKE PARTICIPATED IN THE AFFAIRS OF THE ALLEGED ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY

Plaintiffs seek to hold Coke liable for violation 18 U.S.C. 1962(c). This statute provides in relevant part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity….

In order to state a viable claim under this statute, a plaintiff must allege "that (1) the defendant (2) through the commission of two or more acts, (3) constituting a 'pattern' (4) of 'racketeering activity,' (5) … participates in (6) an 'enterprise' (7) the activities of which affect interstate commerce." *Armbruster v. K-H Corp.*, 206 F.Supp.2d 870, 896 (E.D. Mich. 2002). Here, Plaintiffs claim under the statute fails because they have not sufficiently alleged that the Defendants formed an enterprise, that Coke participated in the affairs of the enterprise, and/or that Coke engaged in a pattern of racketeering activity.

First, as Co-Defendant Paul Drouillard argued in his motion to dismiss, Plaintiffs have failed to plead that Coke and the other Defendants formed an enterprise. (*See* Def. Drouillard's Br. in Supp. of Mot. to Dismiss at 17-19.)  Coke adopts Dr. Drouillard's arguments on the enterprise issue and urges the Court to dismiss on the ground that Plaintiffs have failed to allege the existence of an enterprise separate and apart from the alleged pattern of racketeering activity.

Second, even if Plaintiffs have sufficiently alleged the existence of an enterprise, they have failed to properly plead that Coke participated in the enterprise's affairs.  The "participation" required by the statute equates to an operational or management role in the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  Plaintiffs have not identified any such role played by Coke.  On the contrary, they allege that the primary purpose and focus of the alleged enterprise was the denial of worker's compensation claims submitted by Coke employees, and they admit that Coke did not handle the claims submitted by its employees. (Compl. at ¶¶6-7.)  Instead, Coke hired Sedgwick to adjust the claims. (*Id.*)  Nor have Plaintiffs sufficiently alleged that Coke played an active role in denying the claims in question.  The most they say is that the denials "were made by Sedgwick and/or Coke, or by Sedgwick after consulting with Coke and with workers compensation attorneys, or were ratified by Coke after

being made by Sedgwick in consultation with its workers compensation attorneys." (*Id.* at ¶8.) This allegation stretches the bounds of "pleading in the alternative" beyond all reasonable limits and lays bare Plaintiffs' inability to allege specific facts that, if proven, would establish that Coke managed or operated the alleged enterprise.

Finally, Plaintiffs were required to allege that *Coke itself* committed specific predicate acts constituting a pattern of racketeering activity, but Plaintiffs failed to do so.  As the Supreme Court has explained, a plaintiff "has a claim" for a violation of Section 1962(c) where "***the defendant** engages in a pattern of racketeering activity* in a manner forbidden by [the statute] …." *Sedima, S.P.R.L. v. IMREX Co., Inc*., 473 U.S. 479, 495 (1985) (emphasis added).  Thus, a plaintiff must specifically identify the predicate acts by each defendant the plaintiff seeks to hold liable under the statute.  The requirement that a plaintiff plead sufficient predicate acts by each defendant comes directly from the plain language of the statute which makes a defendant liable only where it actually participates in the affairs of an enterprise *through* a pattern of racketeering activity (i.e., a pattern of predicate acts).[8]

Neither Plaintiff in this action carried his burden of pleading predicate acts *by Coke*.  Plaintiffs identify the alleged predicate acts in paragraph 31 of the Complaint.  That paragraph begins by alleging that "Coke and Sedgwick or their agents" committed fraudulent mailings and wirings, but it specifically identifies only mailings by Sedgwick and Dr. Drouillard. (Compl. at

---

[8] In *Moon, supra,* Judge Borman concluded that a plaintiff need not plead predicate acts by each defendant individually.  Coke respectfully suggests that Judge Borman erred on this point.  His ruling cannot be reconciled with the plain language of the statute which imposes liability only for actual participation in an enterprise through a pattern of racketeering activity.  Judge Borman held that it was sufficient if a plaintiff alleged that a defendant aided and abetted the commission of a predicate act.  But this ignores that Congress specifically provided for aiding and abetting liability in some provisions of the RICO statute, *see, e.g.,* 18 U.S.C. 1962(a) (expressly incorporating aiding and abetting statute, 18 U.S.C. 2), but not in Section 1962(c) of the statute.  The omission of aiding and abetting language from Section 1962(c) underscores that a plaintiff must specifically identify the predicate acts that each defendant actually committed.

¶31.)  Paragraph 31(A) of the Complaint deals specifically with Plaintiff Jackson, and it does not identify any mailings or wirings by Coke.  Paragraph 31(B) deals specifically with Plaintiff Scharnitzke, and it identifies, at most, one mailing by Coke on or about July 22, 2008.  A RICO claim under Section 1962(c) requires the commission of at least two predicate acts by the defendant, and thus the single alleged mailing identified in paragraph 31(B) is insufficient to state a valid claim under the statute.  *See VanDenBroeck v. CommonPoint Mortage Co.*, 210 F.3d 696, 699 (6th Cir. 2000).  Elsewhere in the Complaint, Plaintiffs generally allege that Coke committed unspecified mail and wire fraud (*see, e.*g., Compl. at ¶¶20(C), 23), but these allegations cannot save Plaintiffs' claim under Section 1962(c) because alleged predicate acts of mail and wire fraud must be pleaded with particularity.  *See Advocacy Org. for Patients and Providers*, 176 F.3d at 322.  Plaintiffs have not stated a viable claim under Section 1962(c).

## CONCLUSION

This dispute belongs before Michigan's administrative workers compensation tribunal, not before this Court.  For all of the reasons explained above and in Dr. Drouillard's motion to dismiss, this Court should dismiss Plaintiffs' RICO claims and require Plaintiffs to comply with the governing Michigan law which addresses challenges to denials of workers compensation benefits.  In the alternative, this Court should stay this action pending final review of Plaintiffs' pending administrative challenges to the denials of their benefits.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By:    s/Matthew F. Leitman
   Thomas W. Cranmer (P25252)
   Matthew F. Leitman (P48999)
   Miller Canfield Paddock & Stone, P.L.C.
   cranmer@millercanfield.com
   leitman@millercanfield.com
Dated:  July 15, 2009  *Attorneys for Defendant Coca-Cola Enterprises, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2009, I electronically filed the foregoing document, with the Clerk of the court using the ECF system which sent notification of such filing to the following:

- **Katherine D. Goudie:** goudie@butzel.com, ponce@butzel.com

- **Marshall D. Lasser:** mlasserlaw@aol.com, ddtalon@gmail.com

- **Lynn A. Sheehy:** sheehy@butzel.com, skarbek@butzel.com

- **Daniel B. Tukel:** tukel@butzel.com, bobak@butzel.com


and hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:

None.


Dated: July 15, 2009              s/Matthew F. Leitman
                                  Thomas W. Cranmer (P25252)
                                  Matthew F. Leitman (P48999)
                                  Miller Canfield Paddock & Stone, P.L.C.
                                  840 West Long Lake Road, Suite 200
                                  Troy, Michigan 48098
                                  Telephone: (248) 879-2000
                                  cranmer@millercanfield.com
                                  leitman@millercanfield.com
                                  *Attorneys for Defendant Coca-Cola Enterprises, Inc.*