UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFTON E. JACKSON and
CHRISTOPHER M. SCHARNITZKE,                Case No: 09-cv-11529

    Plaintiffs,                                The Honorable David M. Lawson

v.                                         Magistrate Judge Virginia M. Morgan

SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.,
COCA-COLA ENTERPRISES, INC. and
DR. PAUL DROULILLARD,

    Defendants.

_____/

| | |
|---|---|
| Marshall D. Lasser (P25573) | Daniel B. Tukel (P34978) |
| Marshall D. Lasser, P.C. | Lynn A. Sheehy (P38162) |
| P.O. Box 2579 | Katherine D. Goudie (P62806) |
| Southfield, Michigan 49037 | Butzel Long |
| Telephone: (248) 647-7722 | 150 W. Jefferson, Suite 100 |
| mlasserlaw@aol.com | Detroit, Michigan 48226 |
| *Attorneys for Plaintiffs* | tukel@butzel.com |
| | sheehy@butzel.com |
| Thomas W. Cranmer (P25252) | goudie@butzel.com |
| Matthew F. Leitman (P48999) | Telephone: (313) 225-7000 |
| Miller Canfield Paddock & Stone, P.L.C. | *Attorneys for Defendant Dr. Paul Drouillard* |
| 840 West Long Lake Road, Suite 200 | |
| Troy, Michigan 48098 | Kathleen H. Klaus (P67207) |
| Telephone: (248) 879-2000 | Maddin, Hauser, Wartell, Roth & Heller, P.C. |
| cranmer@millercanfield.com | 28400 Northwestern Highway, 3rd Floor |
| leitman@millercanfield.com | Southfield, Michigan 48034 |
| *Attorneys for Defendant Coca-Cola Enterprises, Inc.* | khk@maddinhauser.com |
| | Telephone: (248) 354-4030 |
| | *Attorneys for Defendant Sedgwick Claims Management Services, Inc.* |

_____/

**DEFENDANT COCA-COLA ENTERPRISES, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS**

BHLIB:669445.2\108128-00008

I. **The Sixth Circuit's *Dicta* in *Brown v. Cassens*, 546 F.3d 347 (6th Cir. 2008), Cannot Save Plaintiffs' RICO Claims**

Plaintiffs rest the defense of their RICO claims almost entirely upon the decision in *Brown v. Cassens*, 546 F.3d 347 (6th Cir. 2008). But their reliance on *Brown* is misplaced. Essentially every word from *Brown* on which they rely is *obiter dicta*. Indeed, the Sixth Circuit prefaced the section of its Opinion quoted at length by Plaintiffs by noting that it had *already* "dispose[d] of" the matter at hand. *Id*. at 361. As the Sixth Circuit has repeatedly acknowledged, its *dicta* is not binding. *See, e.g., Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2003).

The *dicta* from *Brown* on which Plaintiffs rely is particularly unpersuasive because the parties did not bring to the court's attention the Michigan decisions holding that the Workers Disability Compensation Act ("WDCA") strictly limits an insurer's liability for disputing a workers compensation claim in bad faith. *See, e.g., Couture v. General Motors Corp.*, 125 Mich. App. 174, 335 N.W.2d 668 (1983); *Warner v. Collavino Bros.*, 133 Mich. App. 230, 347 N.W.2d 787 (1984). As the Michigan Court of Appeals stressed in those cases, the Michigan Legislature made a policy decision to circumscribe the liability of insurers – even when they contest and/or deny claims in bad faith. *See Warner*, 133 Mich. App. at 236-36 ("From our reading of similar statutes, we infer that the Legislature was aware that prompt payment of compensation benefits could be encouraged by imposing a penalty for bad faith denial of payments," but the Legislature nonetheless chose to preclude the assessment of a penalty for bad faith denials.)[1] Allowing Plaintiffs here to proceed with RICO claims based upon Defendants' alleged fraud in disputing

---

[1] This public policy is further reflected by the fact that Michigan courts have repeatedly rejected attempts by plaintiffs to bring an action for tortious denial of workers compensation claims. *See, e.g., Wright v. DaimlerChrysler Corp.,* 220 F. Supp. 2d 832, 845 (E.D. Mich. 2002) ("Therefore, wrongful, even *bad faith* refusal to offer [workers compensation] benefits to which Plaintiff is entitled is not tortious.") (emphasis supplied) (citing Michigan cases).

their claims for benefits would frustrate the Legislature's clear intent.[2]  Congress could not have intended to override state laws in this manner when it enacted RICO, and the court in *Brown* surely would have reached this conclusion had the parties informed it of *Couture* and *Warner*.

Most importantly, the court in *Brown* did not address Coke's primary arguments: (1) that an injured worker may not use RICO as an "end run" around the procedures and remedies prescribed by the WDCA and (2) that a violation of duties created by the WDCA – even if fraudulent – does not give rise to liability under the RICO statute.  Instead, the court in *Brown* (1) addressed the narrow and technical issue of whether, *under the McCarran-Ferguson Act*, the WDCA "reverse preempted" the plaintiff's RICO claims, and (2) analyzed specific objections to the manner in which the plaintiffs pleaded their RICO claims.  Plaintiffs here read *Brown* far too broadly when they describe the decision as holding "that the WDCA is not 'comprehensive' and 'exclusive,' and does not prevent the bringing of a RICO claim for fraudulent denial of benefits."  (Pls. Br. at 7.)  The word "comprehensive" does not even appear in the *Brown* Opinion.  And, the court certainly did not hold that an injured worker may avoid the WDCA's exclusive procedures and remedies simply by characterizing a denial of benefits as "fraudulent."  In short, the holding and scope of *Brown* is quite narrow, and the decision does not foreclose Coke's arguments here.

