UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFTON E. JACKSON and
CHRISTOPHER M. SCHARNITZKE,

      Plaintiffs, on behalf of themselves
      and other persons similarly situated,

v.

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC., and COCA COLA
ENTERPRISES, INC., foreign
corporations, and DR. PAUL DROUILLARD,
jointly and severally,

      Defendants.

Case No. 09-11529
Hon. David M. Lawson
Magistrate Judge Virginia M. Morgan

---

### SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.'S COMBINED RULE 12(B)(1) AND RULE 12(B)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT AND JOINDER IN MOTIONS TO DISMISS FILED BY CO-DEFENDANTS

Sedgwick Claims Management Services, Inc. ("Sedgwick") states as follows for its Combined Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss First Amended Complaint and Joinder in Motions to Dismiss Filed by Co-Defendants:

1.      Plaintiffs are current employees of Coca-Cola Enterprises, Inc. ("CCE") who claim that they were injured on the job and wrongfully denied benefits under CCE's self-insured workers compensation insurance plan.

2.      Sedgwick adjusts CCE's workers compensation claims. Plaintiffs contend that Sedgwick, CCE and Dr. Paul Drouillard are liable to them under 18 U.S.C. § 1964 (a), (b) and (c) because they wrongfully denied Plaintiffs their workers compensation benefits by using the Unites States mail and the telephone.

849945

3.      As set forth more fully in Sedgwick's accompanying brief, Plaintiffs have no standing under RICO because (a) they are seeking compensation for personal injuries, a remedy not provided under RICO; and (b) their claims are not ripe.  Dismissal of the First Amended Complaint therefore is warranted under Rule 12(b)(1).

4.      Further, Plaintiffs fail to state a claim under RICO because (a) they cannot allege facts that support a violation of the federal mail or wire fraud statutes; (b) litigants cannot avoid an exclusive remedy provision in a statute by alleging that a RICO defendant "fraudulently" violated the statute through the mail; and (c) Plaintiffs' allegations demonstrate that there was no pattern of racketeering activity.

5.      In addition, CCE and Dr. Drouillard have each moved to dismiss the First Amended Complaint.  *See* Docket Nos. 15 and 21.  Sedgwick joins in the following arguments made by its co-defendants.

      A.      From Docket #15:

           i.      This Court should dismiss this action, should abstain from adjudicating Plaintiffs' claim, and/or should stay the action pursuant to the primary jurisdiction doctrine  (pp. 23 – 25).

           ii.      This court should dismiss this action, should abstain from adjudicating Plaintiffs' claim, and/or should stay the action pursuant to the *Burford* abstention doctrine (pp. 25 – 28).

           iii.      This Court should dismiss this action, should abstain from adjudicating Plaintiffs' claims, and/or should stay the action because the outcome of the administrative proceedings under the WDCA will bar Plaintiffs' RICO claims (pp. 28 – 33).

       iv.    This Court should dismiss this action, should abstain from adjudicating Plaintiffs' claims, and/or should stay the action pursuant to the *Rooker-Feldman* abstention doctrine (pp. 29 – 32).

       v.    This Court should dismiss this action, should abstain from adjudicating Plaintiffs' claim, and/or should stay the action because of reverse preemption by the McCarran-Ferguson Act.  This argument is made only to preserve it in the event the decision in *Brown v. Cassens Transp. Co.,* 546 F.3d 347 (6th Cir. 2008) is reversed.

B.    From Docket No. 21:

       i.    Plaintiffs may not use RICO to avoid Michigan's comprehensive and exclusive administrative procedures under the WDCA that are specifically designed to adjudicate whether workers compensation benefits have been properly denied (p.6).

       ii.    The allegedly fraudulent violation of duties owed to plaintiffs under the WDCA does not amount to mail or wire fraud sufficient to trigger RICO liability (p. 11)

       iii.    Plaintiffs have failed to state a viable claim against Defendants under 18 U.S.C. 1962(a) because they have not alleged an injury stemming from coke's use or investment of illegally obtained income. (p. 14)

       iv.    Plaintiffs have failed to state a viable claim against Defendants under 18 U.S.C. 1962(b) because they have failed to allege (a) that Defendants obtained or maintained control of any interest in an

849945

enterprise through a pattern of racketeering activity and (b) that they were injured as a result of Defendants' acquisition or control of any interest in any enterprise (p. 15).

6.     Pursuant to Local Rule 7.1(a)(2), counsel for Sedgwick sought Plaintiffs' concurrence in the relief sought.  Plaintiffs do not concur.

WHEREFORE, there being no just cause otherwise, Sedgwick respectfully asks the Court to dismiss this case, with prejudice.

<div style="text-align: right">

   /s/ Kathleen H. Klaus           

Kathleen H. Klaus (P67207)
Attorneys for Defendants
28400 Northwestern Hwy., 3rd Floor
Southfield, Michigan  48034
(248) 354-4030
[P67201]

</div>

DATED:  August 10, 2009           Primary E-mail:  khk@maddinhauser.com

849945

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2009, I electronically filed SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.'S COMBINED RULE 12(B)(1) AND RULE 12(B)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT AND JOINDER IN MOTIONS TO DISMISS FILED BY CO-DEFENDANTS with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

       /s/ Kathleen H. Klaus

Kathleen H. Klaus (P67207)
Attorneys for Defendants
28400 Northwestern Hwy., 3rd Floor
Southfield, Michigan 48034
(248) 354-4030

DATED: August 10, 2009

Primary E-mail: khk@maddinhauser.com

849945

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFTON E. JACKSON and
CHRISTOPHER M. SCHARNITZKE,

      Plaintiffs, on behalf of themselves
      and other persons similarly situated,

v.

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC., and COCA COLA
ENTERPRISES, INC., foreign corporations,
and DR. PAUL DROUILLARD,
jointly and severally,

      Defendants.

