# UNITED STATES DISTRICT COURT

# IN THE EASTERN DISTRICT OF MICHIGAN

**CLIFTON E. JACKSON and**
**CHRISTOPHER M. SCHARNITZKE,**

Case No.: 2009-11529

Judge David M. Lawson

Plaintiffs, on behalf of themselves and other persons similarly situated

**SEDGWICK CLAIMS MANAGEMENT SERVICES, INC, and COCA COLA ENTERPRISES, INC, foreign corporations, and DR. PAUL DROUILLARD,**
**Jointly and Severally,**

Defendants.

**PROOF OF SERVICE**

The undersigned certifies that this instrument, together with all referenced attachments was served on all parties to this case and/or their attorneys of record at their respective addresses as disclosed by the pleadings on __August 24, 2009__ by the following method(s):
[] U.S. Mail   [] Fax        [] Hand Delivered
[] Federal Express         [] UPS
[X] Other:   **ELECTRONICALLY EMAILED**

 /s/Delilah D. Talon
Signature of Serve

---

| | |
|---|---|
| MARSHALL LASSER P25573 | BUTZEL LONG |
| MARSHALL LASSER PC | By:   Daniel B. Tukel P34978 |
| Attorney for plaintiffs | Lynn A. Sheehy P38162 |
| po box 2579 | Katherine D. Goudie P62806 |
| Southfield MI 48037 | Attorneys for Defendant Dr. Drouillard |
| 248-647-7722 | 150 W. Jefferson, Ste. 100 |
| mlasserlaw@aol.com | Detroit, MI 48226 |
| ddtalon@gmail.com | 313-225-7000 |
| | tukel@butzel.com |
| | sheehy@butzel.com |
| Thomas W. Cranmer P25252 | goudie@butzel.com |
| Matthew F. Leitman P48999 | |
| Miller Canifield Paddock & Stone, P.L.C. | Kathleen H. Klaus P67207 |
| Attorneys for Defendant Coca-Cola | Attorney for Sedgwick |
| 840 West Long Lake Road, Ste. 200 | 28400 Northwestern Hwy., 3rd Fl |
| Troy, MI 48098 | Southfield, MI 48034 |
| 248-879-2000 | 248-354-4030 |
| cranmer@millercanfield.com | khk@maddinhauser.com |
| leitman@millercanfield.com | |

---

## PLAINTIFFS' RESPONSE TO SEDGWICK'S RULE 12(b) MOTION TO DISMISS

Sedgwick's motion should be dismissed for reasons stated in the brief.

**BRIEF IN SUPPORT OF RESPONSE**

**Concise Statement of Issue Presented**

Should This Court Grant Sedgwick's Motion to Dismiss Under Rule 12(b)(1) and (6)?

**Controlling Authorities**

On the standard of review: *Carver v Bunch,* 946 F. 2d 451, 452 (6th Cir 1991).

On the construction of the RICO statute: *Sedima, SPRL v Imrex Co,* 473 US 479 at 491 n. 10, 105 S Ct 3275 at 3283 n. 10, 87 L Ed 2d at 360 (1985)

On abstention and preemption doctrines: *Brown et al Cassens, et al*, 546 F3d 347 (Sixth Cir 2008).

On sufficiency of pleading proximate cause, predicate acts, continuity, damages, etc: *Brown et al Cassens, et al*, 546 F3d 347 (Sixth Cir 2008).

**STATEMENT OF FACTS AND BACKGROUND**

The plaintiffs' allegations should be painfully familiar to the court. A bit of further education as to the Michigan workers compensation system may help. Plaintiffs hired Marshall Lasser to represent them in their workers compensation cases against Coke, and they agreed to pay him an attorney fee if he gets them benefits (see Affidavit of Marshall Lasser, exhibit A). Also, Mr. Lasser has about $100 expenses in each of the plaintiff's workers compensation cases (for medical records, copies, mileage, subpoena fees) and in a few months these expenses will exceed $1,500 per case when the depositions of treating doctors are taken. Third, each plaintiff has spent money on co-pays and self-pays of medical bills and mileage to and from doctors; this is out of pocket expense already accrued, for which plaintiffs are entitled to payment under the Michigan Workers Disability Compensation Act (WDCA), MCL 418.101 et seq, and rules promulgated thereunder.

