# UNITED STATES DISTRICT COURT
# IN THE EASTERN DISTRICT OF MICHIGAN

**CLIFTON E.  JACKSON and**
**CHRISTOPHER M. SCHARNITZKE,**

Case No.: 2009-11529

Judge Nancy Edmonds

Plaintiffs, on behalf of themselves and
other persons similarly situated

**PROOF OF SERVICE**

The undersigned certifies that this instrument, together with all referenced attachments was served on all parties to this case and/or their attorneys of record at their respective addresses as disclosed by the pleadings on __March 2, 2010__   by the following method(s):

[] U.S. Mail   [] Fax        [] Hand Delivered
[] Federal Express    [] UPS
[X] Other:    **ELECTRONICALLY EMAILED**

  /s/Delilah D. Talon
Signature of Serve

**SEDGWICK CLAIMS MANAGEMENT**
**SERVICES, INC, and COCA COLA**
**ENTERPRISES, INC, foreign corporations,**
**and DR. PAUL DROUILLARD,**
**Jointly and Severally,** Defendants.

---

MARSHALL LASSER P25573
MARSHALL LASSER PC
Attorney for plaintiffs
po box 2579
Southfield MI 48037
248-647-7722
mlasserlaw@aol.com
ddtalon@gmail.com


Thomas W. Cranmer P25252
Matthew F. Leitman P48999
Miller Canfield Paddock & Stone, P.L.C.
840 West Long Lake Road, Ste. 200
Troy, MI 48098
248-879-200
cranmer@millercanfield.com
leitman@millercanfield.com

BUTZEL LONG
By:     Daniel B. Tukel P34978
        Lynn A. Sheehy P38162
        Katherine D. Goudie P62806
Attorneys for Defendant Dr. Drouillard
150 W. Jefferson, Ste. 100
Detroit, MI 48226
313-225-7000
tukel@butzel.com
sheehy@butzel.com
goudie@butzel.com

Kathleen H. Klaus P67207
Maddin, Hauser, Wartell , Roth
  & Heller, P.C.
Attorney for Sedgwick
28400 Northwestern Hwy., 3rd Fl
Southfield, MI 48034
248-354-4030
khk@maddinhauser.com

---

**PLAINTIFFS' MOTION FOR LEAVE TO FILE BRIEF (1) CITING SUPPLEMENTAL**
**AUTHORITY AND (2) CORRECTING MIS-STATEMENTS AND OMISSIONS AT**
**ORAL ARGUMENT HELD 2/23/2010**


**BRIEF IN SUPPORT**


**Statement Regarding Concurrence Required by LR 7.1(a)**

Plaintiffs' counsel sought concurrence on 3/2/10 by email in which counsel explained the nature of the motion and its legal basis and requested concurrence or a phone conference to discuss concurrence; no concurrence in the relief sought has been given as of the date this motion is filed.

**MOTION**

Plaintiffs move under LR 7.1(d)(1)(A) for leave to file a brief (1) citing supplemental authority on the issue of Dr. Drouillard's claim for absolute and unqualified witness immunity on every aspect of his participation in the alleged scheme to defraud, and (2) correcting mis-statements or omissions by counsel at oral argument held 2/23/2010 on the parties' motions.

This motion is made because the issues before the court may have huge impact not only on this case but on many similar cases before this court and other district courts.

/s/Marshall Lasser
Marshall Lasser P25573
attorney for plaintiffs

**BRIEF IN SUPPORT OF MOTION**

**Concise Statement of Issues Presented**

1. Should plaintiffs be allowed to file a brief citing supplemental authority on the issue of

Dr. Drouillard's claim for absolute and unqualified witness immunity?

2. Should plaintiffs be allowed to file a brief correcting mis-statements and omissions made

at oral argument on defendants' dispositive motions?

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

LR 7.1(d)(1)(A)

**ARGUMENT**

LR 7.1(d)(1)(A) empowers this court to permit this brief.

Defendants' motions are dispositive.  If granted, years of appeal will follow.  Judicial economy warrants the court reading this brief now, before dismissing one or more of plaintiffs' claims.