II.     **The Federal Courts Have Rejected Plaintiffs' Argument That the WDCA is Not "Comprehensive" and "Exclusive" Because it Does Not Provide a Specific Remedy for the "Fraudulent" Denial of Benefits**

In Coke's opening brief, Coke showed that Plaintiffs' RICO claims fail because injured workers claiming a right to disability benefits cannot use RICO to evade the comprehensive and

---

[2] Plaintiffs have things exactly backwards when they argue that they should be able to pursue their RICO claims because the penalties available under the WDCA apply only in limited circumstances. (*See* Pls.' Br. at 9-10.)  The limited availability of the penalties underscores the intent of the Michigan Legislature to restrict the liability of workers compensation insurers, and that clear intent weighs strongly *against* extending RICO to the workers compensation context.

exclusive administrative scheme established by the WDCA. In response, Plaintiffs insist that the WDCA "is not 'comprehensive' [nor] 'exclusive'" because it does not provide a remedy for the "*fraudulent denial*" of disability benefits. (Id. at 7-10; emphasis in original.) But the federal courts have rejected that very argument – and with good reason.

More specifically, the federal courts have rejected the artificial distinction Plaintiffs attempt to draw between a wrongful denial of statutory benefits and a "fraudulent" denial of benefits: with respect to *both* types of denials, the essence of the harm to the claimant is the deprivation of benefits to which he is entitled. *See, e.g., Danielsen v. Burnside-Ott Aviation Training Center, Inc.*, 746 F.Supp. 170, 176-77 (D.D.C. 1990) ("Bluntly put, no matter how you cut the complaint, the only conceivable 'fraud' is the deprivation of plaintiff's rights [to benefits] under the labor law."); *aff'd* 941 F.2d 1220 (D.C. Cir. 1991) (quotation omitted.); *Danielson*, 941 F.2d 1220, 1229 (D.C. Cir. 1991) ("To frame the action for such a remedy [an award of statutory benefits] in terms of RICO [fraud] adds nothing.") These courts have concluded that where an administrative scheme exists to correct the wrongful denial of benefits (whether the denial was fraudulent or otherwise wrongful), that scheme provides an appropriate and sufficient – indeed, a "comprehensive" – remedy to the claimant. *See id.*

Here, the gravamen of Plaintiffs' claims is that they did not receive disability benefits to which they were entitled. *Plaintiffs' use of the label "fraudulent" does not change the fact that, at bottom, they are simply claiming that Coke and/or Sedgwick should have paid their benefits*. The WDCA creates both an administrative forum for the adjudication of Plaintiffs' claimed entitlement to benefits and a remedy for the allegedly-wrongful denial of benefits. Thus, the

WDCA is just like the "comprehensive" statutes in the *Danielsen* line of cases – statutes whose procedures and exclusive remedies could not be evaded through RICO claims.[3]

### III. Plaintiffs Cannot Save Their RICO Claims Under 18 U.S.C. 1962(c) by Alleging Two Predicate Acts by Coke

Plaintiffs do not dispute Coke's argument that it may be held liable under Section 1962(c) only if, among other things, it actually committed predicate acts. Instead, the Plaintiffs propose to add an allegation that Coke's attorneys committed predicate acts by mailing two letters on the same day. (*See* Pls.' Br. at 16.) These proposed predicate act allegations cannot save Plaintiffs' claim under Section 1962(c). The pleading of a mere two predicate acts committed at the same time puts the Plaintiffs in the same position as the Plaintiffs in *Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006) (limited allegations of predicate acts failed to satisfy continuity and pattern requirements for a claim under Section 1962(c)).

Plaintiffs recognize the insufficiency of their allegations and thus seek leave to conduct discovery to develop proof that Coke committed predicate acts. (Pls.' Br. at 18.) But they have no right to such discovery, *see, e.g., Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (rejecting argument that plaintiff had right to discovery to learn facts to enable it to satisfy Rule 9(b)), and, *Brown* does not authorize such discovery. The court in *Brown* "express[ed] no view" as to whether the plaintiffs should have been given leave to conduct discovery "other than to note that such a notion is not foreign to this court." *Brown*, 546 F.3d at 356, n. 4.

### CONCLUSION

For all of the reasons stated above and in Coke's opening brief, this Court should dismiss.

Dated: August 6, 2009          s/Matthew F. Leitman
                                                Matthew F. Leitman (P48999)

---

[3] The Michigan Supreme Court has often described the WDCA and its administrative scheme as "comprehensive." *See, e.g., Yackell v. Reed*, 473 Mich. 520, 529, 703 N.W.2d 1 (2005).

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2009, I electronically filed the foregoing document, with the Clerk of the court using the ECF system which sent notification of such filing to the following:

- **Katherine D. Goudie:** goudie@butzel.com, ponce@butzel.com
- **Kathleen H. Klaus:** khk@maddinhauser.com, dxa@maddinhauser.com
- **Marshall D. Lasser:** mlasserlaw@aol.com, ddtalon@gmail.com
- **Lynn A. Sheehy:** sheehy@butzel.com, skarbek@butzel.com
- **Daniel B. Tukel:** tukel@butzel.com, bobak@butzel.com

and hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:

None.

Dated: August 6, 2009

s/Matthew F. Leitman
Thomas W. Cranmer (P25252)
Matthew F. Leitman (P48999)
Miller Canfield Paddock & Stone, P.L.C.
840 West Long Lake Road, Suite 200
Troy, Michigan 48098
Telephone: (248) 879-2000
cranmer@millercanfield.com
leitman@millercanfield.com
*Attorneys for Defendant Coca-Cola Enterprises, Inc.*

BHLIB:669445.2\108128-00008