Case No. 09-11529
Hon. David M. Lawson
Mag. Judge Virginia M. Morgan

_____

**SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.'S BRIEF IN SUPPORT OF
ITS COMBINED RULE 12(B)(1) AND RULE 12(B)(6) MOTION TO DISMISS FIRST
<u>AMENDED COMPLAINT</u>**

MADDIN HAUSER WARTELL ROTH & HELLER, P.C.
Harvey R. Heller (P27351)
Kathleen H. Klaus (P67207)
Attorneys for Defendant Sedgwick Claims Management Services, Inc.
28400 Northwestern Highway, 3rd Floor
Southfield, MI 48034
(248) 359-7520

# TABLE OF CONTENTS

PRINCIPAL AUTHORITY ................................................................................ iii

QUESTIONS PRESENTED ................................................................................ v

I.     INTRODUCTION ................................................................................1

II.    FACTS ALLEGED IN FIRST AMENDED COMPLAINT. ......................................2

III    ARGUMENT................................................................................3

       A.     Legal standard................................................................................4

       B.     Plaintiffs lack standing under RICO because (1) their claims are not ripe; and
              (2) they seek damages for personal injuries ....................................................5
              1.     Plaintiffs' claims are not ripe because the extent of their injury has not
                     been determined................................................................................5
              2.     Plaintiffs cannot establish an injury to their business or property........7

       C.     The Complaint fails to state a claim under RICO. ....................................9
              1.     The allegations do not support charges of either mail or wire fraud.....9
              2.     Violations of statutory rights through the mail will not support
                     predicate act of mail fraud under RICO ............................................12
                     a.   "Violation" of the WDCA through the mail will not support a
                          claim under RICO.......................................................12
                     b.   The UPTA does not support the mail and wire fraud allegation   15
              3.     The allegations undermine an inference of a pattern in the alleged
                     conduct................................................................................16

IV.    CONCLUSION ................................................................................20

# PRINCIPAL AUTHORITY

## Cases

*Adult Video Ass'n v. U.S.,* 71 F.3d 563, 568 (6th Cir. 1995)..................................................5

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir. 1999)..................................................................................................................19

*Ayres v. General Motors Corp.,* 234 F.3d 514, 521 (11th Cir. 2000) ...................................13

*Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2009)........................4

*Bell Atlantic Corp. v. Trombly,* 550 U.S. 544 (2007)...............................................................4

*Berg v. First State Ins. Co.,* 915 F.2d 460, 464 (9th Cir. 1990) .................................................8

*Bigelow v. Mich. Dep't of Natural Res.,* 970 F.2d 154, 157 (6th Cir. 1992)............................5

*Blount Financial Services, Inc. v. Walter E. Heller and Co.,* 819 F.2d 151, 152-53 (6th Cir. 1987) ..........................................................................................................10, 11

*Bridge v. Phoenix Bond & Indemnity Co,* 128 S.Ct. 2131, 2133 (2008)...................................9

*Bridges v. Blue Cross and Blue Shield,* 935 F.Supp 37, 42 (D.D.C. 1996) .............................13

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 529 (3rd Cir. 1998) .............10

*Brown v. Cassens Transport Co,* 546 F.3d 347, 355 (6th Cir. 2009).........................15, 17, 19

*Crossley v. Allstate Ins. Co.,* 155 Mich App 694, 697 (1986).................................................14

*CSX Transportation, Inc. v. Meserole Street Recycling, Inc.,* 570 F.Supp.2d 966, 970 (W.D. Mich. 2008) ................................................................................................................16

*Danielson v. Burnside-Ott Aviation Training Center, Inc.,* 941 F.2d 1220, 1229 (D.C. Cir. 1991) ....................................................................................................................13

*DirectTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007) .....................................................4

*Disher v. Information Resources, Inc,* 691 F. Supp. 75, 79 (N.D. Ill. 1988), aff'd 873 F.2 136 (7th Cir. 1989).....................................................................................................................6

*Drake v. B.F Goodrich Co.,* 782 F.2d 638, 644 (6th Cir. 1986) .................................................7

*Edison v. State of Tenn,* 510 F.3d 631, 634 (6th Cir. 2007) ......................................................4

*Evans v. City of Chicago,* 434 F.3d 916, 927 (7th Cir. 2006) ....................................................8

*First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 767-69 (2nd Cir. 1994) ...................6

*Gagan v. American Cablevision, Inc.,* 77 F.3d 951, 958-59 (7th Cir. 1996) ...............................7

*Genty v. RTC,* 937 F.2d 899, 918 (3rd Cir. 1991) .....................................................................8

*Grogan v. Platt,* 835 F.2d 844, 846-47 (11th Cir. 1988)............................................................8

*H.J. Inc. v. Northwestern Bell Tele. Co.,* 492 U.S. 229, 236 – 39 (1989)................................16

*H.J. Inc. v. Northwestern Bell Tele. Co.,* 492 U.S. 229, 242 (1989) ..........................................1

*Haynes v. Neshewat,* 477 Mich 29 (2007)..............................................................................15

*Homes v. Securities Investor Prot. Corp.,* 503 U.S. 258, 259 (1992) ........................................5

*Kassab v. Michigan Basic Property Ins. Ass'n,* 441 Mich 433, 440 n.7 (1992) .........................15

*LULAC v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007)............................................................4

*McCulloch v. PNC Bank, Inc.,* 298 F.3d 1217, 1227 (11th Cir 2002) .......................................13

*Midwest Grinding Company, Inc. v. Spitz,* 976 F.2d 1016, 1025 (7th Cir. 1992).....................3, 9

*Moon v. Harrison Piping Supply,* 465 F.3d 719 (6th Cir. 2006).............................16, 17, 18, 19

*Morley v. General Motors Corp.,* 252 Mich App 287 (2002)...................................................14

*Motorola Credit Corp. v. Uzan,* 322 F.3d 130, 135 (2nd Cir. 2003)...........................................5

*Norman v. Niagara Mohawk Power Group,* 873 F.2d 634, 637-38 (2nd Cir. 1989) ....................13

*Oscar v. Univ. Students Co-Op Ass'n,* 995 F.2d 783, 785 (9th Cir. 1992) ...................................7

*Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir. 1986) .................................................4
*Rylewicz v Beaton Services, Ltd,* 888 F.2d 1175, 1180 (7th Cir. 1989) ..........................................8
*Safie Enterprises, Inc. v. Nationwide Mutual Fire Ins. Co.,* 146 Mich App 483, 494 (1985) ......14
*Salmi v. Sec'y of Health & Human Servs.,* 774 F.2d 685, 689 (6th Cir. 1985) ...............................19
*Schmuck v. U.S.,* 489 U.S. 705, 712 (1989) ....................................................................................9
*Sedima, S.P.R.L v. Imrex Co.,* 473 U.S. 470, 496 (1985) ...........................................................6, 16
*Thomas v. Union Carbide Agric. Prod. Co.,* 473 U.S. 568, 580 (1985) .........................................5
*Townsend v. M-R Products, Inc.,* 436 Mich 496; 501 (1990) ...................................................14, 18
*U.S. v. Kreimer,* 609 F.2d 126, 128 (5th Cir. 1980) .....................................................................10
*U.S. v. Van Dyke,* 605 F.2d 220, 225 (6th Cir. 1979), cert. den. 444 U.S. 994 ..........................11
*United States v. Gold Unlimited, Inc.,* 177 F.3d 472, 479 (6th cir. 1999) ....................1, 2, 3, 9, 19
*Ward v. Alternative Health Delivery Sys., Inc.,* 621 F.3d 624, 626 (6th Cir. 2001).......................4
*Young v. Michigan Mutual Ins. Co.,* 139 Mich App 600, 605 (1984) ...........................................14