**ARGUMENT**

**Standard of Review**

The moving party in a motion brought under rule 12(b)(6) has a difficult burden. It must persuade the court "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Carver v Bunch,* 946 F. 2d 451, 452 (6th Cir 1991). At the pleading stage of this RICO case, Dr. Drouillard must convince this court that "no set of facts" which plaintiffs might present would prove a RICO violation and injury.

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to plaintiff and accept well-pleaded facts as true. *Columbia Natural Resources Inc v Tatu,* 58 F 3d 1101, 1109 (6th Cir 1995). Thus a court may not grant a Rule 12(b)(6) motion based upon its disbelief of a complaint's factual allegations.

The RICO Act is to be constructed liberally, in favor of plaintiffs, to effectuate its remedial intent.

> In a portion of the statute that remains uncodified, Congress directed that RICO "shall be liberally interpreted to effectuate its remedial purposes." Section 401(a) of Pub. L. No 91-452, 84 Stat. 947, 18 USC 1961 note.
>
> *Civil Rico,* by Smith and Reed, Lexis-Nexis, para. Section 1.02, page 1-8.

Liberal construction shall be applied with special vigor to section 1964 of RICO, which provides for the civil remedy sought by this suit: "... if Congress' liberal-construction mandate is to be applied anywhere, it is in §1964, where RICO's remedial purposes are most evident." *Sedima, SPRL v Imrex Co,* 473 US 479 at 491 n. 10, 105 S Ct 3275 at 3283 n. 10, 87 L Ed 2d at 360 (1985)

### 1. Plaintiffs' Claims Are Ripe.

Sedgwick argues plaintiffs' claims are unripe because the Workers Compensation Agency (formerly Bureau)

> has not yet determined whether Plaintiffs are entitled to compensation.... let alone the amount of compensation. Plaintiffs' injuries are not clear and definite (let alone established and likely) and their RICO claims are therefore premature. *Motorola Credit Corp. v Uzan* 322 F 3d 130, 135 (2d Cir 2003) ("[A] cause of action does not accrue under RICO until the amount of damages becomes clear and definite"); *First Nationwide Bank v Gelt Funding Corp,* 27 F3d 763, 767 (2d Cir 1994)...
> \*\*\*
> ....A RICO defendant cannot be liable for all potential damages, but only those actually suffered by plaintiff. Those damages can only be measured after the plaintiff has exhausted all remedies available to redress the alleged fraud. *Id* [citing Gelt, supra]
> ....Plaintiffs cannot plead the amount of "out of pocket" loss or even that they have suffered any out of pocket loss. Indeed, Plaintiffs could be awarded benefits under the WDCA, leaving them with no compensable injury under RICO.

Sedgwick is wrong factually and legally.

Sedgwick is wrong factually when it states "Plaintiffs cannot plead the amount of "out of pocket" loss or even that they have suffered any out of pocket loss."  As shown in the affidavit of Marshall Lasser, exhibit A, plaintiffs already have out of pocket loss: they have had to hire a lawyer to get benefits, and that lawyer has spent about $100 expenses per plaintiff, soon to exceed $1,500 per plaintiff.  (These incurred expenses is can be alleged in a Third Amended Complaint if required by the Court).

Plaintiffs have other out of pocket expenses: each has spent money on mileage to and from doctors (which Sedgwick has refused to pay); and each has spent money on doctor and prescription co-pays and self-pays (which Sedgwick has refused to pay).  There is yet another out of pocket expense - medical bills plaintiffs have incurred (which Sedgwick has refused to pay).

Plaintiffs and their treaters submitted medical bills and mileage claims and co-pays and self-pays to Sedgwick and requested payment or reimbursement.  *Sedgwick knows this.  It got the bills and expenses and refused to pay them.*  Sedgwick's argument that plaintiffs have no out of pocket expense is a fraudulent argument.  Sedgwick should be sanctioned for making a claim it knows is false.

Sedgwick is also wrong factually when it states, "Plaintiffs could be awarded benefits under the WDCA, *leaving them with no compensable injury.*"  Sedgwick knows this is false: plaintiffs will have to pay their lawyer.