It is very unusual for a court to consider a brief discussing points debated at oral argument.  However, because of the novelty, complexity and national importance of the issues argued at that hearing, the court should consider this brief.

This case and four other cases now before the District Court for the Eastern District of Michigan involve similar allegations.[1]  They allege a problem of national importance: fraudulent denial or cutoff of workers compensation benefits by insurers, self insurers and third party administrators (collectively "insurers"), the widespread practice of these insurers to compel workers compensation claimants to attend examinations by doctors the insurers know to be dishonest, the practice of these doctors (who each receive hundreds of thousands of dollars per year from workers compensation insurers) to lie in their examination reports, and the practice of the insurers to rely on the reports to deny or cut off workers compensation benefits - urgently needed medical care, and weekly compensation benefits urgently needed because the injured worker cannot work.

This national problem was highlighted by the front-page New York *Times* investigative

---

[1]    The four cases before the US DC for ED of Michigan include Brown v Ajax Paving (2:09 cv 13486), Lewis et al v UPS et al (2:09 cv 11059, before Judge Roberts), Brown v Cassens (before Judge Borman), and Jackson v Sedgwick et al.  In addition, plaintiffs' counsel will this week file a similar RICO complaint against DHL, Sedgwick CMS, et al, and four southeast Michigan physicians, including Dr. Drouillard.   He has been asked to be co-counsel in similar cases in other states (Ohio, New Jersey).

report published April 1, 2009 (exhibit 3 to plaintiff's response filed 7/23/09 to Dr. Drouillard's motion to dismiss) - and highlighted by Dr. Drouillard in the exhibits he attached to his motion to dismiss (showing that national media and national defense counsel consider *Brown v Cassens*, 546 F. 3d 347 (6th Cir 2008) an important precedent; *Inside Counsel,* a national magazine of corporate house counsel, discussed the importance of *Brown*; *Brown* is going to be the subject of an ABA seminar this Spring involving workers compensation law).

The court of appeals decision in *Brown* left issues of law to be resolved.  Several of the issues raised by defense counsel in the motions heard 2/23/2010 may be of first impression.  They are complex.  Resolution of these issues by this court may influence a score of other district courts across the United States, which will be presented in the next few years with a hundred or more RICO cases like plaintiffs'.  This brief may help the court decide the novel and critical issues presented by the parties.

### Supplemental Authority

*United States v Eisen,* 964 F2d 246 (2d Cir 1992), held that state court perjury as part of a scheme to defraud may give rise to RICO mail fraud charges.   Implicitly contained in this ruling: the witness's trial testimony did not immunize him from RICO charges of a mail fraud scheme involving the testimony.

The court said at 254:

> Nevertheless, where, as here, a fraudulent scheme falls within the scope of the federal mail fraud statute and the other elements of RICO are established, use of the mail fraud offense as a predicate act cannot be suspended simply because perjury is part of the means for perpetrating the fraud.  We do not doubt that where a series of

6

related state court perjuries occurs, it will often be possible to allege and prove both a scheme to defraud within the meaning of the mail fraud statute as well as the elements of a RICO violation.  But in such cases, it will not be the fact of the perjuries alone that suffices to bring the matter within the scope of RICO.  In any event, we cannot carve out from the coverage of RICO an exception for mail fraud offenses that involve state court perjuries.

*Town of Kearny v Hudson Meadows,* 829 F2d. 1263 at 1269 (3rd Cir 1987), held that perjury by a witness could form the basis of a RICO complaint; implicitly, the witness was not immune:

Mimi and Dolores Turco, as an alternative ground for upholding the summary judgment, urge that Hartz's real injury flowed not from the Mimi lease but from the perjured testimony in the 1980 Superior Court proceeding which inducted Hartz to settle that lawsuit...... Moreover, the perjured 1980 testimony could be found to establish the continued existence of the RICO enterprise though that time, and that perjury was part of the pattern of racketeering activity.

*Marrogi v Howard,* 805 So. 2d 1118 (Louisiana 2002), is one of many cases holding an expert witness is not immune from a negligence suit by the person who hired him, where the alleged negligence arose out of the expert's testimony.