## Statutes

18 U.S.C. § 1961(a) ...................................................................................................................1, 12
18 U.S.C. §1964(c) ................................................................................................................4, 7, 8

## Other Authorities

MCL 418.101 ..................................................................................................................................2
MCL 418.801(2) ...........................................................................................................................14
MCL 418.801(3) ...........................................................................................................................14
MCL 418.801(6) ...........................................................................................................................15
MCL 500.2001 ..............................................................................................................................12
MCL 500.2006(1) .........................................................................................................................15
MCL 500.2006(6) .........................................................................................................................15
MCL 500.2008 ..............................................................................................................................15
MCL 500.2016 ..............................................................................................................................15
MCL 500.2026 ..............................................................................................................................15

## Rules

Rule 12(b)(1) ...............................................................................................................................4, 9
Rule 12(b)(6) ..................................................................................................................................4

## QUESTIONS PRESENTED

I.   Do Plaintiffs have standing to bring suit under RICO where their damages arise from personal injuries and where their pecuniary loss has not yet been determined?

Sedgwick answers:  No.

II.   Can Plaintiffs state a cause of action under RICO relying on the predicate acts of mail and wire fraud where the fraud alleged is premised on a violation of a statute that contains an exclusive remedy?

Sedgwick answers:  No.

III.   Can Plaintiffs state a cause of action under RICO where the facts alleged establish that there was no pattern of racketeering activity?

Sedgwick answers:  No.

# I.    INTRODUCTION.

In 1970, the United States Congress enacted the Racketeer-Influenced and Corrupt Organizations Act ("RICO") in an effort to combat long-term criminal conduct that existing federal statutes did not reach.  The statute contained a private cause of action which courts are directed to construe broadly in order to "effectuate [RICO's] remedial purpose."  *H.J. Inc. v. Northwestern Bell Tele. Co.,* 492 U.S. 229, 242 (1989).  RICO's reach is not limitless, however, and not every injury may be redressed under the statute, even if a creative plaintiff is able to satisfy the statute's technical pleading requirements.  For example, a plaintiff cannot use RICO to recover for personal injuries or pecuniary losses that flow from such injuries.  Further, routine business disputes that do not implicate one of RICO's enumerated predicate acts are not proscribed by the statute.  Because the damages the Plaintiffs seek in this case are not recoverable under the statute, their claim must be dismissed.

Further, the Plaintiffs in this case claim to be the victims of a conspiracy to defraud them out of money to which they are entitled as compensation for their work-related personal injuries.  A careful reading of the First Amended Complaint ("Complaint") demonstrates that Defendants merely denied Plaintiffs workers compensation benefits, allegedly in bad faith.  Defendants could not have "defrauded" Plaintiffs out of their compensation, because Michigan's Workers Compensation Bureau ("Bureau") has not issued a ruling or supporting Defendants' position that Plaintiffs are not entitled to benefits.  In essence, Plaintiffs allege only that Defendants have taken a legal position that Plaintiffs contend is without merit.  As a matter of law, Defendants'

actions in this regard have not violated any statute that constitutes a "predicate act" necessary to state a claim under RICO.[1]

Instead, like many plaintiffs who are eager to make a federal case out of mundane legal disputes, the Plaintiffs argue that Defendants used the United States mail to further their conspiracy to commit fraud. But use of the mail alone is not a predicate act under RICO. Someone has to be deceived by a defendant's conduct in order to state a claim for mail fraud, and no one – especially not these Plaintiffs – was fooled by Defendants' alleged "scheme" to deny Plaintiffs their workers compensation benefits. Plaintiffs' theory is devoid of any criminal conduct on the part of Defendants and therefore fails as a RICO claim as a matter of law.

## II.    FACTS ALLEGED IN FIRST AMENDED COMPLAINT.

Both Clifford Jackson and Christopher Scharnitzke were employed by Coca Cola Enterprises, Inc. ("CCE"). Both claimed to be injured in the course of their employment with CCE. *See* Complaint at ¶ 4. CCE is self-insured for its obligations under Michigan's Workers Disability Compensation Act ("WDCA"), MCL 418.101, et. seq. Sedgwick Claims Management Services, Inc. ("Sedgwick") acts as CCE's adjuster in Michigan for CCE's workers compensation claims. *See* Complaint at ¶¶ 6- 7. Plaintiffs allege that CCE, Sedgwick, certain Sedgwick employees and Dr. Paul Drouillard, formed an "enterprise" which has as its purpose both defrauding Plaintiffs out of their workers compensation benefits and other, legitimate claims-handling matters. *See* Complaint at ¶ 10.

Plaintiffs allege generally that CCE and Sedgwick defrauded "plaintiffs" out of benefits by referring injured employees to Dr. Drouillard, knowing that Dr. Drouillard is a "cut off" doctor who "would reliably write them a report stating a claimant did not have a work-related

---

[1] The enumerated acts are set forth in 18 U.S.C. § 1961(a). Denying an employee benefits under a workers compensation statute – even in bad faith – is not one of the enumerated predicate acts.

disability, whether or not such disability actually existed." *See* Complaint at ¶ 13.   Dr.

Drouillard made a lot of money as a "cut off doctor" for employers.  *See* Complaint at ¶ 19.

These activities occurred "scores of times" in the years 2003 – 2005.  *Id.*  Once CCE or

Sedgwick received the report from the "cut off" doctor, they used that report to either deny or

terminate benefits.  *Id* at ¶ 14.  The sending of these reports and other communications involving

this "scheme" took place through the United States mail or over the telephone.  *Id. at ¶ 15.*

 In the case of Mr. Jackson, Sedgwick instructed Mr. Jackson to see Dr. Drouillard for an

independent medical evaluation ("IME") after Sedgwick received medical reports indicating that

Mr. Jackson had a work-related injury.  *See* Complaint at ¶ 31(A).  The direction to see Dr.