Even if plaintiffs are awarded benefits in full (and 95% of MI workers compensation cases settle at less than 100 cents on the dollar - see affidavit of Marshall Lasser), plaintiffs will still have

6

a compensable injury: their attorney fee. They have contracted to pay Marshall Lasser an attorney fee in their workers compensation cases. They have incurred a definite financial obligation, even though the amount is indefinite now.

Sedgwick is not only factually wrong, it is wrong legally, in claiming plaintiffs have no standing to sue because their entire loss cannot be reduced to a dollar amount. Case law holds that a RICO plaintiff has standing if he has incurred a definite financial injury, even if the amount is indefinite. *Brown et al Cassens, et al*, 546 F3d 347 (Sixth Cir 2008) held the pleadings in that case were sufficient to allege damages where plaintiffs alleged they would have to pay and attorney fee and repay their lawyer his expenses. That ruling is binding on this court under stare decisis. Plaintiffs here make the same claims as plaintiffs there. Both sets of plaintiffs claimed fraudulent denial of workers compensation benefits (medical, wage loss, mileage).

Plaintiffs' pleadings satisfy the three prong test of *Lujan v Defenders of Wildlife,* 504 US 555, 112 S Ct 2130, 119L Ed 2d 351 (1992), applied to the RICO case of *Adult Video Assn v United States Dept. Of Justice,* 71 F3d 563,565 (6th Cir 1995):

> "[T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have an 'injury in fact' - an invasion of a legally protected interest which is (a) concrete and particularized,... and (b) actual or imminent, not conjectural or hypothetical.... Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

After *Lujan,* the Supreme Court held that only very general allegations are needed to support a RICO claim at the pleading stage. In *NOW v Scheidler,* 510 US 249, 256, 114 S Ct 798, 127 L Ed 2d 99 (1994), the court said, "At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to dismiss we presume that general

allegations embrace those specific facts that are necessary to support the claim."

The First Amended Complaint, plus the facts in the affidavit of Marshall Lasser which can if the court requires by incorporated into an amended complaint, alleges actual out of pocket expenses and losses which are definite in amount (attorney expenses, medical bills, medical mileage, medical bill and prescription co-pays and self-pays, and unpaid weekly wage benefits) and it alleges expenses which are definitely incurred but indefinite in amount (attorney fee, future medical bills, weekly wage loss benefits, etc). The First Amended Complaint alleges damages which are ripe under *NOW, Lujan* and *Brown.*

### 2. Plaintiffs' Claims Are Not for Personal Injuries But Loss of Statutory Insurance Benefits

Sedgwick strives to convert plaintiffs' workers compensation claims into personal injury claims. Sedgwick fails. Plaintiffs' claims are for *statutorily prescribed insurance benefits.* Plaintiffs are not seeking pain and suffering and other damages associated with traditional personal injury tort actions. Plaintiffs' claims are for the financial benefits mandated by the WDCA. They have incurred out of pocket losses and expenses already and will incur more in the next few weeks as their workers compensation claims proceed before the Agency. The cases cited by Sedgwick are irrelevant; point; they apply to traditional personal injury tort actions.

Furthermore, *Brown,* supra, forecloses Sedgwick's argument. *Brown* held plaintiffs properly plead claims for financial injuries - plaintiffs' attorney fees and expenses in their workers compensation cases. In addition to those financial losses recognized by *Brown,* plaintiffs are due benefits mandated by the WDCA: their mileage to and from medical treatment; their co-pays and self-pays for medical treatment; the time value of the delay in receipt of benefits due to Sedgwick's

denial of benefits, even if benefits are later awarded in full by the Agency.

Some of plaintiffs' losses are definite now in dollar amounts - their attorney's expenses, their accrued and unpaid weekly benefits, their expenses to date for medical mileage and co-pays and self-pays of medical bills due to their work injury, and the medical bills due to the work injury which plaintiffs have incurred but are unpaid).  The entire loss is not definite now because future medical expenses are unknown, as is future wage loss and medical mileage.

Another element of damage which is definitely being incurred day by day is the time value of the delayed receipt of benefits.  Plaintiffs did not get their benefits when they alleged they were due.  If the Agency awards benefits in 2012 - or if, more likely, a settlement is reached in 2010 (95% of cases settle) - plaintiffs will be deprived of the use of the money

### 3. The Allegations Support Charges of Mail and Wire Fraud

Sedgwick argues, "Here, the alleged scheme was to *deny* plaintiffs workers compensation benefits, not to *defraud* them of benefits," emphasis by Sedgwick, Motion 10.