### Correction of Misstatements and Omissions

At oral argument on 2/23/10 on the parties' motions, counsel for all sides made misstatements and omissions, which prompt the following corrections and comments:

1.   Plaintiffs' counsel misstated only one other doctor has been sued by him; that was incorrect; he has also sued Dr. Margules in the Cassens case.   Counsel omitted to state that he

intends to sue this week at least 4 other doctors who have allegedly violated RICO by writing dozens of fraudulent reports in a pattern of racketeering in Michigan workers compensation cases, in a case filed against Sedgwick CMS (defendant here) and against DHL and its insurers and other third party administrators.   The problem of insurer and doctor fraud in Michigan workers compensation is wide and deep - plaintiffs will prove that.

2.   Counsel for Dr. Drouillard omitted to state he is seeking **absolute immunity.**  (There is no case, federal or Michigan, providing absolute witness immunity for experts for reports made before a judicial hearing, let alone reports made before an administrative hearing; the cases cited by plaintiff rejected such absolute and unqualified immunity.)

3.   Counsel for Drouillard discussed *Morgan v DaimlerChrysler* at length, but did not state that ***Morgan* is not a witness immunity case.** *Morgan,* like *Maiden v Rozwood* (Michigan Supreme Court)  held the expert **owed no duty to plaintiff** under Michigan law which would give rise to a claim for fraud in the expert's examination and report.   Those cases did not address the witness immunity doctrine.

Counsel for Drouillard discussed *Butz v Economou,* 438 US 478, 98 S Ct 2894 (1978).  That case is irrelevant because it held that an *administrative law judge and agency prosecuting attorney,* not an expert witness, are absolutely immune from a claim of violation of plaintiff's constitutional rights.  *Butz* said because an ALJ or administrative prosecutor is akin to a judicial judge or prosecutor, they are entitled to absolute immunity - but other actors in an administrative proceeding are not entitled to absolute immunity.  Dr. Drouillard is not an ALJ or prosecutor.  *Butz* does not stand for the proposition that an expert witness in an administrative proceeding (let alone an expert who writes a report which later is incorporated into a deposition which is later submitted in an

8

administrative proceeding) is entitled to absolute immunity.   With regard to testimony which incorporates a fraudulent report made and mailed before the trial, the Sixth Circuit has said that "subsequent testimony [such as Dr. Drouillard's deposition testimony incorporating his examination report] can not insulate previous fabrications of evidence merely because the testimony relies on that fabricated evidence."  *Gregory v City of Louisville,* 444 F3d. 725, 738-739 (6th Cir 2006).

4. Plaintiff's counsel omitted to mention that the prudent course is to deny defendants' motions *without prejudice.*  Discovery may provide support for the arguments made by defense counsel, or not.   The court is now at a disadvantage, trying to divine the accuracy of defense arguments as to the impact of this case on the Michigan workers compensation system, without the benefit of detailed knowledge as to how the Michigan workers compensation system works, or how this case may interplay with that system.   Defendants filed no expert affidavits supporting their motions.   They did not point to any specific interference by this case with they system.   (Plaintiffs' counsel respectfully submits he alone - among all counsel and the court - has intimate knowledge of the system.)   Note: the Scharnitzke and Jackson work comp cases will be settled or tried by a magistrate within 3-5 months.

5. Plaintiff's counsel omitted to mention that, unlike the experts Judge Edmonds stated she encounters regularly in cases before her, the experts testifying for plaintiffs' counsel in his workers compensation cases are not "hired guns."  *They are the injured workers' treaters.*   Dr. Drouillard is a "hired gun."  Treaters are not "hired guns."

The experts to which the court referred were hired by counsel to act as experts, whereas in plaintiffs' counsel's workers compensation cases the experts were hired to treat by the individual injured workers - *or even in many cases by the insurer's medical case manager.*

9

6.   Plaintiffs' counsel omitted to point out to the court the irrelevance of awaiting the determination of plaintiffs Jackson's claim by the Workers Compensation Agency or the Workers Compensation Appellate Commission, **because if the Magistrate and WCAC accept Dr. Drouillard's allegedly fraudulent examination report and his testimony incorporating that report, their decisions in Jackson's case will be corrupted by fraud unknown to them.**   No need, then, to await the outcome of his case.   The Scharnitzke workers comp case may or may not turn on an allegedly fraudulent report and testimony based thereon (this depends on what happens in the next 5 months).