Drouillard for an IME was "false" because Dr. Drouillard was not an "independent" physician.

Dr. Drouillard wrote a report that contained false descriptions of Mr. Jackson's injuries and

falsely opined that Mr. Jackson could return to work.  Sedgwick then stopped Mr. Jackson's

benefits.  *See* Complaint at ¶ 31A, p. 21.

 Mr. Scharnitzke claimed an on the job injury and his treating physician faxed a report to

Sedgwick supporting that claim.  *See* Complaint at ¶ 31B.  Despite this information, Sedgwick

denied Mr. Scharnitzke's claim and, with CCE, has "repeatedly denied benefits despite having

received, directly and from their attorneys, proof that plaintiff has suffered a new rotator cuff

injury."  Sedgwick did not ask Mr. Scharnitzke to undergo an IME with a "cut off" doctor.

Plaintiffs allege only that CCE and Sedgwick denied Mr. Scharnitzke his benefits despite

evidence indicating he suffered an on-the-job injury.  *Id.*

## III ARGUMENT.

 "While it is clear that the scope of civil RICO extends beyond the prototypical mobster or

organized crime syndicate, it is equally evident that RICO has not federalized every state

common-law cause of action available to remedy" a plaintiff's injury.  *Midwest Grinding Company, Inc. v. Spitz,* 976 F.2d 1016, 1025 (7th Cir. 1992) (citations omitted).  Here, Plaintiffs are trying to "fit a square peg into a round hole" by squeezing a dispute over entitlement to workers compensation benefits into a civil RICO action.  *Id.*  Their efforts fail as a matter of law.

### A.    Legal standard.

A motion to dismiss for lack of standing is analyzed under Rule 12(b)(1) because "standing is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to deprive a court of jurisdiction."  *Ward v. Alternative Health Delivery Sys., Inc.,* 621 F.3d 624, 626 (6th Cir. 2001).   On a Rule 12(b)(1) motion, the plaintiff has the burden of proving jurisdiction and the court has the power to resolve factual disputes.  *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir. 1986).

Rule 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.   When reviewing a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007).  However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* Moreover, "[L]egal conclusions masquerading as factual allegations will not suffice." *Edison v. State of Tenn,* 510 F.3d 631, 634 (6th Cir. 2007).  Rather, "[f]actual allegations contained in [the] complaint must 'raise a right to relief above the speculative level.'" *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2009), citing *Bell Atlantic Corp. v. Trombly,* 550 U.S. 544 (2007).  A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a

legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007), citing *Trombly,* emphasis in original.

> **B.      Plaintiffs lack standing under RICO because (1) their claims are not ripe; and (2) they seek damages for personal injuries.**

In order to establish the requisite standing under 18 U.S.C. §1964(c), a plaintiff must allege (a) a violation of §1962; (b) injury to business or property; and (c) causation of the injury by the violation. *Homes v. Securities Investor Prot. Corp.,* 503 U.S. 258, 259 (1992). Here, Plaintiffs are suing to recover damages for personal injuries and therefore seek a remedy not provided under RICO. Alternatively, their damages have not been sufficiently quantified or established to support the injury element of their case and their RICO claim is not ripe. The Complaint must be dismissed accordingly.

> **1.      Plaintiffs' claims are not ripe because the extent of their injury has not been determined.**

"If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow v. Mich. Dep't of Natural Res.,* 970 F.2d 154, 157 (6th Cir. 1992). The rationale of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prod. Co.,* 473 U.S. 568, 580 (1985) (citations omitted). In order to establish that a claim is ripe, a plaintiff must prove that the alleged harm is "likely." *Adult Video Ass'n v. U.S.,* 71 F.3d 563, 568 (6th Cir. 1995).

Here, Plaintiffs' injuries are not yet ripe because the Bureau has not yet determined whether Plaintiffs are entitled to compensation for their alleged on-the-job injuries, let alone the

amount of compensation.[2]  Plaintiffs' injuries and alleged damages are not "clear and definite" (let alone established or likely) and their RICO claims therefore are premature.  *Motorola Credit Corp. v. Uzan,* 322 F.3d 130, 135 (2nd Cir. 2003) ("[A] cause of action does not accrue under RICO until the amount of damages becomes clear and definite"); *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 767-69 (2nd Cir. 1994), citing *Sedima, S.P.R.L v. Imrex Co.,* 473 U.S. 470, 496 (1985).

In *Gelt,* the plaintiff-bank brought a claim under RICO alleging that the defendant-borrowers misrepresented the value of the property pledged to secure the loans plaintiff made to defendants.  Specifically, the plaintiff alleged damages in the form of "excess loan loss" that was measured by the difference between what it actually lost on the loans and the amount it would have lost, had it loaned defendants money based on the true value of the properties.  The district court dismissed plaintiff's claims and the Second Circuit affirmed on the ground that, because not all of the loans at issue had been foreclosed, plaintiffs could not allege their pecuniary loss with the requisite certainty to establish standing under RICO.  *Gelt,* 27 F.3d at 767.

In reaching this holding, the *Gelt* court dismissed the plaintiff's argument that its RICO claims were ripe as soon as it loaned money based on the false valuations submitted by defendants.  The court also refused to accept plaintiff's contention that any amounts it collected upon foreclosure would be deducted from their damages as mitigation and, therefore, that their damages could be calculated at trial.  The *Gelt* court rejected these arguments because "the general rule of fraud damages is that the defrauded plaintiff may recover out-of-pocket losses caused by the fraud."  *Gelt,* 27 F.3d at 768, citing *Disher v. Information Resources, Inc,* 691 F.

---

[2] Magistrates sitting within the Bureau are vested with the exclusive authority to determine the entitlement to benefits and the amount, subject to rights of appeal to the Michigan appellate courts.  MCL 418.841.