Sedgwick lies.  There is no other word than "lies."  The First Amended Complaint alleges fraud in plain English.  The Complaint makes the same allegations for fraudulent denial of workers compensation benefits which the undersigned counsel made in *Brown, supra.*

For Sedgwick to say that the "alleged scheme was to *deny* Plaintiffs .....benefits, not to *defraud* them of benefits" is to call black white.  To call the moon the sun.  To pretend *Brown* does not exist.  Simply, to lie.

Plaintiffs' allegations in the First Amended Complaint describing the scheme to defraud are in paragraphs 12-16, 17A - 23, 26, 28, 30-31B.   They are identical in nature to the allegations of

fraudulent denial of workers compensation made by the plaintiffs in *Brown*.

Sedgwick's argument, **The Complaint fails to state a claim under RICO,** does not review plaintiffs' allegations. It does not set them out in the argument and attempt to point out why they are not allegations for fraud. Sedgwick breezily says plaintiffs did not allege fraud, when they did. Sedgwick's argument is frivolous - and dishonest. Sedgwick should be sanctioned under Rule 11(b).

Also, Sedgwick does not even mention *Brown,* let alone attempt to distinguish it. It may be proper at a cocktail party to ignore an 800 pound gorilla in the room - a disturbing fact which everyone knows but no one mentions - but it is highly improper in a motion to dismiss to ignore the 800 pound gorilla of *Brown*, because counsel has a *duty to argue in good faith,* and to completely ignore *Brown* is to argue in bad faith. Sedgwick should be sanctioned under Rule 11(b).

Sedgwick makes another sanctionable argument when it cites *Blount Financial Services v Walter E. Heller and Co*, 819 F 2d 151, 152, (6thCir 1987) and *US v Van Dyke,* 605 F. 2d, 220, 225 (6th Cir 1979), cert den 444 US 994 (emphasis by Sedgwick) and argues, "In this case, Sedgwick's denial of benefits - for any reason - was not 'reasonably calculated to ***deceive*** persons of ordinary prudence and comprehension'" (emphasis by Sedgwick). This argument is improper and sanctionable because it completely ignores the holdings of *Brown,* supra, and *Bridge v Phoenix Bond & Indemnity Co,* 128 S Ct 2131 (2008), that an allegation of fraudulent *deception* is not a requirement for a civil RICO case under 18 USC 1962(c).[1]

---

[1]   *Brown* held these allegations sufficient:
>    Plaintiffs alleged that Cassens, which was self-insured for purposes of paying benefits under the WDCA, contracted with Crawford to serve as a claims adjuster for the workers compensation claims of Cassens's employees. They further pleaded that Cassens, Crawford and Margules, as well as other "cut off" doctors, engaged in a pattern of racketeering that denied the plaintiffs' workers

Allegations that defendants schemed to fraudulently take someone's property, and used the mails to further that scheme, properly allege mail fraud under RICO. In addition to *Brown* and *Bridge,* see, eg, *Neder v US,* 527 US 1, 119 S Ct 1872, 144 L Ed 2d 35 (1999); *Schmuck v United States,* 489 US 705, 715, 109 S Ct5 1443, 1450, 103 L Ed 2d 734 (1989); *Abels v Farmers Commodities Corp,* 259 F 3d 910 (8th Cir 2001): "A plaintiff may, but need not, allege that a defendant made misrepresentations of fact. [citation] Because misrepresentations of fact are not necessary to the offense, it follows that no misrepresentations need by transmitted by mail or wire; *even routine business communications in these media may suffice to make a scheme of false dealing into a federal offense.*" *Id*, 918, emphasis supplied; *Murr Plumbing Inc v Scherer Financial*, supra, 48 F3d 1066 at 1069 (8th Cir 1995)"It follows that a RICO claim based upon the predicate acts of mail or wire fraud does not require an allegation of a misrepresentation or common law fraud.... The mail and wire fraud statutes encompass two types of frauds: those in which misrepresentations are made, *and those in which no misrepresentations are made...*"(emphasis supplied); *Schreiber Distributing v Serv-Well Furniture Co,* 806 F2d 1393 (9th Cir 1986) (to allege a violation of the mail fraud statute, plaintiff need only allege a mailing was made in furtherance of the scheme to defraud;

---

compensation claims. Specifically, the plaintiffs alleged that Cassens and Crawford deliberately selected and paid unqualified doctors, including Margules, to give fraudulent medical opinions that would support the denial of workers compensation benefits, and that defendants ignored other medical evidence in denying them benefits. The plaintiffs claimed that the defendants made fraudulent communications amongst themselves and to the plaintiffs by mail and wire in violation of 18 USC §§1341, 1343, which serve as the predicate acts for their RICO claims.