Plaintiffs' counsel told the court that the outcome of the underlying cases in the workers compensation system is relevant with regard to determination of the *amount* of damages, but not the *fact* of damages (damages exist because all plaintiffs have had to hire an attorney to pursue their workers compensation benefits after they were cut off or denied, and that attorney also has case costs.)   Counsel said the amount of damages depends on the outcome of those cases.

However, counsel omitted to cite case law indicating that **inability at this time to determine precisely the damages in the claims of Jackson and Scharnitzke is not grounds for dismissal. The Supreme Court has repeatedly stated that an "approximate" result is sufficient.**

*Civil Rico,* Smith and Reed, LexisNexis, states at ¶10.04[2]:

A civil RICO plaintiff, or course, bears the burden of proving the extent of his or her damages.   Despite the scarcity of case law addressing the proof plaintiff must advance to meet this burden, guidance from both antitrust and tort law suggests that courts should be flexible in addressing efforts to prove RICO damages.   In private antitrust actions, the Supreme Court has distinguished "between the measure of proof

10

necessary to establish the fact that [plaintiff has] sustained some damage and the measure of proof necessary to enable the jury to fix the amount." [*Story Parchment co v Paterson Parchment Paper Co,* 282 US 555, 562, 51 S Ct 248, 75 L Ed 544 (1931)]. Relying on tort damages principles, the Supreme Court in *Story Parchment Co.* [*id*], a private antitrust action, reasoned that imposing stringent evidentiary burdens on an aggrieved plaintiff to prove the extent of his or her damages operates to penalize the victim of unlawful conduct and to favor the wrongdoer. The Court opined that when a tort, by its nature, renders certainty in the calculation of damages difficult, "while damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." [282 US at 563]

\*\*\*

....Thus, the Court has steadfastly applied the liberal standard set forth in *Story Parchment* when a defendant's actions have made precise measurement of damages difficult. [97]

> FN 97 See, eg, *Bigelow v RKO Radio Pictures, Inc*, 327 US 251, 263-265, 66 S Ct 574, 90 L Ed 652 (1946).

Moreover, the Court has stated that this principle "is an ancient one...and is not restricted to proof of damage in antitrust suits, although their character is such as frequently to call for its application." [327 US at 265] Once the fact of injury is proven in antitrust cases, courts have traditionally imposed a lenient standard for proof of the extent of the damages. See *Danny Kresky Enters. Corp v Magid,* 716

11

F2d 206, 212 (3d Cir 1983).  See also Areeda & Turner, *Antitrust Law* §334 (1978). Thus, court have allowed plaintiffs "to select their own damages theories as long as they are supported by a reasonable foundation." [*Danny Kresky,* supra, 716 F2d 206, 213].   Although establishing RICO damages may not, in the main, be as difficult as proving market damages, applying the same liberal standard for proving RICO damages is equally justified.

There is no need to stay this RICO case pending finality in the workers compensation claims, which may take 5 or even 10 years if a case winds its way through the appellate system (in Michigan, a party may seek leave to appeal a WCAC decision to the Michigan court of appeals, and from there to the Supreme Court).   All other issues in the RICO claims must be determined before damages are addressed, by which time (1) the underlying workers compensation claim may have been finalized by way of settlement or final order after hearing and appeal, or if not finalized (2) some of the damages may be determinable with sufficient "approximation," such as the amount of expenses and attorney fees due up to that point.

### Relief Requested

Leave to file the attached brief.


/s/ Marshall Lasser
Marshall Lasser PC, by
Marshall Lasser P25573
po box 2579
Southfield MI 48307
(248) 647 7722
mlasserlaw@aol.com
ddtalon@gmail.com


Dated: March 2, 2010   C:\wp51\DOCS\CocaColaRICO\MotionLeaveFilleBriefCorrectingOmissions&Briefwpd.wpd