Supp. 75, 79 (N.D. Ill. 1988), aff'd 873 F.2 136 (7th Cir. 1989).  A RICO defendant cannot be liable for all potential damages, but only those actually suffered by the plaintiff.  Those damages can only be measured after the plaintiff has exhausted all remedies available to redress the alleged fraud.  *Id.*

Plaintiffs in this case cannot allege their pecuniary loss with the requisite certainty because the Bureau has not determined whether Plaintiffs are entitled to benefits under the WDCA, let alone the amount of benefits to which they are entitled.  There are no allegations that the Bureau has or will agree with Defendants' position that Plaintiffs are not entitled to benefits under the WDCA and no inference can be drawn that Plaintiffs will lose their cases before the Bureau because Defendants contested their entitlement to benefits.  *Adult Video*, 71 F.3d at 568 (claim not ripe when it is dependent on contingent future events that may not occur.)  Plaintiffs cannot plead the amount of "out of pocket loss" or even that they have suffered any out of pocket loss.  Indeed, Plaintiffs could be awarded benefits under the WDCA, leaving them with no compensable injury under RICO.  Until Plaintiffs have exhausted the administrative and legal process, (*i.e.*, until they have established a quantified and definite pecuniary loss), they cannot plead either injury or damages with the certainty necessary to establish standing under RICO.  Their claims must be dismissed accordingly.

### 2.     Plaintiffs cannot establish an injury to their business or property.

In order to have standing under RICO, a plaintiff must allege an injury to his "business or property".  18 U.S.C. §1964(c); *Drake v. B.F Goodrich Co.,* 782 F.2d 638, 644 (6th Cir. 1986); *Gagan v. American Cablevision, Inc.,* 77 F.3d 951, 958-59 (7th Cir. 1996) (injury to business or property is a standing requirement under RICO).   The phrase "business or property" has "restrictive significance and expressly excludes 'personal injuries'.  *Id.,* citations omitted.  Put

another way, RICO does not compensate for losses due to personal injuries and a plaintiff seeking to recover for damages resulting from personal injuries does not have standing to sue under RICO. *Oscar v. Univ. Students Co-Op Ass'n,* 995 F.2d 783, 785 (9th Cir. 1992) (en banc).

Plaintiffs contend that they were denied benefits to which they were entitled because of personal injuries they suffered on the job. The amount of damages to which they are entitled is based directly on the nature and extent of their personal injuries, not on an injury to their business or property. Plaintiffs may argue that they are seeking damages for the denial of their personal injury claim and not for the injury itself. However, Plaintiffs cannot deny that their (alleged) personal injuries are the gravamen of their damages. Had they received compensation for their personal injuries, they would not have filed suit. Indeed, the compensation sought in this case is measured and limited by, and cannot be separated from Plaintiffs' personal injuries. The fact that these damages constitute a pecuniary loss to Plaintiffs does not change their fundamental nature as personal injury damages not recoverable under RICO. *See e.g., Evans v. City of Chicago,* 434 F.3d 916, 927 (7th Cir. 2006) (loss of income due to wrongful detention not recoverable under RICO); *Genty v. RTC,* 937 F.2d 899, 918 (3rd Cir. 1991) (injury from mental health damages and emotional distress not recoverable under RICO); *Berg v. First State Ins. Co.,* 915 F.2d 460, 464 (9th Cir. 1990) (injuries for loss of security and peace not recoverable under RICO); *Rylewicz v Beaton Services, Ltd,* 888 F.2d 1175, 1180 (7th Cir. 1989) (injury stemming from harassment and intimidation of a federal witness is not recoverable under RICO); *Grogan v. Platt,* 835 F.2d 844, 846-47 (11th Cir. 1988) (injuries from loss of income and support due to wrongful death not recoverable under RICO).

Moreover, Plaintiffs' "incidental" damages, including additional attorneys' fees allegedly incurred in pursuing Plaintiffs' right to worker's compensation benefits, are "nothing more than

an indirect or secondary effect, of the personal injuries" and do not on their own constitute injury to "business or property" within 18 U.S.C. §1964(c). *Evans, Genty, Grogan, supra.* (pecuniary losses flowing from personal injuries not cognizable under RICO). Because these damages flow from the personal injuries, they cannot support standing.

As a matter of law, the Plaintiffs have not suffered an injury to their "business or property" that was caused by the alleged pattern of racketeering activity. No amendment can change the nature of the damages Plaintiffs seek in this case and the Complaint therefore must be dismissed, with prejudice, under Rule 12(b)(1).

### C.    The Complaint fails to state a claim under RICO.

The "widespread abuse of civil RICO stems from the fact that all modern business transactions entail use of the mail or wires giving plaintiffs the jurisdictional hook" they need to attempt to litigate a state court dispute in federal court. *Midwest Grinding,* 976 F.2d at 1025. Plaintiffs attempt to use that "hook" here by relying on routine mailed-correspondence and phone conversations dressed up as "predicate acts" of mail and wire fraud. While Plaintiffs allege the use of the mail and wires, they cannot allege that anyone was actually "defrauded" or "deceived" by the conduct at issue and therefore cannot make a *prima facie* case to support the predicate acts of mail and wire fraud. Further, Sedgwick's use of the mail to investigate and adjust claims also does not support an inference of a "pattern of racketeering activity" necessary to state a claim under RICO. There simply is no violation of RICO under the facts pled.

### 1.    The allegations do not support charges of either mail or wire fraud.

Plaintiffs allege predicate acts of mail and wire fraud. *See* Complaint at ¶20B. A claim for wire or mail fraud requires the plaintiff to establish (a) a scheme to defraud; (b) use of the mail or interstate wires; and (c) participation by the defendant in the scheme to defraud.

*Schmuck v. U.S.,* 489 U.S. 705, 712 (1989).  "A scheme to defraud includes any plan or course of action by which someone intends to deprive another by ***deception*** of money or property by means of false or fraudulent pretenses, representations, or promises."  *United States v. Gold Unlimited, Inc.,* 177 F.3d 472, 479 (6th cir. 1999) (emphasis added).  The "gravamen of the offense is the scheme to ***defraud . . ..***"  *Bridge v. Phoenix Bond & Indemnity Co*, 128 S.Ct. 2131, 2133 (2008) (emphasis added).