Plaintiffs' allegations in this case are essentially identical to those in *Brown*. They allege defendants dishonestly and fraudulently denied them benefits, including the use of "cut off" doctors such as Dr. Drouillard, and defendants used the mails and wires to further this scheme.

11

no misrepresentation was needed; plaintiffs must show "(1) The defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the US mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud... This is consistent with the purpose of the statutes, which is to proscribe the use of the mails or wires in any situation where it is closely entwined with fraudulent activity." *Id*, 1400; in *Tabas v Tabas,* 47 F3d 1280, 1294 (3rd Cir 1995), defendants were executors of an estate; the Third Circuit, sitting *en banc*, held that each time defendants made a questionable charge or received compensation to which they were not entitled, they committed acts of fraud; citing *Schmuck, supra,* and *Kehr Packages v Fidelcor Inc.,* 926 F. 2d F 2. 1406, 1415 (3rd Cir 1991), the court held that completely innocent mailings in furtherance of this fraud can supply the mailing element in a RICO claim based on 18 USC §1341. *Id*, 1294.

Sedgwick next argues, **"Violation" of the WDCA through the mail will not support a claim under RICO.** This is in essence an argument for preemption or abstention, and it fails for the reasons given in *Brown*.

No preemption or abstention doctrine would apply given the grounds *Brown* gave for rejecting defendants' request for McCarran Ferguson Act reverse preemption: *a RICO suit does not invalidate, impair or supersede the operation of Michigan's WDCA.* A RICO suit would not "frustrate any declared state policy or interfere with a state's administrative regime."

*Brown* said:

> ...we note that RICO is also saved from reverse preemption under the McCarran-Ferguson Act because RICO would not 'invalidate, impair or impede' the WDCA. RICO would not invalidate or supersede the WDCA because RICO would not "render [the WDCA] ineffective" given that those subject to these laws can comply with both simultaneously. *See Humana*, 525 US at 307, 119 Sc. Ct. 710. ("The term 'invalidate' ordinarily means 'to render ineffective, generally without

> providing a replacement rule or law[,]' [a]nd the term 'supersede' ordinarily means 'to displace (and thus render ineffective) while providing a substitute rule.). The question remains whether RICO would "impair" the WDCA. In construing the term "impair," the Supreme Court explained that "[w]hen federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." *Id*, at 310, 119 S Ct 710.
> 
> ...Moreover, the federal interest in protecting individuals against a pattern of racketeering activity based on fraud is "perfectly compatible" with the state interest in providing a certain remedy for employees who have suffered workplace injuries. *Id*, at 311, 119 S Ct 710.

Furthermore, RICO is to be liberally construed to effectuate its remedial goals. Liberal construction shall be applied with special vigor to section 1964 of RICO, which provides for the civil remedy sought by this suit: "... if Congress' liberal-construction mandate is to be applied anywhere, it is in §1964, where RICO's remedial purposes are most evident." *Sedima, SPRL v Imrex Co,* 473 US 479 at 491 n. 10, 105 S Ct 3275 at 3283 n. 10, 87 L Ed 2d at 360 (1985).

Sedgwick claims the Michigan Uniform Trades Practices Act creates not duties applicable here. True, the UTPA may not create a duty, but violation of the UTPA may be used at trial as evidence of negligence. The Michigan courts have held that violation of a rule or statute may be used as evidence of improper conduct even where that rule or statute does not create a duty, *Zalut v Anderson &Assoc, Inc,* 186 Mich App 229, 235-37, 463 NW2d 236 (1996).