Here, the alleged scheme was to ***deny*** Plaintiffs workers compensation benefits, not to ***defraud*** them of benefits.  If the Bureau determines that Defendants' reasons for denying Plaintiffs benefits lack merit (as Plaintiffs contend), the denial of benefit would only be temporary.  In other words, because Plaintiffs have not lost their benefits, they have not been "defrauded" out of those benefits.  Without some act constituting fraud committed by use of the mail, Plaintiffs cannot rely on mail fraud as a predicate act for their RICO claim.  *U.S. v. Kreimer,* 609 F.2d 126, 128 (5th Cir. 1980) ("Mail fraud statutes cannot be used to address all business practices that do not fulfill expectations.")  Indeed, the Court must carefully review RICO conspiracy claims premised solely on repeated acts of mail or wire fraud in order to ensure that routine disagreements expressed through correspondence or over the telephone do not give rise to RICO claims.  *See Blount Financial Services, Inc. v. Walter E. Heller and Co.,* 819 F.2d 151, 152-53 (6th Cir. 1987); *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 529 (3rd Cir. 1998) (heavy-handed business tactics do not constitute "fraud" under federal mail and wire fraud statutes).

The Sixth Circuit's holding in *Blount* illustrates the point.  In *Blount,* the plaintiff borrowed money from the defendant to finance an industrial lending business.  The parties' loan agreement provided for an adjustable interest rate pegged to the rate Continental Illinois Bank

gave its most favored customers.  Plaintiff contends that it was forced out of business when defendant charged a rate higher than that provided in their agreement.  Plaintiff brought two RICO counts against defendant, alleging mail fraud as a predicate act because defendant mailed requests for payment and other documents through the mail.  The Sixth Circuit affirmed the dismissal of the RICO claim on the ground, *inter alia,* that defendant's decision to conceal the "true" rate charged did not constitute fraud:

> The fact that the parties take different positions under the contract as to the appropriate prime rate, or the fact that the defendant charged too high a 'prime rate' and thereby concealed or refused to disclose what the plaintiff considers the true prime rate called for under the contract, does not give rise to a valid claim for fraud.

*Blount,* 819 F.2d at 152.

In this case, Sedgwick's denial of benefits – for any reason – was not "reasonably calculated to ***deceive*** persons of ordinary prudence and comprehension." *U.S. v. Van Dyke,* 605 F.2d 220, 225 (6th Cir. 1979), cert. den. 444 U.S. 994 (emphasis added).  In fact, no one was deceived by the alleged scheme.  Plaintiffs always believed they had a claim for benefits because they had evidence supporting their claim of work related injury at the time these claims were denied.  *See* Complaint at ¶31A (Mr. Jackson had report indicating his injury was work related before he was examined by Dr. Drouillard); ¶32B (Mr. Scharnitzke was told his injury was work related before Sedgwick denied claim).  There is no allegation that this information was withheld from Plaintiffs in order to fool them into thinking they did not have a contestable workers compensation claim.  Rather, Plaintiffs theory of fraud is premised on the fact that they provided this information to CCE and Sedgwick and CCE and Sedgwick contested Plaintiffs' entitlement to benefits anyway.

Defendants' use of the mail to review and then deny Plaintiffs' claims for workers compensation benefits does not constitute "mail fraud."  Neither Plaintiffs nor anyone else was

"deceived" by Defendants' actions. Without deception, there is no fraud, no predicate act, and no cause of action under RICO.

## 2. Violations of statutory rights through the mail will not support predicate act of mail fraud under RICO.

As an alternative theory of fraud, Plaintiffs allege that Sedgwick's denial of workers compensation benefits violated Sedgwick's duties under Michigan's Uniform Trade Practices Act (MCL 500.2001, et seq.) and the WDCA. *See* Complaint at ¶ 16. Violations of these statutes are not among the many enumerated predicate acts set forth in 18 U.S.C. § 1961(a) and cannot by themselves stand as a predicate act supporting Plaintiffs' RICO claims. Further, Plaintiffs' allegation that Defendants violated these statutes by using the mail and telephone does not satisfy the predicate act element of their *prima facie* case because violations of these statutes on the facts pled do not support a claim for mail or wire fraud. Rather, this alternative theory underscores the impropriety of Plaintiffs' efforts to turn a routine dispute into a RICO case.

### a. "Violation" of the WDCA through the mail will not support a claim under RICO.

The denial of benefits under the WCPA does not constitute fraud for purposes of the mail and wire fraud statutes, even if the denial was in bad faith. Federal courts have consistently held that a plaintiff may not turn a breach of a statutory duty into a claim for "mail fraud" when the statute provides an exclusive remedy to redress the violation. These courts draw a distinction between violating a statute that provides a means of redress and the predicate act of mail fraud giving rise to liability under RICO. The reason for this distinction is simple: if a plaintiff has a remedy to redress the violation of a statutory right, he has not been "defrauded" of his rights under the statute. Put another way, federal law does not permit a plaintiff to circumvent a

legislature's intent that redress for violation of a statute be limited to the remedies provided by the statute, under the guise of a "fraudulent" violation committed by use of the mail.

For example, plaintiffs alleging that they were "defrauded" out of their rights under the Energy Reorganization Act, the Service Contract Act, the Federal Employees Health Benefit Act, the National Traffic and Motor Vehicle Safety Act, and the Higher Education Act of 1965 have had their claims under RICO dismissed because a defendant's efforts to deny a plaintiff his or her rights under these statutes through use of the mail, as a matter of law, could not support a claim for mail or wire fraud under RICO. *McCulloch v. PNC Bank, Inc.,* 298 F.3d 1217, 1227 (11th Cir 2002) (failure to make certain disclosures in violation of the Higher Education Act will not support claim for mail or wire fraud as predicate acts under RICO); *Ayres v. General Motors Corp.,* 234 F.3d 514, 522 (11th Cir. 2000) (violations of the National Traffic and Motor Vehicle Safety Action committed through the mail would not support predicate act of mail fraud necessary to sustain RICO claim); *Danielsen v. Burnside-Ott Aviation Training Center, Inc.,* 941 F.2d 1220, 1229 (D.C. Cir. 1991) (violations of Service Contract Act committed through mail will not support mail and wire fraud allegations under RICO); *Norman v. Niagara Mohawk Power Group,* 873 F.2d 634, 637-38 (2nd Cir. 1989) (violations of Energy Reorganization Act committed through mail would not support predicate acts under RICO); *Bridges v. Blue Cross and Blue Shield*, 935 F.Supp 37, 42 (D.D.C. 1996) (Federal Employee Health Benefit Act contains exclusive remedy provision and violation of the statute and will not support a RICO claim). The plaintiffs in these cases were not "defrauded" out of their rights under the cited statutes because there is remedy available in the statute at issue. Their rights may or may not have been affected by the defendants' violations of the statutes, but they were not defrauded out of their rights under the statutes.