Sedgwick's final argument is **The allegations undermine an inference of a pattern in the alleged conduct.** This argument fails because plaintiffs in their First Amended Complaint (FAC) and more so in their proposed Second Amended Complaint (Second Revision) (SAC/SR) amply and abundantly plead continuity and a pattern. The FAC involves two plaintiffs who seek to represent a class, and it involves at least five predicate acts for each plaintiff (ten total), and alleges predicate acts by defendant as a regular and ongoing way of doing business, and alleges predicate acts

committed against other claimants. Here are some of these allegations in the FAC.

31. **The Pattern of Racketeering and the Claims of Each Plaintiff.** The pattern of racketeering and some of the particular means of achieving this fraudulent scheme which are known to plaintiffs at this time are described below plaintiff by plaintiff (paras. A and B). These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery; for example, precise dates of mailing or faxing or emailing among defendants or their agents are known to defendants and not plaintiffs. These allegations describe a pattern of racketeering spread over several years, continuing in the present and likely to continue into the future... With regard to each plaintiff, Coke and Sedgwick or their agents used the mails and wires at least five times in furtherance of the scheme to deprive a plaintiff of his or her workers compensation benefits: (1) mailing by Sedgwick from its Kentucky or Chicago area claims office a notice to the plaintiff to appear for an "independent medical examination" with Dr. Drouillard or another cut off doctor; (2) mailing or faxing or phoning to Dr. Drouillard in Garden City, MI, the notice that a plaintiff would appear before him for the exam; (3) mailing or faxing the doctor's report from Warren or Garden City MI to Sedgwick at its Kentucky office: (4) mailing by Sedgwick or its agent from its office in Kentucky or Chicago of the report to the plaintiff; (5) mailing or faxing by Dr. Drouillard, either from his office in Warren MI at MES or from his Garden City MI office, his report to Sedgwick in Kentucky; (6) mailing the Notice of Dispute by Sedgwick from its Kentucky or Chicago office to the Agency in Lansing MI and to

the plaintiff. The persons who engaged in the pattern of racketeering are, in addition to the named defendants, the individuals at the Sedgwick and Coke workers compensation claims departments who handled Michigan workers compensation claims. The dates of some of these mailed, emailed or faxed communications are within the possession of defendants.

### 31 A. CLIFTON JACKSON

Clifton E. Jackson was employed by Coke when on 9/17/2007 he injured his lumbosacral spine. He was treated thereafter by Dr. Shlomo Mandel of the Henry Ford Hospital system, a specialist in treating the low back. Dr. Mandel determined that plaintiff has been disabled by his work-related back injury from 9/2007 to the present, and continuing. In May 2008, Sedgwick required plaintiff to attend an "independent medical examination" by Dr. Terry Weingarden, paid for by defendants. Dr. Weingarden opined that plaintiff was disabled by his work-related injury. Sedgwick later had plaintiff examined again by Dr. Weingarden, and again he opined plaintiff was disabled.

Despite these opinions, on Jan. 6, 2009, LaTara Lewis of Sedgwick mailed plaintiff a letter stating, "I have scheduled an Independent Medical Evaluation for you with Dr. Drouillard on Jan. 14, 2009...." The letter was fraudulent in that Dr. Drouillard was not an "independent" doctor but was hired and paid by Segwick, not by a person or entity with no financial stake in the outcome of plaintiff's claim; in that Drouillard was paid by Sedgwick and other workers compensation insurers hundreds of thousands of dollars to examine Mr. Jackson and other workers

compensation claimants; in that Dr. Drouillard participated in a scheme to fraudulently and dishonestly deprive plaintiff and, on information and belief, thousands of other workers compensation claimants of their workers compensation benefits...

Dr. Drouillard mailed wrote a report of his examination dated Jan. 14, 2009 to Sedgwick, and Sedgwick mailed or emailed a copy to plaintiff.   The report contained lies. [allegations omitted]

***

31 B. CHRISTOPHER SCHARNITZKE

****

E.   The Concentra records were sent immediately to Sedgwick.  Despite having received these records, Sedgwick mailed to the Agency and to plaintiff on March 18, 2008 a Notice of Dispute stating "medical treatment not related to injury.....IW [injured worker] has been diagnosed with acromioclavicular arthritis." Sedgwick did not have information from which it could honestly and fairly conclude that plaintiff's disability in March 2008 was due to acromioclavicular arthritis, and was not work-related.   Instead, it had information from Concentra stating "minor work aggravation," which was legally sufficient to qualify plaintiff for workers compensation benefits.   Furthermore, it did not have information that the acromioclavicular arthritis which preceded the work injury of March 4, 2008, was not work-related.   Sedgwick also had information that plaintiff had returned in March 2008 to his orthopedic surgeon, Dr. Milia.