Here, the Michigan Legislature passed the Workers Compensation Act in 1912 as a "no-fault" system of compensating workers injured in the course of their employment. As it has evolved, the WDCA provides a careful and orchestrated balance between a workers' rights and employers' rights. The WDCA now stands as an employee's exclusive remedy for on the job injuries for all but intentional torts. MCL 418.131, et seq. It provides for penalties against employers who deny benefits in bad faith or refuse to pay benefits pursuant to a voluntary agreement, and a separate penalty provision for the failure to make medical reimbursements timely. MCL 418.631, MCL 418.801(2), MCL 418.801(3); *Townsend v. M-R Products, Inc.,* 436 Mich 496; 501 (1990); *Morley v. General Motors Corp.,* 252 Mich App 287 (2002). As with some of the federal statutes cited above, the WDCA also provides that a carrier can lose its right to insure in Michigan if it "repeatedly or unreasonably fails to pay claims promptly." MCL 418.631. The WDCA thus contains provisions that ensure the workers compensation system is administered fairly and that an injured worker will not be "defrauded' out of benefits.

In short, a plaintiff cannot bring a claim under RICO based on predicate acts of mail and wire fraud where the "fraud" committed is a violation of a statute that contains an exclusive remedy. A violation of a statute does not constitute "fraud" when, as here, there is a means to redress the injury alleged through an administrative regime established under the statute, because a person is not "defrauded" out of a statutory right when he has a remedy available to him. Denying someone benefits – even in bad faith as is alleged here – is not the same thing as defrauding someone out of their right to benefits. Plaintiffs here may still be awarded workers compensation benefits through the administrative procedures enacted under the same statute that entitled Plaintiffs to make a claim for benefits in the first place. Plaintiffs' remedy is before the Bureau, and should not be before this Court on a misconceived RICO claim.

### b.    The UPTA does not support the mail and wire fraud allegation.

The UPTA proscribes certain conduct on the part of insurance carriers but violations of the UPTA are limited to enforcement actions by the Insurance Commissioner at the Office of Financial and Insurance Regulation. MCL 500.2028. The UPTA does not confer a private cause of action on plaintiffs. *Crossley v. Allstate Ins. Co.,* 155 Mich App 694, 697 (1986); *Safie Enterprises, Inc. v. Nationwide Mutual Fire Ins. Co.,* 146 Mich App 483, 494 (1985); *Young v. Michigan Mutual Ins. Co.,* 139 Mich App 600, 605 (1984). *See also, Kassab v. Michigan Basic Property Ins. Ass'n,* 441 Mich 433, 440 n.7 (1992), over ruled on other grounds *Haynes v. Neshewat,* 477 Mich 29 (2007).

Moreover, while some portions of the UTPA apply to workers compensation insurance, those sections are not at issue in this case. *C.f.* Complaint at ¶ 17. For example, MCL 500.2008 provides that an employer can ask its workers compensation carrier to audit payroll expenditures to ensure that the employer is paying the appropriate premium. MCL 500.2016 protects employers from unscrupulous practices on the part of workers compensation carriers.

The "duty to pay timely" provision of the UTPA relied on by Plaintiffs does not apply to workers compensation claims. MCL 500.2006(1) provides that an insurer that pays a claim untimely because of an unreasonable dispute concerning coverage is subject to a punitive interest rate of 12% in unpaid claims. The WDCA contains a separate penalty provision for interest on claims ordered paid after a denial of benefits and the UPTA states on its face that, in the event of a conflict, the WDCA prevails. MCL 418.801(6); MCL 500.2006(6). Finally, as CCE noted in its motion to dismiss, MCL 500.2026 is a statute limited in its scope to "the business of insurance," a term the Sixth Circuit determined – at Plaintiffs' counsel's urging – does not apply to the relationship between an self-insured employer, an injured employee and the employer's

adjuster. *Brown*, 546 F.3d at 358. There is nothing in the UPTA that supports Plaintiffs' contention that Sedgwick's denial of workers compensation benefits constitutes "fraud" for purposes of the mail and wire fraud statutes. Reference to this statute was a red herring.

### 3. The allegations undermine an inference of a pattern in the alleged conduct.

To state a claim under RICO, the Plaintiffs are required to plead facts that show a pattern of racketeering activity. Specifically, Plaintiffs must plead that Sedgwick committed at least two "predicate acts of racketeering" within a ten year period, that the predicate acts are interrelated, and that the acts "reveal continued, or the threat of continued, racketeering activity." *H.J. Inc. v. Northwestern Bell Tele. Co.,* 492 U.S. 229, 236 – 39 (1989). It is the "factor of continuity plus relationship which combines to produce a pattern." *Sedima, SPRL v. IMREX Co., Inc.*, 473 U.S. 479, 496 n. 14 (1985).

"Continuity" refers to a "closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241. The requirement that the pattern consists of either continued activity or a threat of continued activity reflects Congress's concern "with long-term criminal conduct." *Id.* In deciding whether the plaintiff can make a claim against a particular defendant, the court has the challenge of distinguishing "situations involving persons actually engaged in 'long-term criminal activity' from those involving ***nothing more than routine business disputes that do not include established patterns of racketeering activity.***" *CSX Transportation, Inc. v. Meserole Street Recycling, Inc.,* 570 F.Supp.2d 966, 970 (W.D. Mich. 2008), citing *H.J., Inc*, emphasis added.

Here, each of the Plaintiffs has pled the existence of a distinct enterprise involving different actors. Mr. Jackson was denied benefits as part of a scheme involving all three defendants and a sham IME. Mr. Scharnitzke was simply denied benefits by Sedgwick and CCE

and was not seen by any "cut off" physician.  In other words, the alleged predicate acts (*i.e.* sending a letter in which his claim was denied in the case of Mr. Scharnitzke, and sending a letter directing Mr. Jackson to attend an IME with Dr. Drouillard) were not related or part of a common scheme to defraud.  Rather, each was uniquely targeted to the particular Plaintiff and his situation.  When the allegations are separated by the unique "enterprise" that conspired to deprive them of benefits, individually, it is clear Plaintiffs have not established a closed continuity pattern.  *Moon v. Harrison Piping Supply,* 465 F.3d 719 (6th Cir. 2006).