F. Since March 18, 2008, Sedgwick and Coke have repeatedly denied benefits despite having received, directly and from their attorneys, proof that plaintiff had suffered a new rotator cuff tear. Inter alia, defendants through their [attorney] mailed a CARRIER'S RESPONSE to the Agency and to plaintiff falsely denying - despite having sufficient proof to the contrary - that plaintiff was disabled and that the disability was work-related. Even after receiving an IME report in Nov. 2008 from Dr. Michael Holda, which stated plaintiff was disabled due to a shoulder injury and did not say that the disability was not work-related, defendants continued to deny that plaintiff was disabled due to a work-related condition.

\*\*\*

On or about July 22, 2008, Coke and Sedgwick mailed to the Agency and to plaintiff or his counsel a Carrier's Response, which denied that plaintiff was disabled; that denial was false, in that defendants possessed information that plaintiff was disabled, and no information that plaintiff was not disabled. The Response also denied that the disability was work related, and that denial was false, in that defendants had sufficient proof from plaintiff's medical records of a work related disability, and no proof the disability was not work related.

In April 2009, Coke and Sedgwick received, via their workers compensation attorney, a note written by Dr. Milia dated 3/26/09 and stating:

> I am the orthopedic surgeon who has treated Mr. Scharnitzke's left shoulder since 2007. His current shoulder disability (from March 3, 2008 to April 2009) was caused by the 13 years of repetitive heavy lifting and pulling

>>required by Mr. Scharnitzke's job at Coca Cola, and was also caused by the injury at work on 3/3/08.
>
>>Despite receipt of this note, defendants continued to deny benefits and used the mails and wires to continue to deny benefits.

These allegations allege pattern and continuity, under *Brown,* supra. Furthermore, any deficiency in the FAC may be cured by discovery, As Brown noted in footnote 4, the Sixth Circuit has held plaintiffs were entitled to discovery before their complaints were dismissed:

> *See Michaels Building Co v Ameritrust Co,* 848 F. 2d 674 679-81, (6th Cir 1988) (holding that plaintiffs alleging RICO civil fraud claims that failed to satisfy Rule 9(b)'s particularity requirement were entitled to opportunity for discovery under Rule 11(b)(3) before their claims were dismissed). Should discovery confirm the plaintiffs' initial beliefs regarding the fraudulent nature of the dismissed allegations and provide the necessary details to satisfy Rule 9(b), the plaintiffs can then amend the complaint to replead the dismissed allegations. See FED. R. CIV P 15(a), *Tucker [v Union of Needletrades, Indus., & Textile Employees,* 407 F. 3d 784 (6th Cir 20050] 407 F3d at 788.

Moreover, any deficiency in the FAC is cured by the proposed Second Amended Complaint (Second Revision), which adds plaintiff Paul Lulek and at least two more predicate acts.[2]

---

[2] Sedgwick cites at length to *Moon v Harrison Piping Supply,* 465 F 3d 719 (6th Cir 2006). *Moon* was effectively overruled by *Brown*; even Sedgwick notes "The holding in *Moon* in this regard appears to be at odds with the holding in *Brown*." Brief 19. Regardless, *Moon* presented a very different set of facts; it involved a single plaintiff. Here, the FAC involves two plaintiffs, and the proposed SAC/SR involves three, and both complaints allege a class action.

## RELIEF REQUESTED

Sedgwick's Rule 12(b)(6) motion on this ground should be dismissed. Sanctions should be awarded against Sedgwick under Rule 11(b)(1 and 2) for the frivolous and dishonest arguments made by Sedgwick.


/s/ Marshall Lasser
Marshall Lasser PC, by
Marshall Lasser P25573
po box 2579
Southfield MI 48307
(248) 647 7722
mlasserlaw@aol.com
ddtalon@gmail.com

Dated: August 24, 2009

C:\wp51\DOCS\CocaColaRICO\ReplySedgwick12(b)motion.wpd