In *Moon,* the plaintiff alleged that his employer, his employer's workers compensation adjuster, and a physician, violated RICO by conspiring to deny him workers compensation benefits.  The trial court's decision to dismiss the complaint was affirmed by the Sixth Circuit, *inter alia,* because the plaintiff could not plead facts that supported an inference of "continuity" of the pattern of racketeering activity.  Specifically, the plaintiff pled facts that indicated that the predicate acts (i.e. mailing notices terminating his benefits and mailing a fraudulent medical report) "were key to defendants' single objective of depriving [plaintiff] of his benefits.  No other schemes, purposes, or injuries are alleged and there are no facts suggesting that the scheme would continue beyond the defendants accomplishing their goal of terminating [plaintiff's] benefits." *Moon,* 465 F. 3d at 725.

Plaintiffs here claim that Mr. Jackson was a "victim" of a conspiracy that included his employer, the adjuster, and an independent physician.  Mr. Scharnitzke was a "victim" of a separate conspiracy that involved only the adjuster and employer.  Moreover, Dr. Drouillard is alleged to be a party to other conspiracies involving other employers and claims handlers, but not the Plaintiffs.  In other words, there is no ***pattern*** of racketeering activity affecting each of the Plaintiffs.  There is a mish-mash of disparate allegations involving separate conspiracies,

separate enterprises, and different methods for accomplishing the "fraud". When there is one victim and one scheme, a plaintiff cannot establish a pattern based on "closed" continuity, even if the predicate acts occurred over a number of years. *Moon*, 465 F.31 at 726.

In this regard, the allegations in the Complaint are distinguishable from those in *Brown v. Cassens Transport Co,* 546 F.3d 347, 355 (6th Cir. 2009). In *Brown,* the plaintiffs alleged that the same participants were involved in a single conspiracy involving the same conspirators who used the same *modus operandi* to deny benefits. Here, each named-Plaintiff alleges different actors and a different scheme employing a different method. The Complaint in this case lacks the coherent pattern alleged in *Brown.*

Moreover, Plaintiffs allegations that this conduct will continue unless stopped fail to satisfy the pleading requirements for an "open" theory of continuity because Plaintiffs are able to seek redress for the alleged fraud under the WDCA. *Moon,* 465 F.3d at 727. In other words, where an injured worker has recourse to a tribunal that can adjudicate his entitlement to workers compensation benefits, there is no risk of on-going racketeering activity from an adjuster who terminated or suspended benefits. *Id.* As the Michigan Supreme Court found, the WDCA contained remedial provisions that create a financial disincentive for employers to wrongfully deny benefits, including a punitive interest rate, and a penalty provision. *Townsend v M-R Products, Inc.,* 436 Mich 496, 502-503 (1990). This disincentive protects against a risk of future violations. *Moon, supra.*

Finally, the facts pled do not suggest that denying workers compensation claims for CCE employees was Sedgwick's "regular way of doing business." On ***identical facts*** pled here, the Sixth Circuit in *Moon* found the allegations insufficient to support an inference that fraudulently

denying claims was the defendant's "regular way of doing business." Specifically, the plaintiff in *Moon* alleged:

- One or more of the defendants engaged in similar acts to defraud others of their workers compensation benefits;

- The defendants used the "cut off" doctor in other cases in order to fraudulently deny benefits;

- Defendants treated an injured employer the same way.

The Sixth Circuit held on these facts, "In short, the leap from *Moon's* allegations to the conclusion that defendants customarily bilked employees out of workers' compensation benefits is too great, even drawing all reasonable inferences in favor of [plaintiff]." *Moon,* 465 F.3d at 727 – 28.

The holding in *Moon* in this regard appears to be at odds with the holding in *Brown*. The *Brown* court found that a plaintiff did not need to "specifically allege that this conduct is on going" in order to sustain an inference that committing fraud was the defendant's "regular way of doing business." *Brown,* 546 F.3d at 356. *Brown* did not overrule *Moon*, however, and *Moon* stands as controlling precedent. *Salmi v. Sec'y of Health & Human Servs.,* 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.") Moreover, the holding in *Brown* is inconsistent with the well-established principal that a plaintiff must plead a claim for RICO with the particularity required under Rule 9. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir. 1999). Finally, unlike the *Brown* court, the *Moon* court did not make its decision in *dicta,* but by applied controlling precedent to the specific facts pled in the complaint at issue in that case.

Indeed, while the *Brown* court indicated that the "totality of the circumstances" must be considered to determine whether the acts pose a threat of continued activity, it failed to indicate the specific circumstances that allowed it to conclude that the alleged activity posed a threat of a continuing pattern. The more reasoned decision is the better decision and *Moon* should be followed in this case.

Plaintiffs have alleged merely that they were employed by CCE and denied workers compensation benefits in bad faith. The allegations make it clear that the denials were for different reasons, by different figures and using different methods. There are no allegations that all or even most claims of injured CCE employees are denied and no inference may be drawn from these allegations that it was the "normal business practice" of Sedgwick to deny (allegedly) valid claims. Without a pattern and without the continuity of activity that gives rise to a pattern, there is no RICO claim. The Complaint must be dismissed with prejudice.

## IV.   CONCLUSION.

Like many litigants before them, Plaintiffs have tried to fashion a RICO case out of a routine state law dispute, in order to take advantage of the extraordinary remedies provided under that statute. The remedies are extraordinary because the statute is designed to punish extraordinary, long-term criminal conduct. Here, Mr. Jackson and Mr. Scharnitzke allege that they were each denied workers compensation benefits to which they believe they were entitled, because Defendants acted in bad faith by not accepting as true those reports that supported Plaintiffs' position. This is a routine dispute that must be resolved according to the process outlined in the statute that provided Plaintiffs with the right to benefits in the first place. This is not a RICO case under controlling precedent and it must be dismissed, with prejudice.

            */s/ Kathleen H. Klaus*
            Kathleen H. Klaus (P67207)

2:09-cv-11529-NGE-VMM   Doc # 39   Filed 08/10/09   Pg 31 of 31   Pg ID 682

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2009, I electronically filed Sedgwick Claims Management Services, Inc.'s Motion and Brief in Support of Its Combined Rule 12(B)(1) and Rule 12(B)(6) Motion to Dismiss First Amended Complaint with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

<div style="margin-left:45%;">

_/s/ Kathleen H. Klaus_

Kathleen H. Klaus (P67207)
Attorneys for Defendants
28400 Northwestern Hwy., 3rd Floor
Southfield, Michigan  48034
(248) 354-4030
[P67201]
Primary E-mail:  khk@maddinhauser.com

</div>

DATED:  August 10, 2009